**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas Altschuler, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Chubb National Insurance Company,<br><br>Defendant. | No. CV-21-00119-TUC-DCB<br><br>**ORDER** |

On February 13, 2021, the Plaintiffs filed this action in state court. They, husband and wife, purchased a homeowners insurance policy for real property located in New York issued by Defendant Chubb National Insurance Company (Chubb), policy number 13808452-05 (the Policy), that included worldwide coverage for valuable articles. Plaintiffs allege valuable items were stolen from Plaintiff Altschuler's family home in Tucson, Arizona. Plaintiffs allege that on several occasions prior to the theft, Plaintiff Altschuler informed Chubb that certain valuable articles were located at Mr. Altschuler's family home in Tucson, Arizona, specifically the stolen multiple fine art silk screen prints by artist Keith Haring.[1] Plaintiff Altschuler purchased this artwork prior to his marriage and kept it at his parents' home in Tucson; ownership of the home was subsequently transferred to his sister. Defendant Chubb allegedly assured Plaintiffs that the Valuable Articles coverage applied regardless of the location of the insured item.

---

[1] *See* (Motion (Doc. 13) at 2.) Without explanation, Plaintiffs refer to the Andy Warhol paintings. (Response (Doc. 17) at 2.) The Court assumes the silk screens may be Haring's Andy Mouse. The Court refers to the property for purposes of this Order as artwork.

Plaintiffs allege that in December 2019, Plaintiff Altschuler discovered the artwork was missing and presumed stolen ("Loss No. 1") from the Tucson residence. He reported the theft to local law enforcement in Tucson and reported the loss to Chubb. In February 2020, Mr. Altschuler discovered a stainless-steel ladies Rolex watch belonging to his wife, Plaintiff Werner, was also missing and presumed stolen from the Tucson residence ("Loss No.2"). Similarly, that loss was reported to law enforcement and Chubb.

The insurance loss claims remain under investigation. *See* (Motion for Transfer of Venue (Doc. 13) at 2 (filed June 15, 2021, describing "Chubb as currently in the process of investigating and adjusting these claims"); *but see* (Order (Doc. 10) (filed April 28, 2021, extending deadline for Defendant's answer by 30 days to allow Chubb to complete its investigation).

Plaintiffs' Complaint alleges breach of contract for Chubb's failure to pay benefits under the policy and a bad faith tort claim for failing to timely adjust the loss and resolve the claim. "The laws of Arizona and New York vary wildly with regard to bad faith insurance claims," with Arizona law favoring Plaintiffs. (Response (Doc. 17) at 14 n. 1) New York allows consequential damages resulting from the breach of the covenant of good faith and fair dealing in the context of an insurance contract, whereas Arizona recognizes a bad faith tort claim, punitive damages and emotional distress. *Id.* (citations omitted).

The Complaint alleges Plaintiff Zoe Werner is a resident of New York, and Plaintiff Douglas Altschuler is a resident of Arizona. Defendant Chubb is an Indiana corporation, with its principal place of business in New Jersey,[2] engaged in the business of insurance nationally, including in Arizona and New York. Plaintiffs filed the case in the Arizona Superior Court in Pima County, Arizona. On March 19, 2021, Chubb removed it to federal court based on diversity, pursuant to 28 U.S.C. § 1332, and seek its transfer to the United States District Court for the Southern District of New York submitting that the Plaintiffs reside in New York. (Notice of Removal (Doc. 1) ¶ 2.)

---

[2] Chubb "is an Indiana corporation, headquartered in New Jersey, with offices in Arizona, which offers property insurance services in every state and adjusts those claims in Virginia." (Response (Doc. 17) at 8.)

<u>Jurisdiction based on diversity</u>

Both the pleadings and the removal documents identify the parties' residency, but the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency. To be a citizen of a state, a natural person must first be a citizen of the United States. *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 828 (1989). The natural person's state citizenship is determined by his or her state of domicile, not the state of residence. A person's domicile is their permanent home, where they reside with the intention to remain or to which they intend to return. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). A person residing in a particular state is not necessarily domiciled there and not necessarily a citizen of that state. *See, e.g., Weible v. United States*, 244 F.2d 158, 163 (9th Cir.1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile.").

Chubb, as the party asserting diversity jurisdiction bears the burden of proof, *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) (citing *Lew*, 797 F.2d at 749)). To the extent the Defendant failed to allege Plaintiffs' state citizenship, its assertion of federal jurisdiction fails, but may be cured by amendment. *Kanter*, 265 F.3d at 857-858 (citing 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 568 n.3 (2d Cir. 2000) ("[A]n inadequate pleading does not in itself constitute an actual defect of federal jurisdiction."); *see also* 15 James Wm. Moore et al., Moore's Federal Practice § 102.17[1], at 102–31 (3d ed. 2001) ("Moore's"9th Cir. 2001)).

Based on the arguments made in the Defendant's Motion for Transfer of Venue, the Court presumes the amendment would assert that both Plaintiffs are citizens of New York and Chubb is a citizen of Indiana. "It is often said that a person may have several 'residences' but only one 'domicile'. '* * * 'Domicile' is a larger term, of more extensive signification, and has been said to be used more in reference to personal rights, duties, and

obligations; and residence is of a more temporary character than domicile. *McIntosh v. Maricopa Cty.*, 241 P.2d 801, 802 (Ariz. 1952) (citing 28 C.J.S., Domicile, § 2a, page 5). Because diversity jurisdiction depends on domicile, the pleadings, including the Notice of Removal, shall be amended to allege the state citizenship of the parties.

Under 28 U.S.C. § 1391(b), venue is generally proper where the defendants reside, defined loosely as being subject to the court's personal jurisdiction,[3] or in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . .." In short, venue is proper in New York because Defendants are amenable to service of process there. (Motion (Doc. 13) at 7.) Arizona is also a proper venue because, as alleged in the Complaint, this is where a substantial part of events or omissions giving rise to claim occurred and the property at issue was situated.

Because this is a removal case, however, venue is governed by 28 U.S.C. § 1441(a). *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) ("But even on the question of venue, § 1391 has no application to this case because this is a removed action. Section 1441(a) provides, in pertinent part: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Under 28 U.S.C. 1441(a), venue is proper for this case in this Court because it is removed from the Pima County Superior Court of Arizona.

The Defendant asks this Court to transfer venue to the federal court in New York pursuant to 28 U.S.C 1404(a) "for the convenience of parties and witnesses, in the interest

---

[3] "[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . For venue purposes for residency, "a natural person" "shall be deemed to reside in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c).

of justice." For such reasons, "[a] district court may transfer any civil action to any other district or division where it might have been brought." *Id.* This assessment requires the Court to take two steps.

First, the Court must conclude that the case "could have been brought" in New York. "A case 'could have been brought' in the transferee forum when the forum has subject matter jurisdiction, is otherwise a proper venue and is located where the defendant is amenable to service of process." (Motion (Doc. 13) at 4.)

Second, the Court must determine whether New York is a more suitable choice of venue based on the convenience of the parties, witnesses, and the interests of justice. The latter assessment requires the Court to consider several factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum,(6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc*. 211 F.3d 495, 498 (9th Cir.2000)

A. Whether this case could have been brought in New York?

If Plaintiffs are citizens of either New York or Arizona, diversity exists because Chubb is domiciled in Indiana. Therefore, federal question jurisdiction exists in either New York or Arizona because the matter in controversy exceeds the sum value of $75,000. The question turns on venue, which as noted above is generally proper where the defendants reside or in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . .."

The Plaintiffs allege the property that is the subject of the action, the artwork and Rolex watch, were situated in Arizona. Chubb asserts the property was situated in New York. The Plaintiffs allege that the event giving rise to the claim, the theft, occurred in Arizona. Chubb submits the event giving rise to the claim is its delayed investigation

which is occurring in New Jersey or the adjustment of the claim which will occur in Virginia.

The Court notes that the facts as alleged by Plaintiffs do not support a conclusion that the case could have been brought in the New York forum, except for the fact that Chubb is subject to service of process there because it is a global insurance company that regularly transacts business in New York, like it does in Arizona and all other states. Diversity exists because Defendant Chubb is a citizen of the state of Indiana. This is enough. The action could have been brought in the federal district court in New York.

B. Whether New York is a more suitable choice of venue based on the convenience of the parties, witnesses and the interests of justice.

Under 28 U.S.C. § 1404(a), this Court may transfer a case to another district when necessary for convenience and fairness. There is a 'strong "presumption in favor of plaintiff's choice of forums" that the Court will not lightly disturb. *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003), vacated on other grounds, 542 U.S. 952 (2004) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "Transfer under § 1404(a) 'should not be freely granted,'" and is not appropriate where the moving party merely seeks to "shift the inconvenience to the party resisting the transfer." *Id*. (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964). The purpose of transfer is to find "a more convenient forum, 'not to a forum likely to prove equally convenient or inconvenient[.]'" *Id.* In the Ninth Circuit, the courts look to the enumerated factors in *Jones v. GNC Franchising, Inc*. (the *Jones* factors) to determine if convenience and the interests of justice merit transfer.

1. The location where the relevant agreements were negotiated and executed.

According to Chubb the policy was brokered by a New-York based Chubb company, Crystal IBC LLC, and executed in New York, including confirmation by Crystal in 2018 when Altschuler substantially increased the coverage for the artwork to $1.5 million. (Motion (Doc. 13) at 7); (Reply (Doc. 21) at 6). The Plaintiff counters that the

communications were negotiated by Altschuler from Europe by email. (Response (Doc. 17) at 6.) This factor tips in favor of transferring the case to New York.

> 2. The state that is most familiar with the governing law and whether New York law applies.

The Court's determination to deny Defendant's Motion for Application of New York law tips this factor in favor of finding that the Arizona forum is the most familiar with the governing law. The Court agrees with Plaintiffs' concern that the question may be "premature and is best addressed after the facts have been fleshed out." (Response (Doc. 17) at 1.) Discovery has not yet commenced, and Plaintiffs lack discovery on whether the underwriting assessment was performed based on the property being located in Arizona. Chubb asserts it was based on its belief that the property was located in New York because the homeowners' policy was for Plaintiffs' New York residence.

The timing of the motion, however, is not up to the Plaintiffs or the Court and is, therefore, addressed on current record, with the burden placed on the Defendant as the moving party challenging the Plaintiffs' choice of forum. Plaintiffs point out that the evidence relied on by Chubb to support New York as the choice of law reflects risk assessment details for the artwork referencing "DOCTOR/PHYSICIAN AND HOMEMAKER" which is a reference to his parents, who Chubb knew lived in Arizona because his parents were Chubb policy holders. Plaintiffs correctly argue that the policy expressly differentiates between coverage for "Homes and Contents" and "Valuable Items."

The most persuasive evidence is, however, Altschuler's attestation, supported by copies of emails, that he told Chubb in 2016 the artwork was located in Arizona because he wanted to be sure it was covered under the policy. Chubb's agent wrote: "I spoke to our Chubb underwriter and informed them that your Andy Warhol[4] painting is currently in AZ and they are fine with that and noted their file." (Response, Altschuler Decl. ¶8 (Doc. 17-1) (citing Ex. F (email)). A year later, Plaintiff Altschuler did not see any notation of the

---

[4] See n. 1.

artwork's location being in Arizona and again contacted Chubb. Again, Chubb's agent responded, "Please be advised that you do have worldwide coverage for your items. The two Art items attached are both in Arizona at our father's correct?" This evidence directly contradicts Chubb's assertion that it understood the artwork was located in New York. Based on the evidence before the Court, Plaintiffs afforded Chubb ample information to assess the risk of a loss occurring in Arizona.

Chubb ignores the emails and counters these are bare allegations. According to Chubb, "[i]n fact, in 2015, 2016, and 2017 underwriting entries show Chubb's underwriters believed those items were to be kept in New York. Chubb argues that its expectation of risk was in New York. While admitting that "it is true Chubb conducts its business on a national scale, it could not have anticipated Plaintiffs would have allegedly relocated some of their fine art and jewelry to Mr. Altschuler's sister's house in Tucson." *Id.* The Court finds that there is evidence to the contrary.

The Court turns to the choice of law question. As correctly noted by Chubb, Arizona's conflicts of law cases look to the Restatements of Conflicts of Law. Arizona's choice of law analysis for the bad faith insurance claim follows the Restatement (Second) of Conflicts of Laws § 146 and 145. Like Chubb, but with a different result, the Court applies the Restatements under *Bates v. Superior Court of the State of Arizona,* 749 P.2d 1367 (1988) and *Lange v. Penn Mut. Life Insur. Co.,* 843 F.2d 1175 (9th Cir. 1988) (applying Arizona law to bad faith claim). Plaintiffs' injury from the nonpayment of the Plaintiffs' claim occurred in Arizona, where the artwork was allegedly located, stolen, and has not been replaced because the value of Plaintiffs' Arizona property has been reduced. This finding is consistent with *Bates* where plaintiff was a resident of Michigan who purchased medical insurance there, was injured in Illinois, then moved to Arizona. She continued to receive medical benefits under her policy in Arizona until it was terminated. The court found the injury from the nonpayment of medical claims occurred in Arizona where Plaintiff was living and receiving medical care when coverage was terminated. *Bates,* 749 P.2d at 47-48, 49-50.

As for the other Restatement factors, the place where the injury occurred will be New Jersey where Chubb has been investigating the claim since December 2019, or Virginia where a determination of coverage will eventually be adjusted. Defendants do not ask to transfer the case to New Jersey or Virginia.

Chubb relies on Plaintiffs' New York residency, which it asserts is the place where the relationship between the parties is centered and where any financial loss will be felt. The Court is not persuaded that weight given to the residence of the victim plaintiff in *Bates* is directly on point here. In *Bates,* the court was concerned about the victim plaintiff's inability to obtain coverage for her medical care where she lived. By analogy, the failure to cover and/or an ultimate denial of coverage causes an injury to Plaintiffs in Arizona, where the artwork has not been replaced and their Arizona holdings have been reduced in value. The Plaintiffs have suffered a financial loss in Arizona.

None of the Restatement § 6 factors[5] can establish New York as having a more significant relationship to the dispute than the state where the injury occurred. "The genesis of the policy does not control and an insurer that provide[s] coverage on a national basis should have expected it might be required to perform its obligations in another state which its insured relocated to." (Response (Doc. 13) at 12 (citing *Bates*, 749 P2d. at 1372)). Chubb provided worldwide coverage for Plaintiffs' valuable property and should have expected it might be required to perform its obligations in Arizona, especially when it was told that the artwork was located there. "Therefore, because the location of the injury controls under § 146 and no other state has a more significant relationship, this Court should apply [Arizona] law to Plaintiffs' bad faith claim." (Motion (Doc. 13) at 13.)

---

[5] "Once the court identifies the state where the injury occurred, it then considers whether any other state has a more significant relationship by considering the following factors: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." (Motion (Doc. 13) at 11 (citing Restatement (Second) of Conflicts of Laws § 6).

Arizona's conflict of law for the breach of contract insurance claim follows the Restatement (Second) of Conflicts of Laws § 193. "The validity of a contract of . . . insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy." Similar to the Restatements for bad faith insurance claims, § 6 applies if "with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied." *Id.*

"Once the court identifies the state where the parties understood the risks were located, it then considers whether any other state has a more significant relationship by considering the factors outlined in §§ 6 and 188." (Motion (Doc. 13) at 14 (citing *Labertew v. Chartis Prop Cas. Co.,* 363 F.Supp. 3d 1031 (Ariz. 2019), *appeal dismissed* 2019 WL 2592626 (9th Cir. April 8, 2019)). Specifically, § 188 directs courts to consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."

Like it did in the context of the bad faith insurance claim, Chubb argues that the understood policy risk was in New York because the homes insured under the homeowners policy were there and the underwriting documents reflect Chubb "understood the jewelry and art were to be kept in Plaintiffs' New York City apartment." (Motion (Doc. 13) at 16.) Like the Court did in the context of the bad faith claim, it finds that the underwriting evidence presented by Chubb is disputed by evidence presented by the Plaintiffs. "Therefore, [Arizona] has the most significant relationship to the breach of contract claim." *Id.*

This significant relationship is not disturbed because the place of contracting was in New York or if Plaintiffs are New York residents. The Court notes that only Plaintiff Werner alleges she is a New York resident; Plaintiff Altschuler alleges he is an Arizona resident. The significant relationship between Arizona and the insurance claim defeats

Chubbs' argument that retaining jurisdiction in Arizona is contrary to Arizona's public policy of providing a protective forum only for its residents. (Reply (Doc. 21) at 11-12 (citing Brink v. First Credit Res. 57 F. Supp 2d 848, 861 (Ariz. 1999)). It does not matter that Chubb is an Indiana corporation or that the claim investigation is in New Jersey and the claim will eventually be adjusted in Virginia. The Court finds that under the homeonwers' policy offering worldwide coverage for valuable articles, especially where Chubb was told the location of the articles was Arizona, the negotiated risk was the locus of the insured property, which was Arizona. The Court finds that Arizona law applies.

This Court, sitting in Arizona, is more familiar with Arizona law than the United States District Court in New York, and this factor cuts against transferring the case to New York.

### 3. The plaintiff's choice of forum.

This is by far the most important factor under *Jones* as mentioned above. The Plaintiffs' choice of forum, Arizona, tips the question of venue in favor of the Plaintiffs unless "plaintiff does not reside in the forum state, (Motion (Doc. 13) at 18 (citations omitted), or "where the forum lacks a 'significant connection' to the activities alleged in the complaint" (Response (Doc. 17) at 7 (citations omitted). *See Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968) (where operative facts have not occurred within forum originally selected and that forum has no particular interest in the parties or the subject matter, plaintiff's choice is entitled to only minimal consideration). The Court has, however, found that the evidence arguably supports Plaintiffs' allegation that the parties intended to cover a risk in the State of Arizona. The property which is the subject of the lawsuit, the artwork and watch, were allegedly located in Arizona and the alleged theft occurred in Arizona. The impact of the theft, including Chubb's delay in determining coverage and/or denial will be felt in Arizona because Plaintiffs' Arizona personal property no longer includes these items and has been reduced in value. Arizona has a significant connection to the activities alleged in the complaint.

Therefore, Chubb's assertion that Plaintiffs' residence is in New York does not defeat the preference given the Plaintiffs' choice of forum in Arizona. The Court notes that New York residency is only undisputed for Plaintiff Werner. Plaintiff Alstchuler asserts he resides in Arizona, but it is undisputed that he lives in New York with his wife and child. As the Court previously noted when discussing diversity jurisdiction, the claims of residency may be inarticulate assertions of state citizenship, which is determined by the state of domicile, not residency. A person's domicile is their permanent home, where they reside with the intention to remain or to which they intend to return. *Supra. above* (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)). Chubb ignores the persuasive impact of such evidence <u>when combined with intent</u> to establish a person is domiciled in Arizona and a citizen of Arizona.

Altschuler presents evidence that he moved to Arizona at the age of 13 and has always had an Arizona driver license and been a registered Arizona voter. (Altschuler Decl. ¶ 2.) According to the Social Security Administration, he is an Arizona resident. ¶3. As an undergraduate, he attended the University of Arizona and the Rogers College of Law. 14. He practiced law in Arizona with Snell & Wilmer. 15.  After leaving Snell and Wilmer, he traveled and worked in other states and Europe, but also maintained his Arizona residency. 15. He alleges his personal and business life are centered in Arizona. He is a beneficial owner of Wetmore Land, a medical office complex in Tucson, and through a partnership owns a parcel of raw land in northern Arizona. He does not own any other property in any other state. The New York property is owned by his wife. He used his family home, which was owned by his parents and then transferred to his sister, as his Arizona resident address and then more recently has used a post office box. His personal, family, and financial documents, including the Chubb billing statements, are sent to this Tucson address. In short, what Chubb describes as Altschuler's "historical connections to Arizona," (Reply (Doc. 21) at 1), are the type of connections which support a claim of domicile if a person intends to make a certain definite place one's permanent abode, even while residing somewhere else.

The Court finds that Altschuler resides in New York, but presents evidence that he is a citizen of Arizona. The Court stops short of drawing such a conclusion because Altschuler makes no such assertion of intent. Altschuler's residency in New York does not defeat Plaintiffs' choice of form because Arizona has a significant connection to the activities alleged in the complaint. *See Global Thermoforming Inc. v. Auto-Owners Ins. Co.*, No. CV-20-01614-PHX-SMB, 2021 WL 65981, at *5 (Ariz. Jan. 7, 2021) (finding allegations of undue delay, an unfair investigation process, and failure to meet industry standards at least partially connected to Arizona, therefore, rejecting assertion that action is "unconnected" to selected forum, Arizona). The court in *Globel* held that evidence and connections in Wisconsin might outweigh the Arizona connections but that was to be determined by balancing the other Jones factors and does not itself render plaintiff's forum "unconnected." The court in *Global* resolved the *Jones* factors with an eye toward the great weight merited by Plaintiff's original selection. *Id.* In other words, this Court will not lightly disturb Plaintiffs' choice of forum, and Chubb must make a strong showing of inconvenience to prevail.

    4 and 5.  <u>The respective parties' contacts with the forum and the contacts relating to the plaintiff's cause of action in the chosen forum.</u>

Plaintiffs have contacts with Arizona and New York as described above. Generally, Defendant Chubb has no greater contact with New York than it has with Arizona. This factor is a comparative analysis examining the general and case specific contacts that both parties have with either forum. *Global*, 2021 WL 65981, at *6 (Ariz. Jan. 7, 2021) (citing *Porter v. Chetal*, No. 3:13-cv-00661-LRH-VPC, 2014 WL 2890810, at *3 (D. Nev. June 25, 2014) ("Because both parties have meaningful contacts with the chosen forum of Nevada, the Court finds this factor does not support transfer."); *Davis v. Soc. Serv. Coordinators*, No. 1:10-cv-02372-LJO-SKO, 2013 WL 4483067 (E.D. Cal. Aug. 16, 2013); *Ahead, LLC v. KASC, Inc.*, No. C13- 0187JLR, 2013 WL 1747765 (W.D. Wash. Apr. 23, 2013) (holding transfer appropriate where KASC had "only moderate contacts with Washington" few of which related to the claim, but "[b]y contrast, both parties have strong contacts in Massachusetts.")). "Case related contacts are generally given greater

weight." *Global*, 2021 WL 65981, at *6 (citing *Silver Valley Partners, Ltd. Liab. Co. v. De Motte*, No. C05-5590 RBL, 2006 WL 2711764, at *3 (W.D. Wash. Sep. 21, 2006) (Given that both parties have case-related contacts with the District of Idaho, and only plaintiffs have case-related contacts with the Western District of Washington, the factor of the respective parties' contacts with the forum weighs in favor of transfer to the District of Idaho.").

Here, both parties have meaningful connections with Arizona. Chubb's contacts are through its national operations, which include Arizona and New York. Plaintiffs are accurately described by Chubb as Altschuler's "historical connections to Arizona." Both parties have case related connections with Arizona. Plaintiff chose to secure coverage for valuable articles located in Arizona, the theft occurred in Arizona, and the injury impacted Plaintiffs' Arizona property. Chubbs' investigation of Plaintiffs' theft claim reached Arizona. The Court finds these factors tip slightly in favor of New York because the insurance policy was negotiated and executed in New York and Plaintiffs' location in New York meant that Chubb conducted this important aspect of its claim investigation in New York, not Arizona. The balance of this factor tips in favor of transferring the case to New York.

6.  <u>The differences in the costs of litigation in the two forums.</u>

Chubb submits that litigation will cost less in New York because all of Chubbs' employees who have relevant evidence are on the east coast, including the New York based Chubb agent and claim investigator, the claim adjusters, and Plaintiffs live in New York. Chubb ignores the discovery related to Plaintiffs' allegation that the artwork at all times, since he purchased it prior to his marriage, has been and was housed in Arizona. Likewise, evidence to support the Plaintiffs' claim of theft, including the housekeeper who discovered it and the police to whom it was reported and who investigated the theft, are in Arizona. Chubb submits that any evidence from Plaintiffs' sister and the housekeeper should not outweigh more important evidence from the New York area witnesses. Chubb argues the Arizona witnesses, while important to prove a criminal case of theft, are not party

witnesses, who will be required to present evidence directly relevant to Chubbs' claim adjustment process and determination of Plaintiffs' insurance claim and are all located in or near New York. (Motion (Doc. 13) at 8) "Any documents located in Arizona can easily be electronically transmitted to the parties." *Id.* (citing *Nikola Corp. v. Tesla Inc.,* No. CV 18-1344 PHX-JAS, 2018 WL 6584981 * 4 (Ariz. October 29, 2018)).

The Plaintiffs argue that the cost of litigating in Arizona is substantially less than litigating in New York; "[i]t is axiomatic that attorney hourly rates in New York City far exceed those of Tucson." (Response (Doc. 9) at 17). Plaintiffs would be required to secure counsel to litigate the case in New York, who likely would be less well-informed regarding Arizona law. Alternatively, Plaintiffs' Arizona counsel would have to travel to New York. Chubb already has Arizona counsel, who is familiar with Arizona law. This inconvenience for Plaintiffs is weighed against the inconvenience of deposing witnesses or calling witnesses for trial, who reside outside Arizona.

It is difficult for the Court to assess the merits of Defendants' assertion that evidence related to the alleged Arizona theft will have little relevancy to the case because the record does not eliminate it as a reason for the delay in adjusting the Plaintiffs' insurance claim. The difference in litigation costs being more for the Plaintiffs in New York is offset by increased litigation costs to Chubb because its employees are in or near New York, if the forum remains Arizona. While the east coast witnesses will have to travel for the Arizona trial, the cost of deposing them might be reduced if Plaintiffs' attorney travels to them. Nothing precludes such cost saving arrangements. The Court is mindful that "'transfer should not be allowed if the party requesting transfer is merely attempting to shift the inconvenience from one party to the other.'" (Response (Doc. 17) at 9 (citing *Silver Valley Partners, LLC v. De Motte*, No. C05-5590 RBL, 2006 WL 2711764, at *4 (W.D. Wash. Sept. 21, 2006)). The Court nevertheless finds this factor tips in favor of transferring the case to New York.

7. The availability of compulsory process to compel.

Like Plaintiffs' choice of forum, "[t]he convenience of the witnesses is frequently

the most important factor when determining which forum would be most appropriate." (Response (Doc. 17) at 9 (citing *Global*, 2021 WL 65981 at *5; 15 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3851, at 264 ("If the forum chosen by plaintiff will be most convenient for the witnesses, this is the most powerful argument against transfer.")). "'Here, courts look to who the witnesses are, where they are located, what their testimony will be, and why such testimony is relevant.'" *Id.* (quoting *A.J. Industries, Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974)). "The location of witnesses must weigh very heavily in favor of transfer to overcome the strong presumption in favor of the plaintiff's choice of forum." *Id.* (citing *Gill v. Aramark Sports & Ent. Servs. LLC*, No. CV-20-08321-PCT-SMB, 2021 WL 2454035, at *3 (Ariz. June 16, 2021)).

Following on the heels of the Court's conclusion that litigation costs will be greater in Arizona because the Chubb employee witnesses will have to travel to Arizona,[6] it seems logical that the case should be transferred to New York for their convenience. Chubb argues their convenience is paramount because the New York claim investigator and Virginia claim adjuster will have highly relevant evidence compared to the Arizona lay witnesses. This, however, ignores that "[i]t is 'the convenience of non-party witnesses, rather than that of employee witnesses, that is the more important factor and is accorded greater weight.'" (Response (Doc. 17) at 10 (quoting *Cohen v. State Farm & Cas. Co.*, No. C1:09-CV-1051 AWI DL, 2009 WL 2500729, at *4 (E.D. Cal. Aug. 14, 2009)).

Plaintiffs argue that the convenience of the witnesses weighs against transfer because all the non-party witnesses are located in Arizona. The important witnesses being promoted by Chubb, the claim investigators and adjusters, are located in or near New York. Importantly, the witnesses Chubb identifies are its employees and uniformly under its control. Chub could require, and it is generally assumed, would require them to travel to Arizona for trial. (Response (Doc. 17) at 10 (citing *Managed Protected Servs., Inc. v.*

---

[6] Plaintiffs point out that for the claim adjuster, who is located in Virginia, he or she will be required to travel by air and stay overnight in New York, with the difference being a shorter and less expensive flight there than if the forum is Arizona.

- 16 -

*CREDO Petroleum Corp.*, No. CV-12-00080-PHX-GMS, 2012 WL 3264515, at *3 (Ariz. Aug. 9, 2012) (citing *Berry v. Potter*, No. CIV 04–2922–PHXRCB, 2006 WL 335841, at *5 (Ariz. Feb.10, 2006) (discounting inconvenience to a party's employees who could be compelled to testify as witnesses)*; FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F.Supp. 1307, 1311 (N.D.Ill.1993) ("[I]t is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily[.]")).

In determining whether this factor weighs in favor of the transfer, the court considers not just how many witnesses each side has and the location of each, but, rather, the court considers the importance of the witnesses. *State Street Capital Corp. v. Dente*, 855 F.Supp. 192, 198 (S.D. Tex. 1994); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335–36 (9th Cir.1984) (analyzing this factor in a forum non conveniens case). "In other words, this factor necessitates both a quantitative and qualitative analysis." *Fontaine v. Washington Mut. Bank, Inc.*, No. CV08-5659PSGEX, 2009 WL 1202886, at *3 (C.D. Cal. Apr. 30, 2009)

Based on the record before it, the Court cannot discount the importance of the non-party witnesses who have information about the alleged stolen property and Chubb's investigative efforts in Arizona. From a qualitative standpoint, the Court must find them to be the most important witnesses when compared to party-witnesses, Chubb's employees. Therefore, the Court considers the convenience of the forum, as follows:

> Virginia (last name unknown) and Rosie Encinas, who provided assisted living services for the elderly Altschulers. Virgina is expected to provide testimony with regard to the storage and location of the lost property, and also with regard to Chubb's investigation. Rosie Encina translated for Virginia when she informed Mr. Altschuler about the break-in and theft of the property. She, likewise, has testimony about the contested theft.
>
> Terry Brophy and James Russel are officers with the Pima County Sheriff's Office, who investigated the alleged theft and can describe it, testify as to what is in their reports and what they concluded, and describe speaking to Chubb's investigator.
>
> Janet Altschuler is Mr. Altschuler's sister. She is the legal owner of the family residence and is aware of the property's storage and can provide testimony regarding Chubb's investigation.
>
> Lisa MacCollum, Mr. Altschuler's ex-girlfriend, who resides in Phoenix, was with Altschuler when he purchased the art that was stolen "(Chubb claims

- 17 -

> that Mr. Altschuler never owned the subject art)." Chubb's investigators spoke to her, too.
>
> Michael, a long-time contractor for the family, was performing work at the family home around the time of the theft. He can describe where the art was stored, its security, and the conditions of the property at the time of the loss.

(Response (Doc. 17) at 10-11.)

The Court finds that for the convenience of these witnesses, the case should remain in Arizona.

### 8. The ease of access to sources of proof.

This is a neutral factor, with access being equally divided between the Arizona non-party witnesses and witnesses on the east coast. Also, as noted by Defendants: "Any documents located in Arizona can easily be electronically transmitted to the parties." *Supra* (citation omitted.) The same is true for documents located in New York which can easily be electronically transmitted to the parties.

### C. Conclusion

"[T]he purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *LeRoy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979). In making its determination, the Court looks to the *Jones* factors.

The Court tabulates the *Jones* factors as follows: 1) the location where the relevant agreements were negotiated and executed tips in favor of transfer to New York; (2) because the Court rejects Chubb's assertion that the choice of law should be New York and finds that Arizona law applies, the state that is most familiar with the governing law is Arizona; (3) the plaintiff's choice of forum is Arizona, and the Court found that Arizona has a significant connection to the Plaintiff's claim; (4 and 5) the respective parties' contacts with the forum is a neutral factor but the contacts relating to the plaintiff's cause of action tip in favor of transferring the case to New York; 6) the differences in the costs of litigation in the two forums favors transferring the case to New York; 7) the availability of compulsory process to compel attendance of unwilling non-party witnesses tips in favor of Arizona for

the convenience of the non-party witnesses, and 8) ease of access to sources of proof is a neutral factor.

The *Jones* factors are split evenly between the two forums, but the Court must make more of a qualitative than a quantitative inquiry. Qualitatively, the two most important factors, the Plaintiffs' choice of forum and convenience for witnesses, especially non-party witnesses, cut strongly in favor of Arizona. The factors tipping in favor of New York are neither so important nor do they tip so decisively in favor of New York. Because the Court found that in addition to Plaintiff Altschuler's connection to Arizona, the state of Arizona has a significant connection to the claim, the Court will not lightly disturb Plaintiffs' choice of forum. With this factor cutting in favor of Arizona, Chubb is required to make a strong showing of inconvenience to prevail. Chubb has failed to make the requisite showing.

**Accordingly,**

**IT IS ORDERED** that the Motion for Transfer of Venue (Doc. 13) is DENIED.

**IT IS FURTHER ORDERED** that the Motion for Application of New York Law (Doc. 13) is DENIED.

**IT IS FURTHER ORDERED** that the Motion for Leave to file a Sur-reply (Doc. 24) is DENIED.

**IT IS FURTHER ORDERED** that the case management scheduling conference set by Order of the Court (Doc. 12, filed June 2, 2021) is reinstated. All directives contained in that Order shall apply, with the scheduling conference reset to: **Tuesday, October 5, 2021, at 10:30 a.m.**

**Dated this 17th day of September, 2021.**

Honorable David C. Bury
United States District Judge