Altschuler v. Chubb
21-CV-119

**INDEX OF EXHIBITS**

| Tab | Description of Exhibit |
|---|---|
| 1 | **Exhibit 1**: June 20, 2020 Provenance Report of J. Chvostal CHUBB-Altschuler0001567 – 1583 |
| 2 | **Exhibit 2:** November 8, 2021 Provenance Opinions of J. Chvostal, CHUBB-Altschuler0000543 – 572 |
| 3 | **Exhibit 3**: Printed Editions Art Blog – What is an Artist's Proof? February 10, 2021 |
| 4 | **Exhibit 4**: April 1, 2022 Report of R. Rivlin ALTSCHULER001155 – 001159 |
| 5 | **Exhibit 5**: Subpoenaed Records from Crystal & Co., Crystal & Co. 000183; 000238 – 243 |
| 6 | **Exhibit 6**: Subpoenaed Records from James Corcoran Gallery, James Corcoran Gallary 00003, 000024 – 25 |
| 7 | **Exhibit 7**:   Subpoenaed Records from Crystal & Co., Crystal & Co. 000381, 522, 638 - 640 |
| 8 | **Exhibit 8**: Email communications between D. Altschuler and Crystal & Co., ALTSCHULER01240  -1244 |
| 9 | **Exhibit 9**:   Subpoenaed Records from Crystal & Co., Crystal & Co. 000870; 872 – 000878 |
| 10 | **Exhibit 10**: Plaintiff's Amended Responses to Non-Uniform Interrogatories dated October 18, 2022 – NUI no. 9, NUI no. 1 |
| 11 | **Exhibit 11**: October 6, 2020 EUO of D. Altschuler: 92: 5 – 21, 98:11 – 14, 157: 19 – 158: 21, 157: 19 – 158: 21, 159: 9 – 17, 160: 21 – 161: 7, 180: 11 – 182:10 |
| 12 | **Exhibit 12**: Masterpiece Policy 138086452-05 CHUBB-Altschuler/Werner 000001, 000027-29, 000073 |
| 13 | **Exhibit 13**: Subpoenaed Records from Pima County Sheriff's Department Pima County SD SDT 02 0000144 - 148 |
| 14 | **Exhibit 14**: Subpoenaed Records from Pima County Sheriff's Department PCSD 000023 |
| 15 | **Exhibit 15**: CHUBB-Altschuler/Werner 000313 – 316 |
| 17 | **Exhibit 16**: Signed Sworn Proof of Loss |
| 17 | **Exhibit 17**: Claim File Entries CHUBB-Altschuler/ROLEX & ART 0000580-581, 000587, 0000845, 0000849, 00001345, 00001753-1760, 0002350, 2428, 2460 – 2464 |
| 18 | **Exhibit 18:** Deposition Transcript of J. Skipton 55: 8 – 56:9; 156: 14 – 25 |
| 19 | **Exhibit 19:** February 5, 2020 Recorded Statement of D. Altschuler CHUBB-Altschuler/Werner 000177-179 |
| 20 | **Exhibit 20:** May 19, 2022 Letter from R. Cathcart to J. Yu pages 2 – 4 |
| 21 | **Exhibit 21:** Declaration of G. Vazquez |
| 22 | **Exhibit 22**: Trial Deposition Testimony of G. Vazquez, 13: 4 – 20, 15: 6 – 16: 11, 19: 14 – 19, 27: 15 – 21, 28:14 – 29:5 |
| 23 | **Exhibit 23**:  October 6, 2020 EUO of D. Altschuler 11: 19 – 21; 12: 17 – 25, 39:18 – 40: 7 |

| 24 | **Exhibit 24**: September 29, 2021 Continued EUO of D. Altschuler 253: 3 – 254: 2, 277:5 – 283:20, 277: 21 – 25 |
|---|---|
| 25 | **Exhibit 25**: Exhibit "DD" to EUO |
| 26 | **Exhibit 26**: December 15, 2021 Coverage Denial Letter CHUBB-Altschuler/ROLEX & ART 00007 – 000012 |
| 27 | **Exhibit 27**: Complaint, Dk. 1 |
| 28 | **Exhibit 28**: Plaintiff's Responses to Non-Uniform Interrogatories dated April 25, 2022 – NUI no. 1, NUI nos. 2 and 3 |
| 29 | **Exhibit 29**: November 15, 2022 Deposition Transcript of D. Altschuler, 130: 4 – 8, 208: 20 – 209: 21, 242:18 – 243: 11; 245: 1 - 8 |
| 30 | **Exhibit 30**: March 18, 2008 Invoice #1048, CHUBB-Altschuler/ROLEX & ART0000821 |
| 31 | **Exhibit 31**: Subpoenaed Records from Crystal & Co., Crystal & Co.000198, 288 – 292, 0001570 – 1572 |
| 32 | **Exhibit 32**: July 10, 2020 Recorded Statement of D. Altschuler page 5, 8, 9 |
| 33 | **Exhibit 33:** March 31, 2020 Letter from Brown George Ross, LLP to Bruno Derval |
| 34 | **Exhibit 34:** Subpoenaed Records of Wind Vintage E. WIND SDT 00002 |
| 35 | **Exhibit 35:** Expert Report of J. Skipton ALTSCHULER001164 – 001172 |
| 36 | **Exhibit 36:** Deposition Transcript of R. Berman 68: 22-69: 6 |

# EXHIBIT 1

*Report Subject:* Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)

*Report Date:* June 20, 2020

*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb

*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insured")

*Claim Number:* 092020001456

---

INTRODUCTION

---

In 1986, the Keith Haring (American painter, muralist, and cartoonist, 1958-1990), produced a set (or suite) of four silkscreen prints that represented his close friend, the American artist Andy Warhol (d. 1987), in various guises as a cartoon mouse. Below is one example of the series recently sold at Sotheby's London (Fig. 1). Collectively and individually, the four prints are known as *Andy Mouse*. Although the four images are related thematically and stylistically, it is rare to find a complete set of four prints on the market or in a single private or public collection. This is not surprising given that the works were and are highly prized since both Haring and Warhol were involved in their production and relatively few sets were printed in 1986 for sale specifically on the art market—an edition of thirty sets.






Figure 1.

Keith Haring
1958 - 1990
*ANDY MOUSE* (L. PP. 64-65)

The complete set, comprising four screenprints in colors, 1986, vibrant impressions, each signed by Andy Warhol and Keith Haring in pencil, dated, inscribed with Haring's insignia, numbered PP 2/5 (printer's proofs aside from the edition of 30), printed by Rupert Jasen Smith, published by George Mulder, New York, on Lenox Museum Board, each framed
each image: approx. 910 by 900mm 36 by 35 3/8 in
each sheet: approx. 965 by 965mm 38 by 38in

Sold at Sotheby's, London
PRINTS & MULTIPLES
27 March 2018, Lot 161
Estimate: 300,000.00 — 500,000.00 GBP

Lot Sold For: 681,000.00 GBP

In addition to thirty sets of four (or one-hundred-twenty prints total), Haring's publisher (George Mulder Fine Arts, New York), also issued three smaller, limited editions that were outside of the commercial edition.  These other limited-edition sets (twenty sets total) were not necessarily intended for sale on the open market and consisted of 10 "Artist' Proofs", 5 "Printers Proofs" and 5 "Hors d'Commerce.  Haring also reused the images to produce works of a different size and using other printing methods (for instance lithography), which are easily distinguishable from the 1986 groups.

ABOUT LIMITED-EDITION INSCRIPTIONS: THEIR SIGNIFICANCE TO PROVENANCE RESEARCH

Limited edition prints, like each of the four, claimed *Andy Mouse* prints, bear a handwritten or stamped inscription stating their incremental/sequential place in the edition.  Conventional practice dictates that the size of the edition (i.e. the number of prints made in the run) also be specified on the work.  This information is given thusly: 12/600; meaning that this example was the twelfth print (or group of print) of an edition of six hundred printed in that run.

While the custom of numbering prints is primarily a marketing tool (implying rarity), it also provides an invaluable means for identification purposes, especially when the provenance of a work is important.   Essentially, these edition numbers are serial numbers, just like those found on paper currency (which is a type of print used for trade) or on automobiles or electronics.  They are unique to the print itself or, as with those in the *Andy Mouse* suite, to the group of four prints compromising the set. Indeed, like other products of mass-production, printed images can appear to be absolutely identical to each other.  For this very reason, art dealers usually include the precise edition number on their receipts and both auction records and scholarly catalogues frequently cite such annotations.  So, knowing a print's number provides a definitive basis for tracing its history, identifying the work if it were stolen, and distinguishing it from all other examples.

PRE-LOSS INFORMATION SUBMITTED TO THE CARRIER REGARDING THE CLAIMED PROPERTY

The claimed property is itemized in The Insureds' most recent Valuable Articles policy under Fine Art, entry 2, as follows:

"2 ANDY WARHOL AND KEITH HARING ANDY MOUSE, 1986 COLOR SILKSCREENS EDITION OF 30 38 X 38 INCHES
$1,500,000"

The description clearly identifies the "silkscreens" as being from the commercial edition of thirty made in 1986.  The dimensions given also support this association.  Notably, however, the listing does not indicate the items' exact serial/edition number within that group or the specific number of prints The Insured own.  That information appears in an appraisal by Dina Brown of Los Angeles, CA, submitted to the Carrier roughly sixteens month before the claimed loss (December 23, 2019).  According to the document, dated July 25, 2018, there were four prints (i.e. a complete set) each of which displayed the edition number "3/30".  The appraisal provides this information not once, but twice, as can be seen, below, within the added red circles in the appraisal page reproduced below:

# DINA BROWN ART APPRAISALS
### WWW.DINABROWNARTAPPRAISALS.COM

1.

Object: Limited edition
Artist: *Keith Haring (American, b. 1958)*
Title: *Andy Mouse (Suite of 4)*
Year: *1986*
Medium: Screenprint
Sheet size: 38 x 38 inches
Edition size: 30
Edition number: 3/30
Framed: No
Signed: Yes, '3/30, 'K. Haring, '86' in pencil [LR], also signed by Andy Warhol, 'Andy Warhol'
in pencil [LL]

Description: Four images of Andy Warhol drawn with mouse ears in bright, clear colors
and black line work. In the first image, 'Andy Mouse' is standing in a pile of money; in the
second image, he is being carried by a group of figures in rainbow colors; in the third image
two blue figures hold a bill with Andy Mouse in the center; the last image is a full frontal
of Andy Mouse standing with his hands on his hips.

Condition: Excellent, never framed in portfolio box

Provenance: Purchased from B-2 Gallery, Santa Monica, CA



Replacement cost: $1,500,000.00

Total replacement cost: $1,500,000.00

Douglas Altschuler
Prepared to Assist with Insurance Coverage
Effective Valuation Date: July 25, 2018
Report Issue Date: July 25, 2018                              Page 4 of 5

CHUBB-Altschuler/ROLEX & ART 00001569
092020001456

Other, object specific details are given regarding the subject items such as the works' condition and method of housing/storage, stating that they were in "Excellent" condition and that the prints were "never framed" but stored in a "portfolio box" (see passage outline in green, in the page reproduced above). The document also names the gallery from whom the prints were purchased, a "B2-Gallery, Santa Monica, CA" (see passage outline in blue, in the page reproduced above).

### INFORMATION ABOUT THE SUBJECT ITEM RELATED IN THE POLICE REPORT (DATED 1/8/2020)

According to the Police Report, The Insured stated he had purchased the stolen prints in 1987 for $5,000.00, that they were from the limited edition of thirty (and, thus, not from any of the other editions), and that he might have additional paperwork (including a "Certificate of Authenticity). He also stated that the stolen items were insured. See the snapshot from the report, below.

> Douglas stated his mother fell and was currently in a rehab facility for the last two to three months and she was no longer in the house.
>
> He stated the four pieces of art were called Andy Mouse, a set of four silk screen prints featuring Andy Warhol and him depicted as Mickey Mouse in a series of four different silk screen prints by the artist Keith Haring. There were a set of 30 prints and at that time he did not know which number of the series of 30 were his. He stated he was going to look for a Certificate of Authenticity and try to get the numbers. He also advised the art is insured.
>
> He stated he purchased the art in 1987 and paid $5,000 for it, but when he purchased it in 1987 both artists were still alive, and now they are both deceased.

### PROVENANCE INFORMATION RELATED IN THE INSURED'S RECORDED CLAIM STATEMENT (FEBRUARY 5, 2020)

From the perspective of provenance research, the information found in the three documents referenced above is uncomplicated and without any apparent conflicts. One set of prints from the edition of thirty is referenced that was purchased in 1987 for $5,000.00 from a dealer in Santa Monica (the "B2-Gallery'). However, in his recorded statement, Mr. Altschuler discusses at length and in depth his ownership of the Itemized *Andy Mouse* prints (VAF no. 2) *and* another complete set. He describes where and when he purchased each suite and recalls, in some detail, their subsequent and disparate histories.

It is possible to reconstruct the provenances of each of these set, according to Mr. Altschuler's own recollections. This, I have done in the tables, below. One can also measure his accounts of the two sets against information in the scheduled description, the appraisal, and the Police report as well as against other, external evidence, including auction records, Haring's biography, dealer information, and other data.

CHUBB-Altschuler/ROLEX & ART 00001570
092020001456

| REFERENCE TO TWO SETS AND THEIR RESPECTIVE DATES OF ACQUISITION | |
|---|---|
| ***1987 SET*** | ***1989/90 SET*** |
| **Page 16** | **Page 16, the sentence at the left continues:** |
| Q: How long have you owned the four paintings [inaudible]? | and I believe the second set I bought, I mean, you, I'm really going back a long time now, sometime about two years later. |
| A: I had two sets one set I bought in 1987 [inaudible] 1987 . . . | Q: So in 1989? |
| | A: Roughly '89 or '90 |

## IDENTIFICATION OF THE STOLEN SET

### ***1989/90 SET***

**Page 18, center**

Q: Okay, and then the current set that you, you had up until it went missing, was that the one from 1987 or the one from 1989?

A: The one from, let's call it '89, '90 'cause I don't know what year.

Q: Okay.

A: It was the second set.

Q: So this second set, okay.

A: Yes.

## WHEREABOUTS OF THE 1987 SET

### ***1987 SET***

**Page 18, top**

Q: Okay, what happened to the other set?

A: I traded that set for some other art and it was around 2000.

Q: Around 200[0]?

A: Yes.

Q: Okay, do you still have the art that you traded for?

A: I'd have to check, I don't know, I don't know if I have it or whether I then subsequently traded that [inaudible]. I can answer, I can answer that question, but I don't have that answer now.

Q: Okay, you can find out?

A: Yes, sir.

CHUBB-Altschuler/ROLEX & ART 00001571
092020001456

## SOURCES OF ACQUISITIONS

### *1987 SET*

*Page 20*

Q: Okay, uh, this, the, the, the other set that you purchased in 1987 how is it that you came to purchase that set?

A: Walked into a gallery one evening in Santa Monica and saw it and liked it and bought it.

Q: Okay, where was that gallery in, in Santa Monica, I'm sorry, I didn't mean to say what I meant to say, what was the name of it?

A: I believe it was called the B1 Gallery [phonetic], now we're going back to 1987.

Q: Okay.

A: So…

Q: But, you believe it was the B1 Gallery?

A: Right, and I had purchased, you know, for me everything resulted in a fair amount of art over the last 30 or 40 years so…

Q: Uh-huh.

A: Uh, you could track down the B1 Gallery and call them and they might say we don't know who, who all [inaudible] used to be one gallery on Main Street in Santa Monica.

### *1989/90 SET*

*Page 18, bottom*

Q: And where was this second set purchased?

A: The, the second one?

Q: The second one in 1989?

A: That came directly from Keith Haring [phonetic].

Q: Okay, you purchased it directly from him?

A: Yes, I did.

Q: Before his death?

*Page 19, continuing from page 18*

A: I did.

Q: In 1991 if I read correctly.

A: Yeah, I purchased it before he, obviously [inaudible].

Q: Before he passed?

A: Correct.

Q: Okay.

A: It was [inaudible].

*Page 19, bottom*

Q: Okay, when you made this purchase in 1989 was it at a, was at a gallery or did you, in other words, how did you get connected with Keith Haring?

A: I met him in Phoenix at a, an event and I started talking to him and we sort of hit it off and…

Q: Uh-huh.

A: I said I really liked what you did and I bought a couple of things from him.

Q: Okay, what was the first [inaudible] from '89, do you recall?

A: Ballpark, I'm giving you [inaudible].

Q: Uh-huh.

*Page 20, continuing from page 19*

A: So around $10,000 or so.

Q: Okay, okay, now, I, I want to move to the, uh, where did the purchase take place, in Arizona?

CHUBB-Altschuler/ROLEX & ART 00001572
092020001456

A: Yes.

## LOCATIONS OF SETS DURING PERIOD OF OWNERSHIP

| _**1987 SET**_ | _**1989/90 SET**_ |
|---|---|
| *Page 24* | *Page 7* |

**1987 SET**

*Page 24*

Q: Was the, the, the four drawings that were purchased in 1987 were they ever displayed at all?

A: One set was displayed, yes.

Q: Okay, is that the set from 1987?

A: Correct.

Q: Okay, where was it displayed?

A: Uh, I was dating a woman at the time who worked in a museum and it was displayed in her museum…

Q: In her museum?

A: Yes.

Q: Okay, where was that museum located?

A: In Phoenix.

Q: And about when was that done?

A: Again you're asking me to go back a long time, I mean, first the time I purchased them probably somewhere after '87 and, and I don't know, into the early 90's, maybe, I, I just don't know [inaudible].

**1989/90 SET**

*Page 7*

Q: Okay, okay, um, the police report, um, we went over, and [inaudible] I have the report number and I have the, uh, detective assigned, Detective Brophy [phonetic]. Uh, I have put in three calls to Detective Brophy and I've requested, uh, a return call from him. But, I did speak to an employee of the Pima County Sheriff's Office, uh, his name is James Russell [phonetic]. And, uh, I informed his why I was calling and he said that he received a report from you on January the 8th, 2020 that a break-in had occurred at your mother's home in Arizona between October the 21st, 2019 and, and sometime before December the 23rd, 2019, would that be correct?

A: I mean, I don't know when the break-in occurred, [inaudible] the dates I gave them there must have been a reason for me giving them those dates.

Q: Okay.

A: I had seen the property sometime in October and it was not there in December.

Q: Okay, you had seen it in October?

A: Correct.

Q: Okay, where was it when you saw it?

A: Where in the house?

Q: Yeah, in the house.

A: It was in the living room of the house.

Q: Was it framed and displayed?

A: It was not framed and displayed, it was in a box.

Q: In a box.

A: Yes, sir.

Q: Okay, was there anything else in the box along with the…

A: Just four pieces of art.

Q: Okay, just the four drawings that each one is 38 by 38, is that correct?

A: Looking at that over there, I mean, I have not seen these in 30 years or something so I, my recollection is that's probably correct, yeah.

CHUBB-Altschuler/ROLEX & ART 00001573
092020001456

Q: Okay, uh, it's, you don't know the exact measurements?

*Page 8, continuing from 7*

A: Well…

Q: Okay.

A: Give or take a few inches, I think you're absolutely correct.

Q: Okay, were they framed ever at any point together?

A: Were, was this set framed [inaudible].

Q: Yes, together?

A: This particular set was never framed.

Q: Never framed?

A: Never.

*Page 22 (center)*

Q: Okay, you had indicated in, in your original statement that, um, I believe you had given to Kimberly's [phonetic] fax in our eastern claims service center that the art had been stored at your mother's house in Tucson, Arizona for about 15 or 20 years.

A: Yeah, probably longer than that I think, I think it was since [inaudible] bought it from Keith probably in 1990

## REFERENCES TO DOCUMENTATION

### *1987 SET*

*Page 20 (bottom)*

Q: Okay, so there may be a receipt, but you're not sure for the six-, for the 1987 purchase?

A: I believe I charged it on my AMEX card.

Q: Okay, but you, you, you wouldn't have a record?

A: Not from AMEX, I mean, [inaudible].

Q: [Inaudible] no, any credit card record?

A: I don't keep any of that stuff.

*Page 21, continuing from 20*

Q: Okay.

A: I mean…

Q: But, I know that's a long time.

### *1989/90 SET*

*Page 19*

Q: Okay, um, any documentation, uh, from that purchase?

A: I don't know, possibly, I mean, I can look.

Q: Okay, so, I believe it's pronounced provenance, but I get that wrong, so would it be, uh, it's directly from Keith Haring to yourself…

A: [Inaudible.]

Q: Would be the extent of any provenance?

A: Correct.

Q: Okay.

A: I may have one receipt somewhere, I do remember seeing one receipt, I don't know if I have the other, I mean, I can look.

CHUBB-Altschuler/ROLEX & ART 00001574
092020001456

A: Yeah, again, I, my mind's eye I remember seeing the receipt on a pink piece of paper…

Q: Uh-huh.

A: Somewhere, I was going through some stuff and sort of smiled when I saw that and when you see something from 30 or 40 years ago, I don't know where it is, but I can look.

Q: Okay, was there provenance [inaudible] with the set that you purchased in 1987?

A: I just got a simple piece of paper [inaudible].

***Page 27, center, mentioning an appraisal of the 1987 set prior to the Dina Brown 2018 appraisal***

A: I, I called and we were talking about the different Warhol series I think Endangered Species that I always wanted to get and we just started having a conversation and I mentioned what I had that I had one or two sets and talking about it. And I, I don't know, I, it must have been her because I wasn't aware that the value had gone up and she told me the value had gone up and I said yeah, can you give me an appraisal for those, I think the, the prior appraisal I had was done by someone who had purchased a significant amount of art from the, you know. I don't think they're familiar with that, she said fine.

Q: Okay, so…

A: She may have even suggested it, I don't remember whether she suggested I get a new appraisal or I asked for the appraisal.

***Page 30, regarding information provided, possibly, to Dina Brown for her appraisal***

Q: Yeah, okay, okay, and you provided all the information to her regarding the purchase location and the provenance for these four prints that she appraised, do you recall that?

A: Whatever she asked for, sir, I would…

Q: [Inaudible.]

A: I gave to her.

Q: You don't recollect that, okay.

A: Yes.

RECONSTRUCTING THE HISTORIES OF THE TWO SETS BASED ON THE INSURED'S RECORDED STATEMENTS

Using the information cited above, it is possible to summarize, as I have below, The Insured's statements regarding the provenances of the two sets of *Andy Mouse* prints he discussed in the interview.  I researched The Insured's accounts of both sets and compared my finding with data in Ms. Brown's appraisal and in the Police Report.  I have annotated The Insured's accounts with my findings as "notes".

---

**1987 SET**

- By 1987 – With B1 Gallery, Santa Monica, CA  – Purchased from B1 Gallery, Santa Monica, CA, by Douglas Altschuler [for $5,000.00, per Police Report].

    *NOTE: In his recorded statement, The Insured twice states that the vendor's name for the 1987 Set was the "B1 Gallery" located "on Main Street in Santa Monica" adding, later in the interview, "I told her [Dina Brown] where I purchased it from, I think, she was familiar with the gallery".  In her appraisal, Ms. Brown lists the provenance of the set she assessed as a "B-2 Gallery, Santa Monica. CA". Neither the researchers at the firm Gurr Johns nor Ms. Brown were able to identify this source.  When a member of the Gur Johns team spoke with Ms. Brown, they wrote in their report that she  "mentioned that she thought the dealer Ron Rivlin (of Revolver Gallery) had opened a pop-up gallery called "B-2 Gallery" in the past at Bergamot Station in Santa Monica.*

    *I was able to confirm the existence of a "B1 Gallery" in Santa Monica in the late 1980s.  In fact, from June 8 to July 2, 1986, it held an exhibition entitled "'Andy Mouse' Keith Haring's Hommage to Andy Warhol".  A poster for the event features an illustration of one of the Andy Mouse prints and states that the gallerists Robert Berman and Richard Duardo were hosting the show.  An article covering the exhibition also appeared in the Los Angeles Times on June 20, 1986, giving the gallery's address as 2730 Main Street in Santa Monica.*

- "After '87" or "into the early 90's" – "Displayed" at an unspecified Phoenix Museum.

    *NOTE: There are several art museums in Phoenix and its environs. In 1991 (March 23rd-May 12th) the Phoenix Art Museum held a major exhibition entitled "Keith Haring, Andy Warhol, and Walt Disney".  A sizable illustrated, exhibition catalogue accompanied the show, which included two prints from the suite, both from the edition of thirty.  These were catalogue numbers 131 and 132 and belonged to The Security Pacific Corporation (not The Insured).  Both are inscribed "28/30", not "3/30".*

CHUBB-Altschuler/ROLEX & ART 00001576
092020001456

- "Around 2000" – "Traded" for unspecified works of art from an unspecific source.

  *NOTE: According to the Dina Brown appraisal, the set purchased at the "B2-Gallery, Santa Monica" was edition number 3/30 or the 1987 Set. Auction records uncategorical support The Insured's statements that he had exchanged that set for other works of art "around 2000". Five independent auction listings prove that at least three of the four prints comprising the set that Dina Brown appraised as belonging to The Insured in 2018 had a significantly different ownership history -- one that buttresses The Insured's assertions that he had not owned the 1987 set since "around 2000".*

  *As Gurr John's report shows, the earliest of the 1987 set to appear on the market was sold at Sotheby's Amsterdam on May 14, 1996 (Lot 151). This same print was later sold at Sotheby's London on April 1, 2008 (Lot 435). Sotheby's New York sold two other sheets from the suite on April 29 (2006, Lots 422 and 423). The latter of the two lots (Lot 423) surfaced at Im Kinsky Auktionshaus, Vienna, on March 25, 2014 (Lot 260), having passed through the hands of Martin Lawrence Galleries, New York and a Viennese Private Collector.*

## 1989/90 SET

- Keith Haring until 1989/90.

- 1989/90 (but before Haring's death on February 6, 1990) – Purchased from Keith Haring in Phoenix (or "in Arizona") by Douglas Altschuler for "around $10,000 or so" together with "a couple of things from him."

  *NOTE: Haring kept a detailed journal for much of his adult life. There, almost daily, he noted his location, the names of people he encountered, his thoughts, and his professional and personal activities. Many of his journal entries have been published (Keith Haring [Author], Robert Farris Thompson [Introduction], Shepard Fairey [Foreword], Keith Haring Journals, [Penguin Classics Deluxe Edition, 2010]) and many are available to read online (see link). I searched those sources as well as biographies of Haring, contemporary periodicals, and news reports in order to determine if he was in Arizona in 1989-90, noting that Haring died of AIDS related complications on February 6, 1990.*

  *I found no references to the artist's presence in Arizona during the period in question. Haring did, in fact, make a well-publicized visit to Phoenix for six days*

*in December in 1986. The trip is document in the forward to the 1991 exhibition catalogue "Keith Haring, Andy Warhol, and Walt Disney" cited above (p. 7).  This seems to have been his only trip to the state.*

*Furthermore, I was also unable to confirm that Haring ever sold works directly to collectors.  This practice would have been highly unusual for an established artist with close and binding relationship with art dealers.  Moreover, given the small edition size of* Andy Mouse, *it is unlikely that a complete set of prints would have been available to sell to the Insured.*

- In or after 1989/90 until at least October 21, 2019 – Kept, "unframed" and "in a box", in the living room of The Insured's mother's home in Tuscan, AZ, where The Insured last saw them on October 21, 2019.
- December 23, 2019 – Discovered missing from The Insured's mother's home in Tuscan, AZ.

## DINA BROWN APPRAISAL ADDITIONAL COMMENTS

In light of the Insured's recorded statements of February 2020, the Dina Brown appraisal of 2018 presents numerous inconsistencies or contradictions.  The document provides a replacement value for specific and unique works, which are marked 3/30, that The Insured openly disclosed he did not own at the time of the appraisal.

Moreover, the source of Ms. Brown's information was The Insured himself, who commissioned the document and recalled speaking with Ms. Brown about the appraisal.  Details such as the place of purchase and edition number may well have been given on the original invoice, which he could have passed to her.  However, only the owner could have conveyed to the appraiser that the property was unframed and boxed. The Insured only vaguely recalled speaking with Ms. Brown.  But when an employee at Gurr Johns called her "on March 5, 2020. Ms. Brown informed Nicole that Douglas Altshuler was a client of her mother's. Ms. Brown never met Mr. Altshuler, never had direct contact with him, did not inspect the subject work first-hand, and was not provided images of the work or invoice paperwork."

To the best of my knowledge, the identify of Ms. Brown's mother has not been the subject of discussion. She is, in fact, an art dealer/broker, appraiser, and conservator named Elaine Efstathiou of Elaine Fine Art based in Torrance, California. In a 2004 obituary, a "Dina Brown of West Hollywood "is described as the "step-daughter" of a Stelios Efstathiou of Torrance and Elaine Efstathiou is named as the late Mr. Efstathiou's widow.  Ms. Brown's resume indicates that she served as the director of Elaine Fine Art from 1991-2003.  One of the firm's archived webpages dating from 2002 mentions "Dina", referencing

CHUBB-Altschuler/ROLEX & ART 00001578
092020001456

Ms. Brown. Her appraisal services are currently advertised on the company's website (https://www.elainefineart.com/appraisals).

Ms. Efstathiou herself "provides appraisals for the current retail replacement value of your artwork for insurance purposes" and specializes "in Pop Art Originals and Prints" like those that Haring produced (see link). In fact, Ms. Estathiou is currently offering for sale a complete set of Haring's *Andy Mouse* prints (see link). Why she passed the appraisal assignment on her daughter is not presently known.

Other details of Ms. Efstathiou's dealing may relate to statements The Insured namely his references to sell art, a recent purchase, and a "prior appraisal" of the subject property.

When he was asked if he had ever sold any works at auction, The Insured answered "I personally have never sold anything directly with an auction house, I have people that deal with putting anything I ever want to sale at auction, so I'm not sure where or what or any of that stuff, I have never put offered for sale, uh, my piece at auction period." [**31**] He then stated, "I do sell things at auction [**32**]".  "I have never have a person that does it for me, but that would be, that would be an, an insane thing to do [**32**]".

On page 27 of his recorded statement The Insured make a passing reference to the subject artwork's "prior appraisal done by someone" and he later discusses on page 45 "a painting" recently purchased for "a couple hundred thousand dollars" "over the phone and electronically"  from an unnamed source "in California".

Although, in the past, Elaine Fine Art had a brick-and-mortar gallery (at 2531 W.230th Street, Torrance, CA. 90505) no current address is given online.  The past activities of the business were not altogether typical of those that art dealers perform.  Today the firm describes itself as "a full service art brokerage. We buy and sell limited editions and originals as well as provide restoration services, appraisals, and framing assistance [https://www.elainefineart.com/]."

In 2017, the following text outlined the gallery's many services:

> Elaine Efstathiou of Elaine Fine Art has over 23 years experience in the Fine Art world and offers over 10,000 works on her website alone, including limited edition prints, sculpture, original works on paper and canvas along with mirrors, vases and other objects d'art.

> Here at Elaine Fine Art, we are proud to present our clients with an informative and helpful Internet atmosphere. For sellers, we offer access to an unlimited number of buyers without having to physically place their art on consignment. For buyers, we offer mint condition artwork at the best prices. In addition, Elaine Fine Art features other premium services such as certified appraisals, restoration services, and their newly developed auction feature. Elaine is a member of the IFAA - International Fine Art Appraisers society and offers competitive prices for all your appraising needs. Elaine has been conservator for nearly 20 years and has a separate company, The Art Doctor, for all your conservation needs. Elaine Fine Art's Auction feature allows clients to place their artwork at auction and monitor it throughout the selling process. A full array of

services and products are available through Elaine Fine Art. Artwork sold is guaranteed to be in mint condition and each piece comes with certified appraisals and certificates of authenticity.

We pride ourselves on our commitment to honesty and integrity in our business

The gallery could and still does offer an enormous stock of items for sale ("over 10,000 works") using a consignment structure whereby the owners simply listed their works for sale and retained physical possession of them.

Given Ms. Efstathiou diverse dealing, she may have brokered the sale of the 1987 set, written the "prior appraisal" for the subject property, and sold the Insured the painting mentioned. If this were the case, she could have had on file some of the information that Ms. Brown used in the 2018 appraisal, which could explain why she said she had no direct contact with The Insured.

# Preliminary E.U.O. Questions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)

**POLICE REPORT QUESTIONS**

In your recorded conversation with Mr. Fred White of Chubb last February, you discussed in detail your ownership of two complete sets or suites of Keith Haring's *Andy Mouse* screenprints, which Haring made in 1986.  We understand the sets were identical in nearly every respect and that that each of the sets consisted of four different prints showing the artist Andy Warhol in the guise of a cartoon mouse.

Regarding the two sets you discussed owning, you told Mr. White that you purchased the first suite from a B1-Gallery on Main Street in Santa Monica, in or about 1987. I will refer to them as the "1987 Set". You explained that "around 2000" you traded that set for other unspecified works of art.

You also spoke in some depth about purchasing the second set in Arizona from Keith Haring himself around 1989/90 for $10,000.00.  Those prints, you stated, were the ones that were never framed but stored, packed away in the living room of your mother's Tucson home for roughly three decades.  You confirmed that you last saw them in October 2019 and on December 23, 2019, you discovered the set was missing and later notified the Police.  I will refer to this set as the "1989 set".

So, accordingly, did not own the 1987 Set at the time of the loss and the 1989 Set was stolen in late 2019.

The Police Report you filed reads, "He stated he purchase the art in 1987 and paid $5,000 for it, but when he purchased it in 1987 both artists were still alive, and now they are both deceased."

1. Please explain the discrepancies between your respective statements to the Police in January 2020 and those you made to Mr. White less than a month later.

**SOME QUESTIONS SPECIFIC TO THE 1989/90 SET (The Claimed Set)**

1. Can you describe in detail your direct contacts with Haring?

2. How long did the purchase process take?

3. Aside from the claimed Andy Mouse prints, you said that you "bought a couple of things from him" that is, Haring.

4. What other works did you purchase from the artist, what did you pay for them, and where are those works now?

5. Why did you by a second set of four prints?

6. How were these payments made?

7. How and when did you receive the various items from Haring?

8. During the exchange, did you have contact with anyone else representing the artists?

9. The Keith Haring Foundation preserves all of the artist's personal and business paperwork. Would you be willing to sign a release allowing The Carrier's representative to contact the Foundation's archivist regarding your purchases directly from the artist?

**PRIOR APPRAISAL OF ANDY MOUSE PRINTS**

In your Recorded Claims Statement you said you had spoken with the appraiser Dina Brown about the Andy Mouse prints over the phone.  You said that you asked her "can you give me an appraisal for those, I think the the, *prior appraisal* I had was done by someone who [I]had purchased a significant amount of art from the, you know. I don't think they're familiar with that, she said fine." My questions are:

1. Why did you commission the "prior appraisal"?

2. From whom did you commission the appraisal and when?

3. What was the appraised value given in the document?

**DINA BROWN APPRAISAL QUETIONS**

1. Why, living in New York, did you choose Ms. Brown in Los Angeles to appraise works in Arizona?

Ms. Brown stated in a telephone conversation with a Chubb representative on March 5, 2020 that:

o you are a client of her mother's
o she (Ms. Brown) had never met you

- o   she never had direct contact with you
- o   she did not inspect the subject work first-hand
- o   she was not provided images of the work or invoice paperwork

In your recorded statement, you confirmed that Ms. Brown had never seen the works she appraised and you said it was "possible" that were a client of her mother's (p. 30). But, contrary to her statements, you stated that you had spoken to Ms. Brown directly and "I told her where I purchased it [the *Andy Mouse* prints] from, I think, she was familiar with the gallery [p. 28]". You also stated that provided to her "Whatever she asked for [p. 30]".   While Ms. Brown could have provided a general appraisal for a complete set of four *Andy Mouse* prints, since we are dealing with multiple originals, her appraisal includes specific information that is unique to the set you owned.  Her document states the gallery in Santa Monica where you purchased the set she appraised, it twice gives the edition number as the third of thirty, and it state how the works were "never framed" but stored in a "portfolio box".

1.  Where did this information come from?

2.  In your recorded statement you said that you had traded the set purchased 1987 in Santa Monica for other unspecified works of art "around 2000".  Why then did you have Ms. Brown appraise that traded set in 2018?

**ELAINE EFSTATHIOU OF ELAINE FINE ART**

1.      Are you familiar with an Elaine Efstathiou of Elaine Fine Art based in Torrance, California?

2.      If "Yes": Has Elaine Efstathiou of Elaine Fine Art ever acted as an art broker on your behalf, either selling or attempting to sell items you owned?

3.      If "Yes": What items and when?

4.      Have you ever purchased arts from Elaine Efstathiou of Elaine Fine Art?

5.      Has Ms. Efstathiou ever appraised any art works you own or have owned?

CHUBB-Altschuler/ROLEX & ART 00001583

# EXHIBIT 2



Chvostal Art Advisory, Inc.
*John J. Chvostal. PhD., Principal*

Mailing Address: P.O. Box 784
Tracyton, WA 98393
U.S.A.
Phone (Italy): +39 366 1079522
E-mail: jchvostal@icloud.com

Document Title: **Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)**
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

### REPORT OUTLINE

- INTRODUCTION
- SUMMARY OF INFORMATION CONSIDERED IN FORMING OPINIONS
- CHARACTERIZING MR. ALTSCHULER'S PROVENANCE CLAIMS
- OPINIONS REGARDING THE PROVENANCE AND IDENTITY OF THE CLAIMED PROPERTY
- GAUGING RARITY AND EDITION NUMBERS OF "ANDY MOUSE" PRINTS
- THE POSSIBILITY OF ADDITIONAL PROVENANCE DOCUMENTATION
- APPENDIX 1: PROVENANCE REPORT AND PRELIMINARY E.U.O. QUESTIONS - FOUR SCREENPRINTS (ANDY MOUSE SERIES, 1986) BY KEITH HARING (VAF FINE ARTS NO. 2), PP.1-14 (THE PRELIMINARY E.U.O. QUESTIONS, PP. 15-17, ARE NOT INCLUDED BELOW)
- APPENDIX 4: EXCERPT FROM EMAIL ("RE: BERMAN LETTER") FROM JOHN CHVOSTAL TO CHARLES RUBIN, DATED 23 NOV. 2020, WITH COMMENTS ON ROBERT BERMAN'S LETTER DATED 3 AUG. 2020 DELIVERED TO THE CARRIER.
- APPENDIX 2: EXCERPT FROM JOHN CHVOSTAL'S E-MAIL ("RE: CONTACT W/ LISA MACCOLLUM") TO FRED WHITE AND CHARLES RUBIN. 2 DECEMBER 2020.
- APPENDIX 3 - EXCERPT FROM FRED. E-MAIL ("CONTACT W/ LISA MACCOLLUM") TO CHARLES RUBIN AND JOHN CHVOSTAL. 1 DECEMBER 2020.

## INTRODUCTION

On 20 June 2020, I submitted to The Carrier a document entitled "Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)". It provided my analysis of the information available at that time relating to the early history of ownership of the claim property. The material examined included the 2018 Dina Brown appraisal, Mr. Altschuler's Police Report, his Recorded Claim Statement, and the Gurr Johns Reports. I discussed the uniqueness of the edition number (3/30) associated with the scheduled property. I also explained how information in the Schedule, in Dina Brown's appraisal, and in the Police Report were "uncomplicated and without any apparent conflicts [p. 4]" relative to where and when Mr.

CHUBB-Altschuler/ART 0000543
040520024846

## Chvostal Art Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

Altschuler could have acquired the Scheduled property. My report traced and compared Mr. Altschuler's references to owning two sets of prints, which he first mentioned to Chubb Special Investigator, Fred White in the Recorded Claim Statement. I outlined how The Insured's narrative seemed to explain why three of the four prints from the set inscribed "3/30" had appeared in auctions over the years. But his account of the second set (said to have been acquired directly from Haring) was, in my opinion, "highly unusual", "unlikely", and at odds with the historical record. His statements also fundamentally contradicted information in the appraisal and in the Police Report, which dated from less than a month before Mr. White's interview. Since then, a considerable amount of new information has come to light that provides additional insights allowing me to assess critically and in greater depth Mr. Altschuler's representations about the claimed prints and his ownership of a second set. This report picks up where the June 2020 report left off and for that reason I've included it as Appendix 1 herein for easy reference.

## SUMMARY OF INFORMATION CONSIDERED IN FORMING OPINIONS

I have carefully considered the 118 pages of provenance-related statements found in Mr. Altschuler's two Examinations Under Oath. I spoke at length via phone with Dina Brown about her appraisal as well as with Elaine Efstathiou of Elaine Fine Art , Ms. Brown's mother who initially received Mr. Altschuler's request for an appraisal and passed the assignment on to her daughter. I also communicated via email and phone with the art dealer Robert Berman (founder of the B-1 Gallery) and called James Corcoran, whose gallery had twice appraised "Andy Mouse" prints for Mr. Altschuler (2010 and 2017). I was able to identify Lisa McCollum as the "woman" Mr. Altschuler said he was dating in the late 80s who "worked in a museum" where his prints were reportedly "displayed" (2020 Report, p. 7). Chubb Special Investigator Fred White twice spoke with Ms. McCollum who confirmed the relationship and provided commentary on an image that Mr. Altschuler had of her. When Mr. Altschuler's attorney delivered the image to Chubb's Legal Counsel, Charles Rubin, he described it as a "photo of Douglas Altschuler's ex-girlfriend with one of the silk screens". To date, the image, which is a photograph of a photograph, is the only form of documentation directly related to the subject artwork that The Insured himself has provided to The Carrier.

In preparing this report I reviewed all of the material I had received from The Carrier to-date as well as the research I had generated and archived thus far. I also undertook additional, new research, making every effort to verify The Insured's statements and those of others. In particular, I conducted historical research – consulting various published accounts from the 1980s and 1990s – in order to assess how widely Haring's "Andy Mouse" prints were distributed. Doing so, has allowed me to make historically verifiable statements about their rarity during the period in question: that is, from the date they were issued (May 1986) until Haring's death on February 16, 1990. It is within this

CHUBB-Altschuler/ART 0000544

040520024846



Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

rather short timeframe that The Insured has insisted that he acquired the two complete sets of "Andy Mouse" prints.

Lastly, throughout my involvement in the claim I have maintained a database tracking the impression numbers of all the examples of Haring's "Andy Mouse" (1986) prints I found listed as being on the art market, in museums, and in private collections prior to October 2019.   My inventory includes all types: numbered editions, artist's proofs, printer's proofs, and *Hors d'Commerce* proofs (for a discussion of the different editions see my report "Opinion of Value - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VF Fine Arts no. 2)".   This exercise would be useful, I thought, primarily in the event that Mr. Altschuler was uncertain about the edition number of the two sets he reported owning.  Documenting which edition numbers were not in The Insureds' possession narrowed down the group that could have been.  As with all of the material referenced so far, I have made use of this data to form the opinions in this report.

## CHARACTERIZING MR. ALTSCHULER'S PROVENANCE CLAIMS

When all of Mr. Altschuler's transcribed statements are viewed collectively, it is impossible to define his concrete position on most of the foundational elements of the loss, particularly provenance.  For example, Mr. Altschuler told the police that he had acquired the set that was stolen from a gallery ca. 1987.  Soon thereafter he told Mr. White that he had sold/traded the 1987 set and that the suite from Haring was stolen.   In the two Examinations Under Oath, Mr. Altschuler once again thought that the stolen property was the suite acquired from the gallery in 1987, although he was not "100%" certain.  He also believed that he may have exchanged the second set for unspecified artworks, claiming that the dealer James Corcoran conducted the transaction in or around 2000.  Mr. Altschuler repeatedly said that he had hardly, if ever, actually seen the subject prints, which were always hidden from view in their original portfolio and shipping case.  The Insured was careful to qualify nearly all of his statements with disclaimers indicating his uncertainty.  While it is beyond the scope of my assignment to list the contradictions, internal and historical inconsistencies, improbabilities, and dubious statements reproduced in Mr. Altschuler's transcribed statements and cited below, their existence seriously undermines his credibility on matters of provenance.

On the other hand, none of the individuals who were interviewed regarding the claim had a knowledge of a second set of prints, The Insured's claimed dealings with Haring, or had seen the complete first set of prints in decades, if at all.  When their accounts are viewed in toto they present a generally uniform and believable overall narrative that is in-line with external evidence but one that is completely at odds with Mr. Altschuler's.

CHUBB-Altschuler/ART 0000545
040520024846



Chvostal
Art
Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

## OPINIONS REGARDING THE PROVENANCE AND IDENTITY OF THE CLAIMED PROPERTY

In my opinions, based on the data and information provided, reviewed, and generated are:

OPINION 1 - I am 100% certain that The Insureds did not own and could not have owned the complete set of "Andy Mouse" prints by Keith Haring bearing the edition number 3/30, which is uniquely described in the 2018 Dina Brown appraisal document, at the time of the claimed loss event.

OPINION BASIS: Five independent auction listings prove that at least three of the four prints comprising the set that Dina Brown appraised as belonging to The Insured in 2018 had a significantly different ownership history -- one that buttresses The Insured's one-time assertion to Fred White that he had not owned the 1987, or first set, since "around 2000".

As Gurr John's report has shown, a single print from the suite number "3/30" was sold at Sotheby's Amsterdam on May 14, 1996 (Lot 151). This same impression was later sold at Sotheby's London on April 1, 2008 (Lot 435). Sotheby's New York sold two other sheets from the set on April 29 (2006, Lots 422 and 423). The latter of the two lots (Lot 423) surfaced at Im Kinsky Auktionshaus, Vienna, on March 25, 2014 (Lot 260), having passed through the hands of Martin Lawrence Galleries, New York and a Viennese Private Collector. As I noted in my summary of my conversation with Dina Brown submitted to The Carrier on 12 November 2020:

More than once Ms. Brown stated, without reservation, that the edition number 3/30 and that the provenance indicated in the appraisal had been passed on to her from her mother. Without any prompting, Ms. Brown also stated that she had found online auction records for individual Andy Mouse prints with the edition number "3/30" during the course of researching the appraisal. While we spoke she searched on Artnet.com and cited as an example Artnet.com record no. 31, one of the prints from edition 3/30 sold at auction in 2014. She also referenced the Artnet.com records for the two prints sold separately in the same Sotheby's auction in 2006. Ms. Brown commented that these records were odd, given that they implied that the set she appraised in 2018 was not complete in the past but she assumed that the individual prints numbered 3/30 were somehow "[re]assembled over time".

CHUBB-Altschuler/ART 0000546
040520024846



Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author*: John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier*: Chubb
*Insured(s)*: Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number*: 092020001456

I find Ms. Brown's assumption that the set was reunited altogether untenable.

OPINION 2 - I am 100% certain that the framed item depicted in the image that Mr. Altschuler's attorney represented as a "photo of Douglas Altschuler's ex-girlfriend with one of the silk screens" was/is an original silkscreen from the Haring's "Andy Mouse" suite published in 1986.

OPINION BASIS: See the detailed reasons given in my 2 December 2020 email reproduced in part in Appendix 2, especially points 1, 2, 4, and 5.

OPINION 3 - I have a very high degree of confidence, having examined high-quality images of tens of examples of prints from the numbered edition of 30, that the frame print in the image is from that numbered edition based on the form and character of the inscription in the bottom margin.

OPINION BASIS:  See a my detailed reason given in a 2 December 2020 email reproduced in part in Appendix 2, point 6.

Since Mr. Berman has said both verbally and in a written statement that he sold number editions at his gallery, the print in the image could have come from his gallery.

Notably, in his first Examination Under Oath (and elsewhere in the file, namely an email to Fred White), Mr. Altschuler introduced the possibility that the suite described in the 2018 appraisal could be an "AP" or Artist's Proof.  He stated, "I said to her [*Elaine Efstathiou*] I thought it was 3 of 30 but I was not 100% positive.  I said I don't know whether it's 3 of 30 or an AP [2020 EUO, p. 89]".  Since Mr. Altschuler also told Ms. Efstathiou that his set was (from Mr. Berman's) "B-2"/B-1 Gallery, the set could not have been an "AP".  One could interpret Mr. Altschuler's references to perhaps owning a set of Artist's Proofs as another attempt to associate the the claimed items with the set Haring reportedly had sold him since Artist's Proofs were reserved for the artist's personal use (for instance, presentation to a friend).  Of the 10 APs from the "Andy Mouse" suite that were produced I have traced all but four examples.

OPINION 4 - Base on The Insureds' own image and the statements Ms. McCollum made to Fred White reproduced in Appendix 3, below, I believe that Mr. Altschuler has only provided

CHUBB-Altschuler/ART 0000547

040520024846



Chvostal
Art
Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

convincing evidence to The Carrier that he once owned a single print from Haring's numbered edition of 30 (the one in the picture).

OPINION BASIS:  Of the four different prints that comprise the "Andy Mouse" series, the example shown in the photo is the only one in the edition numbered 3/30 that has never appeared on the art market.  It is important to emphasize that there is no evidence to assume that he Mr. Altschuler owned the print in the image at the time of the reported loss.

OPINION 5 - I do not believe that Mr. Altschuler purchased a second set of "Andy Mouse" prints or any part of a set from Keith Haring or any other source.

OPINION BASIS:  In both EUOs Mr. Altschuler stated that he had exchanged the set of prints he had bought from Haring for other works of art using James Corcoran as an intermediary.  But when I spoke to Mr. Corcoran he had not recollection of a second set, adding that he only knew of the set "from Robert Berman".

To date, The Insured has provided no documentary evidence of a second set existing.

Moreover, I have found nothing in the historical record to support The Insured's statements that Haring was even in the state of Arizona, let alone Phoenix or Tucson, aside from a well-published, six-day visit to Phoenix in 1986, which was before Mr. Altschuler said made his first Haring purchase in 1987.

In addition to there being no trace of Haring in Arizona after 1986, in his 2020 EUO Mr. Altschuler provided information that would place the second purchase in 1989. The Insured said:

"When I initially bought it [*the first set*] I didn't believe that there was going to be a scarcity of them.  I determined there was and I went back to B1 and I don't think they had any more sets and I also thought it would be very historically interesting and cool to actually buy something directly from the artist and I bought that and another piece [p. 37, lines 11-18]."

When asked the title of the other piece, Mr. Altschuler answered, "I bought a piece, I believe the title was Silence Equals Death [p. 37, lines 20-21]."  Since The Insured is referencing Haring's silkscreen "Silence = Death", dating from 1989, his statements

CHUBB-Altschuler/ART 0000548

040520024846



Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

would thus place Haring and the date of the purchases squarely in 1989, when the artist was in greatest demand and suffering from AIDS (he did in New York on 16 February 1990).

Mr. Altschuler's accounts of his contacts with Haring are consistent. He repeatedly stated that he had had direct contact with the artist on several occasions in New York City and in Arizona but the encounters he recalls are casual and vague. He did not provide any specific details about the dates or nature of the exchanges nor any dealings with Haring's studio staff. According to his authorized biography published in 1991, "During 1987, 1988, and 1989 he [Haring] had taken on endless projects" (p. 199). "In 1987, Keith's success demanded that we hire someone to be in charge of his finances period" a woman named Margaret Slabbert who managed "everything to do with money from entry-level bookkeeping, to financial statements to preparations of tax return and submitting everything to the accountants for the final completion of the numbers (p 200)".

Having achieved international success, Haring was diagnosed with HIV/AIDS in 1987 (aged 29), became an AIDS activist, and also greatly ramped up his artistic production in his later years. Given the complexities of later Haring life and business and the complete lack of specific or verifiable details in Mr. Altschuler's narrative, I do not believe that the artist, who was in the advanced stages of a terminal illness, would have conducted direct sales of his works to The Insured.

## GAUGING RARITY AND EDITION NUMBERS OF "ANDY MOUSE" PRINTS

The edition sizes of the "Andy Mouse" series were relatively small. Complete sets and single prints have been actively sold on the art market (as with examples marked "3/30") or recorded in private or public collections prior to the claimed loss event, December 2019. Just as it is possible to say that edition number "3/30" could <u>not</u> have been in The Insured's possession at the time of the reported loss, the same can be said of the 18 numbered editions listed under the "Numbered Editions" column below.

The data does not consider the numerous examples I discovered where the edition type/number is not given in a description and/or is ambiguous in a reproduction. It is important to consider, also that unpublished/undiscoverable examples also surely exist in private and/or public collections and therefore could not be included in the data sets.

CHUBB-Altschuler/ART 0000549
040520024846



Chvostal
Art
Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
Claim Number: 092020001456

At this point in time, it seems unlikely that Mr. Altschuler will produce convincing documentation for the claimed property and/or a second set. Nonetheless, statistically speaking, most of the numbered editions (and Artist's Proofs) have alternative ownership histories that preclude Mr. Altschuler's ownership of them.

| | NUMBERED EDITIONS | ARTIST'S PROOFS | PRINTER'S PROOFS | *HORS D'COMMERCE* |
|---|---|---|---|---|
| Count | Of the 30 numbered editions of "Andy Mouse" prints produced in 1986, I can definitively say that, along with number 3/30 The Insured **could not** have owned a complete set of the following numbers during the stated period of ownership (1987-December 2019): | Of the 10 Artist's Proofs of "Andy Mouse" prints produced in 1986, I can definitively say that, The Insured **could not** have owned a complete set of the following numbers during the stated period of ownership (1987-December 2019): | Of the 5 Printer's Proofs of "Andy Mouse" prints produced in 1986, I can definitively say that, The Insured **could not** have owned a complete set of the following numbers during the stated period of ownership (1987-December 2019): | Of the 5 *Hors d'Commerce* Proofs of "Andy Mouse" prints produced in 1986, I can definitively say that, The Insured **could not** have owned a complete set of the following numbers during the stated period of ownership (1987-December 2019): |
| 1 | 5/30 | AP 1/10 | PP 2/5 | HC 3/5 |
| 2 | 7/30 | AP 4/10 | PP 3/5 | |
| 3 | 8/30 | AP 5/10 | PP 4/5 | |
| 4 | 10/30 | AP 6/10 | PP 5/5 | |
| 5 | 12/30 | AP 8/10 | | |
| 6 | 14/30 | AP 10/10 | | |
| 7 | 15/30 | | | |
| 8 | 17/30 | | | |
| 9 | 18/30 | | | |
| 10 | 19/30 | | | |
| 11 | 21/30 | | | |
| 12 | 23/30 | | | |
| 13 | 24/30 | | | |
| 14 | 25/30 | | | |
| 15 | 26/30 | | | |

CHUBB-Altschuler/ART 0000550

040520024846



Chvostal
Art
Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

| | NUMBERED EDITIONS | ARTIST'S PROOFS | PRINTER'S PROOFS | *HORS D'COMMERCE* |
|---|---|---|---|---|
| Count | Of the 30 numbered editions of "Andy Mouse" prints produced in 1986, I can definitively say that, along with number 3/30 The Insured **could not** have owned a complete set of the following numbers during the stated period of ownership (1987-December 2019): | Of the 10 Artist's Proofs of "Andy Mouse" prints produced in 1986, I can definitively say that, The Insured **could not** have owned a complete set of the following numbers during the stated period of ownership (1987-December 2019): | Of the 5 Printer's Proofs of "Andy Mouse" prints produced in 1986, I can definitively say that, The Insured **could not** have owned a complete set of the following numbers during the stated period of ownership (1987-December 2019): | Of the 5 *Hors d'Commerce* Proofs of "Andy Mouse" prints produced in 1986, I can definitively say that, The Insured **could not** have owned a complete set of the following numbers during the stated period of ownership (1987-December 2019): |
| 16 | 27/30 | | | |
| 17 | 28/30 | | | |
| 18 | 29/30 | | | |

## THE POSSIBILITY OF ADDITIONAL PROVENANCE DOCUMENTATION

Most dealers/art galleries retain their business records even over the course of decades for obvious reasons: they chronicle past art sales, establish the history of their inventory, demonstrate the collecting habits of clients over an extended period of time, and constitute an important historical record of their dealings. Mr. Berman evoked this practice when he included in his email (8 August 2020) to me six snapshots of old press clippings and one of the poster related to his 1986 "Andy Mouse" exhibition, although he stated he had apparently not kept any records of Haring sales prints from 1986 or 1987. He repeated these statements in the letter he had sent to The Carrier, which I previously analyzed in detail (see Appendix 4). But the complete absence of sales records strikes me as unlikely in light of common practice, Haring's importance, and the exhibition's critical reception.

In his letter toThe Carrier, Mr. Berman also wrote, "There is also a photo of myself with Keith Haring, as well as Richard Duardo from opening night. In the background of this photo the silkscreens from the Andy Mouse suite are visible." In my report about the letter I noted, "When I spoke with Mr. Berman, I referenced this photo, saying he had sent it with his email response to my request. He did not. These attachments, which were not included with the copy of the letter I received, do not relate specifically to the subject property." Critically, the true importance of Mr. Berman's statement are not the silkscreens in the photo but the mention of a "Richard Duardo".

CHUBB-Altschuler/ART 0000551

040520024846



Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

On no other occasion in the file that I am aware of has Mr. Berman mentioned Mr. Duardo, who died in November 2014 and whose role in organizing and hosting the "Andy Mouse" exhibition seems to have been as important–if not more important–than Mr. Berman's. Contemporary newspaper listings give both the B-1 Gallery and Mr. Duardo's Future Perfect gallery equal billing, in fact the prints were shown at "both locations". Whereas the B-1 Gallery is described as "a tiny labyrinth of a gallery", Mr. Duardo's had thousands of square feet of space. In 1986, Mr. Duardo was already a prominent artist and fine art printer who had established the printing firm Modern Multiples.

In a video interview dating from soon before his death, Mr. Duardo recalled:

"I convinced Keith Haring to come out from New York and we did a show called 'Andy Mouse', which a collaborative show between him and Andy Warhol, phenomenal turn out, 5,000 people for a gallery space that was rated for 120 people … we had a riot … didn't sell not one single piece of art, but go a lot of press, and then I close the gallery" (Link: https://www.facebook.com/talesoftheamerican/videos/152428489618472/?redirect=false&ref=tahoe, start at minute 6)

After Mr. Duardo's death, his sister Lisa Duardo donated his large and historic archives of papers and other documents to the Archives of American Art in Washington, D.C. Among the items catalogued in the Archives are extensive files from Future Perfect gallery. I believe that records relating to the consignment and sale of "Andy Mouse" prints in 1986 and 1987 may well be among them.

The Archives of American Art describes the Duardo papers as, "The records of Modern Multiples printmaking workshop measure 25.2 linear feet and date from the 1970s to 2017. The collection contains administrative files related to the daily operations of the print workshop, gallery, and other associated businesses owned and operated by Richard Duardo." Below are the locations and descriptions of some of the contents. Please pay particular attention to the bolded entries:

1. Box 1, Folder 1 - Address Book, circa 1980s
2. **Box 1, Folder 1 - Agreements and Contracts, 1978-2000, 2011-2012**
3. **Box 2, Folder 7-8 - Consignments, 1983-1990, 1999-2007**
4. Box 2, Folder 10-13 - Contact Cards, circa 1986-1997
5. Box 4, Folder 2 - Financial Information, 1982-2000
6. Box 4, Folder 6 - Financial Reports, 1986, 2011
7. Box 4, Folder 7 - Financial Statements, 1982-1989
8. **Box 4, Folder 8-9 - Future Perfect Gallery, 1983-1993**
9. **Box 4, Folder 20 - Inventories, Future Perfect, 1980s**

CHUBB-Altschuler/ART 0000552

040520024846



Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

Carrier: Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

**10.    Box 4, Folder 22-25 - Invoice History, 1979-1992**

**11.    Box 4, Folder 26-27 - Invoices, 1981-2008**

***12.    Box 9, Folder 16 - General Correspondence, Future Perfect, 1985-1992***

The seven bolded line above may, in particular, contain provenance information relevant to the subject property since they may reference such specific data as the edition numbers of sets the galleries received for sale, the names of the buyers, and shipping details.  Dovetailing that type of information with the contents of the database I have already mention could provide additional documentation about the early provenances of Haring's "Andy Mouse" print and the whereabouts of edition numbers specifically consigned to Berman/Duardo.

CHUBB-Altschuler/ART 0000553
040520024846



Chvostal
Art
Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

## Appendix 1: Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2), pp.1-14 (The Preliminary E.U.O. Questions, pp. 15-17, are not included below)

Chvostal
Art
Advisory

**Chvostal Art Advisory, Inc.**
*John J. Chvostal, PhD, Principal*

Mailing Address: P.O. Box 784, Tracyton, WA 98393, U.S.A.
Phone (Italy): +39 366 1079522
E-mail: jchvostal@icloud.com

*Report Subject:* Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)

*Report Date:* June 20, 2020

*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb

*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insured")

*Claim Number:* 092020001456

### INTRODUCTION

In 1986, the Keith Haring (American painter, muralist, and cartoonist, 1958-1990), produced a set (or suite) of four silkscreen prints that represented his close friend, the American artist Andy Warhol (d. 1987), in various guises as a cartoon mouse. Below is one example of the series recently sold at Sotheby's London (Fig. 1). Collectively and individually, the four prints are known as *Andy Mouse*. Although the four images are related thematically and stylistically, it is rare to find a complete set of four prints on the market or in a single private or public collection. This is not surprising given that the works were and are highly prized since both Haring and Warhol were involved in their production and relatively few sets were printed in 1986 for sale specifically on the art market—an edition of thirty sets.







Figure 1.

Keith Haring
1958 - 1990
*ANDY MOUSE* (L. PP. 64-65)

The complete set, comprising four screenprints in colors, 1986, vibrant impressions, each signed by Andy Warhol and Keith Haring in pencil, dated, inscribed with Haring's insignia, numbered PP 2/5 (printer's proofs aside from the edition of 30), printed by Rupert Jasen Smith, published by George Mulder, New York, on Lenox Museum Board, each framed
each image: approx. 910 by 900mm 36 by 35 3/8 in
each sheet: approx. 965 by 965mm 38 by 38in

Sold at Sotheby's, London
PRINTS & MULTIPLES
27 March 2018, Lot 161
Estimate: 300,000.00 — 500,000.00 GBP

Lot Sold For: 681,000.00 GBP

*Page 1 of 17*

CHUBB-Altschuler/ART 0000554
040520024846

# Chvostal Art Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author*: John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier*: Chubb
*Insured(s)*: Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number*: 092020001456

---

Chvostal Art Advisory

*Report Subject*: Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF Fine Arts no. 2)
*Report Date*: June 20, 2020
*Report Author*: John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier*: Chubb
*Insured*: Douglas Altschuler & Zoe Werner
*Claim Number*: 092020001456

In addition to thirty sets of four (or one-hundred-twenty prints total), Haring's publisher (George Mulder Fine Arts, New York), also issued three smaller, limited editions that were outside of the commercial edition. These other limited-edition sets (twenty sets total) were not necessarily intended for sale on the open market and consisted of 10 "Artist' Proofs", 5 "Printers Proofs" and 5 "Hors d'Commerce. Haring also reused the images to produce works of a different size and using other printing methods (for instance lithography), which are easily distinguishable from the 1986 groups.

ABOUT LIMITED-EDITION INSCRIPTIONS: THEIR SIGNIFICANCE TO PROVENANCE RESEARCH

Limited edition prints, like each of the four, claimed *Andy Mouse* prints, bear a handwritten or stamped inscription stating their incremental/sequential place in the edition. Conventional practice dictates that the size of the edition (i.e. the number of prints made in the run) also be specified on the work. This information is given thusly: 12/600; meaning that this example was the twelfth print (or group of print) of an edition of six hundred printed in that run.

While the custom of numbering prints is primarily a marketing tool (implying rarity), it also provides an invaluable means for identification purposes, especially when the provenance of a work is important. Essentially, these edition numbers are serial numbers, just like those found on paper currency (which is a type of print used for trade) or on automobiles or electronics. They are unique to the print itself or, as with those in the *Andy Mouse* suite, to the group of four prints compromising the set. Indeed, like other products of mass-production, printed images can appear to be absolutely identical to each other. For this very reason, art dealers usually include the precise edition number on their receipts and both auction records and scholarly catalogues frequently cite such annotations. So, knowing a print's number provides a definitive basis for tracing its history, identifying the work if it were stolen, and distinguishing it from all other examples.

PRE-LOSS INFORMATION SUBMITTED TO THE CARRIER REGARDING THE CLAIMED PROPERTY

The claimed property is itemized in The Insureds' most recent Valuable Articles policy under Fine Art, entry 2, as follows:

"2 ANDY WARHOL AND KEITH HARING ANDY MOUSE, 1986 COLOR SILKSCREENS EDITION OF 30 38 X 38 INCHES $1,500,000"

The description clearly identifies the "silkscreens" as being from the commercial edition of thirty made in 1986. The dimensions given also support this association. Notably, however, the listing does not indicate the items' exact serial/edition number within that group or the specific number of prints The Insured own. That information appears in an appraisal by Dina Brown of Los Angeles, CA, submitted to the Carrier roughly sixteens month before the claimed loss (December 23, 2019). According to the document, dated July 25, 2018, there were four prints (i.e. a complete set) each of which displayed the edition number "3/30". The appraisal provides this information not once, but twice, as can be seen, below, within the added red circles in the appraisal page reproduced below:

Page 2 of 17

CHUBB-Altschuler/ART 0000555
040520024846



# Chvostal Art Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

---

Chvostal Art Advisory

*Report Subject:* Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF Fine Arts no. 2)
*Report Date:* June 20, 2020
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured:* Douglas Altschuler & Zoe Werner
*Claim Number:* 092020001456

/06/18  09:04:06  EPI Imaging Out         EPI Imaging Out        Page 009

## DINA BROWN ART APPRAISALS
WWW.DINABROWNARTAPPRAISALS.COM

1.

Object: Limited edition
Artist: Keith Haring (American, b. 1958)
Title: Andy Mouse (Suite of 4)
Year: 1986
Medium: Screenprint
Sheet size: 38 x 38 inches
Edition size: 30
Edition number: 3/30
Framed: No
Signed: Yes, '3/30  K. Haring, '86' in pencil [LR], also signed by Andy Warhol, 'Andy Warhol' in pencil [LL]

Description: Four images of Andy Warhol drawn with mouse ears in bright, clear colors and black line work. In the first image, 'Andy Mouse' is standing in a pile of money; in the second image, he is being carried by a group of figures in rainbow colors; in the third image two blue figures hold a bill with Andy Mouse in the center, the last image is a full frontal of Andy Mouse standing with his hands on his hips.

Condition: Excellent, never framed in portfolio box

Provenance: Purchased from B-2 Gallery, Santa Monica, CA



Replacement cost: $1,500,000.00

Total replacement cost: $1,500,000.00

Douglas Altschuler
Prepared to Assist with Insurance Coverage
Effective Valuation Date: July 25, 2018
Report Issue Date: July 25, 2018

Page 4 of 5

Page 3 of 17

CHUBB-Altschuler/ART 0000556

040520024846



Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

Carrier: Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

---

| | |
|---|---|
| Chvostal Art Advisory | *Report Subject:* Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF Fine Arts no. 2) <br> *Report Date:* June 20, 2020 <br> *Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc. |

Carrier: Chubb
Insured: Douglas Altschuler & Zoe Werner
Claim Number: 092020001456

Other, object specific details are given regarding the subject items such as the works' condition and method of housing/storage, stating that they were in "Excellent" condition and that the prints were "never framed" but stored in a "portfolio box" (see passage outline in green, in the page reproduced above). The document also names the gallery from whom the prints were purchased, a "B2-Gallery, Santa Monica, CA" (see passage outline in blue, in the page reproduced above).

INFORMATION ABOUT THE SUBJECT ITEM RELATED IN THE POLICE REPORT (DATED 1/8/2020)

According to the Police Report, The Insured stated he had purchased the stolen prints in 1987 for $5,000.00, that they were from the limited edition of thirty (and, thus, not from any of the other editions), and that he might have additional paperwork (including a "Certificate of Authenticity"). He also stated that the stolen items were insured. See the snapshot from the report, below.

> Douglas stated his mother fell and was currently in a rehab facility for the last two to three months and she was no longer in the house.
>
> He stated the four pieces of art were called Andy Mouse, a set of four silk screen prints featuring Andy Warhol and him depicted as Mickey Mouse in a series of four different silk screen prints by the artist Keith Haring. There were a set of 30 prints and at that time he did not know which number of the series of 30 were his. He stated he was going to look for a Certificate of Authenticity and try to get the numbers. He also advised the art is insured.
>
> He stated he purchased the art in 1987 and paid $5,000 for it, but when he purchased it in 1987 both artists were still alive, and now they are both deceased.

PROVENANCE INFORMATION RELATED IN THE INSURED'S RECORDED CLAIM STATEMENT (FEBRUARY 5, 2020)

From the perspective of provenance research, the information found in the three documents referenced above is uncomplicated and without any apparent conflicts. One set of prints from the edition of thirty is referenced that was purchased in 1987 for $5,000.00 from a dealer in Santa Monica (the "B2-Gallery"). However, in his recorded statement, Mr. Altschuler discusses at length and in depth his ownership of the Itemized *Andy Mouse* prints (VAF no. 2) *and* another complete set. He describes where and when he purchased each suite and recalls, in some detail, their subsequent and disparate histories.

It is possible to reconstruct the provenances of each of these set, according to Mr. Altschuler's own recollections. This, I have done in the tables, below. One can also measure his accounts of the two sets against information in the scheduled description, the appraisal, and the Police report as well as against other, external evidence, including auction records, Haring's biography, dealer information, and other data.

Page 4 of 17

CHUBB-Altschuler/ART 0000557

040520024846

# Chvostal Art Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

---

Chvostal Art Advisory

*Report Subject:* Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF Fine Arts no. 2)
*Report Date:* June 20, 2020
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured:* Douglas Altschuler & Zoe Werner
*Claim Number:* 092020001456

### REFERENCE TO TWO SETS AND THEIR RESPECTIVE DATES OF ACQUISITION

| _1987 SET_ | _1989/90 SET_ |
|---|---|
| **Page 16** | **Page 16, the sentence at the left continues:** |
| Q: How long have you owned the four paintings [inaudible]? | and I believe the second set I bought, I mean, you, I'm really going back a long time now, sometime about two years later. |
| A: I had two sets one set I bought in 1987 [inaudible] 1987 . . . | Q: So in 1989? |
| | A: Roughly '89 or '90 |

### IDENTIFICATION OF THE STOLEN SET

_1989/90 SET_

**Page 18, center**

Q: Okay, and then the current set that you, you had up until it went missing, was that the one from 1987 or the one from 1989?

A: The one from, let's call it '89, '90 'cause I don't know what year.

Q: Okay.

A: It was the second set.

Q: So this second set, okay.

A: Yes.

### WHEREABOUTS OF THE 1987 SET

_1987 SET_

**Page 18, top**

Q: Okay, what happened to the other set?

A: I traded that set for some other art and it was around 2000.

Q: Around 200[0]?

A: Yes.

Q: Okay, do you still have the art that you traded for?

A: I'd have to check, I don't know, I don't know if I have it or whether I then subsequently traded that [inaudible]. I can answer, I can answer that question, but I don't have that answer now.

Q: Okay, you can find out?

A: Yes, sir.

Page 5 of 17

CHUBB-Altschuler/ART 0000558
040520024846

## Chvostal Art Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author*: John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier*: Chubb
*Insured(s)*: Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number*: 092020001456

---

### Chvostal Art Advisory

*Report Subject*: Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF Fine Arts no. 2)
*Report Date*: June 20, 2020
*Report Author*: John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier*: Chubb
*Insured*: Douglas Altschuler & Zoe Werner
*Claim Number*: 092020001456

### SOURCES OF ACQUISITIONS

| 1987 SET | 1989/90 SET |
|---|---|

**1987 SET**

**Page 20**

Q: Okay, uh, this, the, the, the other set that you purchased in 1987 how is it that you came to purchase that set?

A: Walked into a gallery one evening in Santa Monica and saw it and liked it and bought it.

Q: Okay, where was that gallery in, in Santa Monica, I'm sorry, I didn't mean to say what I meant to say, what was the name of it?

A: I believe it was called the B1 Gallery [phonetic], now we're going back to 1987.

Q: Okay.

A: So...

Q: But, you believe it was the B1 Gallery?

A: Right, and I had purchased, you know, for me everything resulted in a fair amount of art over the last 30 or 40 years so...

Q: Uh-huh.

A: Uh, you could track down the B1 Gallery and call them and they might say we don't know who, who all [inaudible] used to be one gallery on Main Street in Santa Monica.

**1989/90 SET**

**Page 18, bottom**

Q: And where was this second set purchased?

A: The, the second one?

Q: The second one in 1989?

A: That came directly from Keith Haring [phonetic].

Q: Okay, you purchased it directly from him?

A: Yes, I did.

Q: Before his death?

*Page 19, continuing from page 18*

A: I did.

Q: In 1991 if I read correctly.

A: Yeah, I purchased it before he, obviously [inaudible].

Q: Before he passed?

A: Correct.

Q: Okay.

A: It was [inaudible].

*Page 19, bottom*

Q: Okay, when you made this purchase in 1989 was it a, was at a gallery or did you, in other words, how did you get connected with Keith Haring?

A: I met him in Phoenix at a, an event and I started talking to him and we sort of hit it off and...

Q: Uh-huh.

A: I said I really liked what you did and I bought a couple of things from him.

Q: Okay, what was the first [inaudible] from '89, do you recall?

A: Ballpark, I'm giving you [inaudible].

Q: Uh-huh.

*Page 20, continuing from page 19*

A: So around $10,000 or so.

Q: Okay, okay, now, I, I want to move to the, uh, where did the purchase take place, in Arizona?

Page 6 of 17

CHUBB-Altschuler/ART 0000559

040520024846

# Chvostal Art Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author*: John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier*: Chubb
*Insured(s)*: Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number*: 092020001456

---

Chvostal Art Advisory

*Report Subject*: Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF Fine Arts no. 2)
*Report Date*: June 20, 2020
*Report Author*: John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier*: Chubb
*Insured*: Douglas Altschuler & Zoe Werner
*Claim Number*: 092020001456

A: Yes.

## LOCATIONS OF SETS DURING PERIOD OF OWNERSHIP

### 1987 SET

**Page 24**

Q: Was the, the, the four drawings that were purchased in 1987 were they ever displayed at all?

A: One set was displayed, yes.

Q: Okay, is that the set from 1987?

A: Correct.

Q: Okay, where was it displayed?

A: Uh, I was dating a woman at the time who worked in a museum and it was displayed in her museum...

Q: In her museum?

A: Yes.

Q: Okay, where was that museum located?

A: In Phoenix.

Q: And about when was that done?

A: Again you're asking me to go back a long time, I mean, first the time I purchased them probably somewhere after '87 and, and I don't know, into the early 90's, maybe, I, I just don't know [inaudible].

### 1989/90 SET

**Page 7**

Q: Okay, okay, um, the police report, um, we went over, and [inaudible] I have the report number and I have the, uh, detective assigned, Detective Brophy [phonetic]. Uh, I have put in three calls to Detective Brophy and I've requested, uh, a return call from him. But, I did speak to an employee of the Pima County Sheriff's Office, uh, his name is James Russell [phonetic]. And, uh, I informed his why I was calling and he said that he received a report from you on January the 8th, 2020 that a break-in had occurred at your mother's home in Arizona between October the 21st, 2019 and, and sometime before December the 23rd, 2019, would that be correct?

A: I mean, I don't know when the break-in occurred, [inaudible] the dates I gave them there must have been a reason for me giving them those dates.

Q: Okay.

A: I had seen the property sometime in October and it was not there in December.

Q: Okay, you had seen it in October?

A: Correct.

Q: Okay, where was it when you saw it?

A: Where in the house?

Q: Yeah, in the house.

A: It was in the living room of the house.

Q: Was it framed and displayed.

A: It was not framed and displayed, it was in a box.

Q: In a box.

A: Yes, sir.

Q: Okay, was there anything else in the box along with the...

A: Just four pieces of art.

Q: Okay, just the four drawings that each one is 38 by 38, is that correct?

A: Looking at that over there, I mean, I have not seen these in 30 years or something so I, my recollection is that's probably correct, yeah.

Page 7 of 17

CHUBB-Altschuler/ART 0000560

040520024846



Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

---

Chvostal Art Advisory

*Report Subject:* Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF Fine Arts no. 2)
*Report Date:* June 20, 2020
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured:* Douglas Altschuler & Zoe Werner
*Claim Number:* 092020001456

Q: Okay, uh, it's, you don't know the exact measurements?

***Page 8, continuing from 7***

A: Well...

Q: Okay.

A: Give or take a few inches, I think you're absolutely correct.

Q: Okay, were they framed ever at any point together?

A: Were, was this set framed [inaudible].

Q: Yes, together?

A: This particular set was never framed.

Q: Never framed?

A: Never.

***Page 22 (center)***

Q: Okay, you had indicated in, in your original statement that, um, I believe you had given to Kimberly's [phonetic] fax in our eastern claims service center that the art had been stored at your mother's house in Tucson, Arizona for about 15 or 20 years.

A: Yeah, probably longer than that I think, I think it was since [inaudible] bought it from Keith probably 1990

### REFERENCES TO DOCUMENTATION

| <u>1987 SET</u> | <u>1989/90 SET</u> |
|---|---|
| **Page 20 (bottom)** | **Page 19** |
| Q: Okay, so there may be a receipt, but you're not sure for the six-, for the 1987 purchase? | Q: Okay, um, any documentation, uh, from that purchase? |
| A: I believe I charged it on my AMEX card. | A: I don't know, possibly, I mean, I can look. |
| Q: Okay, but you, you, you wouldn't have a record? | Q: Okay, so, I believe it's pronounced provenance, but I get that wrong, so would it be, uh, it's directly from Keith Haring to yourself... |
| A: Not from AMEX, I mean, [inaudible]. | |
| Q: [inaudible] no, any credit card record? | A: [inaudible.] |
| A: I don't keep any of that stuff. | Q: Would be the extent of any provenance? |
| **Page 21, continuing from 20** | A: Correct. |
| Q: Okay. | Q: Okay. |
| A: I mean... | A: I may have one receipt somewhere, I do remember seeing one receipt, I don't know if I have the other, I mean, I can look. |
| Q: But, I know that's a long time. | |

Page 8 of 17

CHUBB-Altschuler/ART 0000561

040520024846

# Chvostal Art Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

---

Chvostal
Art
Advisory

*Report Subject:* Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF Fine Arts no. 2)
*Report Date:* June 20, 2020
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured:* Douglas Altschuler & Zoe Werner
*Claim Number:* 092020001456

A: Yeah, again, I, my mind's eye I remember seeing the receipt on a pink piece of paper...

Q: Uh-huh.

A: Somewhere, I was going through some stuff and sort of smiled when I saw that and when you see something from 30 or 40 years ago, I don't know where it is, but I can look.

Q: Okay, was there provenance [inaudible] with the set that you purchased in 1987?

A: I just got a simple piece of paper [inaudible].

*Page 27, center, mentioning an appraisal of the 1987 set prior to the Dina Brown 2018 appraisal*

A: I, I called and we were talking about the different Warhol series I think Endangered Species that I always wanted to get and we just started having a conversation and I mentioned what I had that I had one or two sets and talking about it. And I, I don't know, I, it must have been her because I wasn't aware that the value had gone up and she told me the value had gone up and I said yeah, can you give me an appraisal for those, I think the, the prior appraisal I had was done by someone who had purchased a significant amount of art from the, you know. I don't think they're familiar with that, she said fine.

Q: Okay, so...

A: She may have even suggested it, I don't remember whether she suggested I get a new appraisal or I asked for the appraisal.

*Page 30, regarding information provided, possibly, to Dina Brown for her appraisal*

Q: Yeah, okay, okay, and you provided all the information to her regarding the purchase location and the provenance for these four prints that she appraised, do you recall that?

A: Whatever she asked for, sir, I would...

Q: [inaudible.]

A: I gave to her.

Q: You don't recollect that, okay.

A: Yes.

RECONSTRUCTING THE HISTORIES OF THE TWO SETS BASED ON THE INSURED'S RECORDED STATEMENTS

Page 9 of 17

CHUBB-Altschuler/ART 0000562
040520024846



Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series, 1986*) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456



*Report Subject:* Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF Fine Arts no. 2)
*Report Date:* June 20, 2020
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured:* Douglas Altschuler & Zoe Werner
*Claim Number:* 092020001456

Using the information cited above, it is possible to summarize, as I have below, The Insured's statements regarding the provenances of the two sets of *Andy Mouse* prints he discussed in the interview. I researched The Insured's accounts of both sets and compared my finding with data in Ms. Brown's appraisal and in the Police Report. I have annotated The Insured's accounts with my findings as "notes".

### 1987 SET

- By 1987 – With B1 Gallery, Santa Monica, CA – Purchased from B1 Gallery, Santa Monica, CA, by Douglas Altschuler [for $5,000.00, per Police Report].

    *NOTE: In his recorded statement, The Insured twice states that the vendor's name for the 1987 Set was the "B1 Gallery" located "on Main Street in Santa Monica" adding, later in the interview, "I told her [Dina Brown] where I purchased it from, I think, she was familiar with the gallery". In her appraisal, Ms. Brown lists the provenance of the set she assessed as a "B-2 Gallery, Santa Monica, CA". Neither the researchers at the firm Gurr Johns nor Ms. Brown were able to identify this source. When a member of the Gur Johns team spoke with Ms. Brown, they wrote in their report that she "mentioned that she thought the dealer Ron Rivlin (of Revolver Gallery) had opened a pop-up gallery called "B-2 Gallery" in the past at Bergamot Station in Santa Monica.*

    *I was able to confirm the existence of a "B1 Gallery" in Santa Monica in the late 1980s. In fact, from June 8 to July 2, 1986, it held an exhibition entitled "'Andy Mouse' Keith Haring's Hommage to Andy Warhol". A poster for the event features an illustration of one of the Andy Mouse prints and states that the gallerists Robert Berman and Richard Duardo were hosting the show. An article covering the exhibition also appeared in the Los Angeles Times on June 20, 1986, giving the gallery's address as 2730 Main Street in Santa Monica.*

- "After '87" or "Into the early 90's" – "Displayed" at an unspecified Phoenix Museum.

    *NOTE: There are several art museums in Phoenix and its environs. In 1991 (March 23rd-May 12th) the Phoenix Art Museum held a major exhibition entitled "Keith Haring, Andy Warhol, and Walt Disney". A sizable illustrated, exhibition catalogue accompanied the show, which included two prints from the suite, both from the edition of thirty. These were catalogue numbers 131 and 132 and belonged to The Security Pacific Corporation (not The Insured). Both are inscribed "28/30", not "3/30".*

Page 10 of 17

CHUBB-Altschuler/ART 0000563

040520024846

# Chvostal Art Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

---

Chvostal Art Advisory

*Report Subject:* Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF Fine Arts no. 2)
*Report Date:* June 20, 2020
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured:* Douglas Altschuler & Zoe Werner
*Claim Number:* 092020001456

- "Around 2000" – "Traded" for unspecified works of art from an unspecific source.

    *NOTE: According to the Dina Brown appraisal, the set purchased at the "B2-Gallery, Santa Monica" was edition number 3/30 or the 1987 Set. Auction records uncategorical support The Insured's statements that he had exchanged that set for other works of art "around 2000". Five independent auction listings prove that at least three of the four prints comprising the set that Dina Brown appraised as belonging to The Insured in 2018 had a significantly different ownership history -- one that buttresses The Insured's assertions that he had not owned the 1987 set since "around 2000".*

    *As Gurr John's report shows, the earliest of the 1987 set to appear on the market was sold at Sotheby's Amsterdam on May 14, 1996 (Lot 151). This same print was later sold at Sotheby's London on April 1, 2008 (Lot 435). Sotheby's New York sold two other sheets from the suite on April 29 (2006, Lots 422 and 423). The latter of the two lots (Lot 423) surfaced at Im Kinsky Auktionshaus, Vienna, on March 25, 2014 (Lot 260), having passed through the hands of Martin Lawrence Galleries, New York and a Viennese Private Collector.*

## 1989/90 SET

- Keith Haring until 1989/90.
- 1989/90 (but before Haring's death on February 6, 1990) – Purchased from Keith Haring in Phoenix (or "in Arizona") by Douglas Altschuler for "around $10,000 or so" together with "a couple of things from him."

    *NOTE: Haring kept a detailed journal for much of his adult life. There, almost daily, he noted his location, the names of people he encountered, his thoughts, and his professional and personal activities. Many of his journal entries have been published (Keith Haring  [Author], Robert Farris Thompson [Introduction], Shepard Fairey [Foreword], Keith Haring Journals, [Penguin Classics Deluxe Edition, 2010]) and many are available to read online (see link). I searched those sources as well as biographies of Haring, contemporary periodicals, and news reports in order to determine if he was in Arizona in 1989-90, noting that Haring died of AIDS related complications on February 6, 1990.*

    *I found no references to the artist's presence in Arizona during the period in question. Haring did, in fact, make a well-publicized visit to Phoenix for six days*

Page 11 of 17

CHUBB-Altschuler/ART 0000564

040520024846

Chvostal
Art
Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

---

Chvostal
Art
Advisory

*Report Subject:* Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF FIne Arts no. 2)
*Report Date:* June 20, 2020
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured:* Douglas Altschuler & Zoe Werner
*Claim Number:* 092020001456

> *in December in 1986. The trip is document in the forward to the 1991 exhibition catalogue "Keith Haring, Andy Warhol, and Walt Disney" cited above (p. 7). This seems to have been his only trip to the state.*
>
> *Furthermore, I was also unable to confirm that Haring ever sold works directly to collectors. This practice would have been highly unusual for an established artist with close and binding relationship with art dealers. Moreover, given the small edition size of Andy Mouse, it is unlikely that a complete set of prints would have been available to sell to the Insured.*

- In or after 1989/90 until at least October 21, 2019 – Kept, "unframed" and "in a box", in the living room of The Insured's mother's home in Tuscan, AZ, where The Insured last saw them on October 21, 2019.

- December 23, 2019 – Discovered missing from The Insured's mother's home in Tuscan, AZ.

### DINA BROWN APPRAISAL ADDITIONAL COMMENTS

In light of the Insured's recorded statements of February 2020, the Dina Brown appraisal of 2018 presents numerous inconsistencies or contradictions. The document provides a replacement value for specific and unique works, which are marked 3/30, that The Insured openly disclosed he did not own at the time of the appraisal.

Moreover, the source of Ms. Brown's information was The Insured himself, who commissioned the document and recalled speaking with Ms. Brown about the appraisal. Details such as the place of purchase and edition number may well have been given on the original invoice, which he could have passed to her. However, only the owner could have conveyed to the appraiser that the property was unframed and boxed. The Insured only vaguely recalled speaking with Ms. Brown. But when an employee at Gurr Johns called her "on March 5, 2020, Ms. Brown informed Nicole that Douglas Altshuler was a client of her mother's. Ms. Brown never met Mr. Altschuler, never had direct contact with him, did not inspect the subject work first-hand, and was not provided images of the work or invoice paperwork."

To the best of my knowledge, the identify of Ms. Brown's mother has not been the subject of discussion. She is, in fact, an art dealer/broker, appraiser, and conservator named Elaine Efstathiou of Elaine Fine Art based in Torrance, California. In a 2004 obituary, a "Dina Brown of West Hollywood "is described as the "step-daughter" of a Stelios Efstathiou of Torrance and Elaine Efstathiou is named as the late Mr. Efstathiou's widow. Ms. Brown's resume indicates that she served as the director of Elaine Fine Art from 1991-2003. One of the firm's archived webpages dating from 2002 mentions "Dina", referencing

Page 12 of 17

CHUBB-Altschuler/ART 0000565
040520024846

Chvostal
Art
Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

Chvostal
Art
Advisory

*Report Subject:* Provenance Report and Preliminary
E.U.O. Questions - Four Screenprints (Andy Mouse
Series, 1986) by Keith Haring (VAF Fine Arts no. 2)
*Report Date:* June 20, 2020
*Report Author:* John J. Chvostal, PhD, Principal,
Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured:* Douglas Altschuler & Zoe Werner
*Claim Number:* 092020001456

Ms. Brown. Her appraisal services are currently advertised on the company's website (https://www.elainefineart.com/appraisals).

Ms. Efstathiou herself "provides appraisals for the current retail replacement value of your artwork for insurance purposes" and specializes "in Pop Art Originals and Prints" like those that Haring produced (see link). In fact, Ms. Estathiou is currently offering for sale a complete set of Haring's *Andy Mouse* prints (see link). Why she passed the appraisal assignment on her daughter is not presently known.

Other details of Ms. Efstathiou's dealing may relate to statements The insured namely his references to sell art, a recent purchase, and a "prior appraisal" of the subject property.

When he was asked if he had ever sold any works at auction, The Insured answered "I personally have never sold anything directly with an auction house, I have people that deal with putting anything I ever want to sale at auction, so I'm not sure where or what or any of that stuff, I have never put offered for sale, uh, my piece at auction period." [31] He then stated, "I do sell things at auction [32]".  "I have a person that does it for me, but that would be, that would be an, an insane thing to do [32]".

On page 27 of his recorded statement The Insured make a passing reference to the subject artwork's "prior appraisal done by someone" and he later discusses on page 45 "a painting" recently purchased for "a couple hundred thousand dollars" "over the phone and electronically" from an unnamed source "in California".

Although, in the past, Elaine Fine Art had a brick-and-mortar gallery (at 2531 W.230th Street, Torrance, CA. 90505) no current address is given online.  The past activities of the business were not altogether typical of those that art dealers perform.  Today the firm describes itself as "a full service art brokerage. We buy and sell limited editions and originals as well as provide restoration services, appraisals, and framing assistance [https://www.elainefineart.com/]."

In 2017, the following text outlined the gallery's many services:

> Elaine Efstathiou of Elaine Fine Art has over 23 years experience in the Fine Art world and offers over 10,000 works on her website alone, including limited edition prints, sculpture, original works on paper and canvas along with mirrors, vases and other objects d'art.
>
> Here at Elaine Fine Art, we are proud to present our clients with an informative and helpful Internet atmosphere. For sellers, we offer access to an unlimited number of buyers without having to physically place their art on consignment. For buyers, we offer mint condition artwork at the best prices. In addition, Elaine Fine Art features other premium services such as certified appraisals, restoration services, and their newly developed auction feature. Elaine is a member of the IFAA - International Fine Art Appraisers society and offers competitive prices for all your appraising needs. Elaine has been conservator for nearly 20 years and has a separate company, The Art Doctor, for all your conservation needs. Elaine Fine Art's Auction feature allows clients to place their artwork at auction and monitor it throughout the selling process. A full array of

Page 13 of 17

CHUBB-Altschuler/ART 0000566

040520024846

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

---

*Report Subject:* Provenance Report and Preliminary E.U.O. Questions - Four Screenprints (Andy Mouse Series, 1986) by Keith Haring (VAF Fine Arts no. 2)
*Report Date: June 20, 2020*
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured:* Douglas Altschuler & Zoe Werner
*Claim Number:* 092020001456

services and products are available through Elaine Fine Art. Artwork sold is guaranteed to be in mint condition and each piece comes with certified appraisals and certificates of authenticity.

We pride ourselves on our commitment to honesty and integrity in our business

The gallery could and still does offer an enormous stock of items for sale ("over 10,000 works") using a consignment structure whereby the owners simply listed their works for sale and retained physical possession of them.

Given Ms. Efstathiou diverse dealing, she may have brokered the sale of the 1987 set, written the "prior appraisal" for the subject property, and sold the Insured the painting mentioned. If this were the case, she could have had on file some of the information that Ms. Brown used in the 2018 appraisal, which could explain why she said she had no direct contact with The Insured.

CHUBB-Altschuler/ART 0000567

040520024846



Chvostal
Art
Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

## Appendix 2: Excerpt from John Chvostal's E-Mail ("Re: Contact w/ Lisa MacCollum") to Fred White and Charles Rubin.  2 December 2020.

Gentlemen,

Below are some of my observations that I discussed with you during our conference call last Monday, Nov. 30.  I say "some" since Mr. White's conversation with Ms. MacCollum has confirmed my proposal that the photo was taken in Ms. McCollum's office at the Heard Museum.  The following are my opinions regarding the artwork represented in the photograph, its characteristics and identification.

1.  The print is float mounted in a thin metal, or more likely, blond wooded frame and is glazed.  When a work on paper is "floated" like this it does not have a traditional window matt that surrounds or overlaps the front margins of the work.  Instead, the item in the photograph is simply suspended or floated in the frame using hinges attached to the backing and allowing the full sheet to be seen.

2. Because the entire sheet of paper is visible, it is possible to say conclusively that the image depicted is not one of the many reproductions of the "Andy Mouse" prints made after Haring's death.  They have printed, black margins that distinguish them from the originals.

3. Of the four different prints that comprise the Andy Mouse series, the example shown in the photo is the only one in the edition numbered 3/30 that has never appeared on the art market.

4. The size of the work depicted appears to be within range of the original prints, 38 x 38 inches.

5. Prints from the original series (meaning those dating from 1986) were printed using a different silkscreen for each color field.  This process resulted in some particular telltale features that are unique to the group. The black outlines were printed last since the density of the pigment disguised any gaps or overlaps that might have existed between the lighter colors.  Moreover, black ink would be visible if it were printed under lighter inks, which are more transparent.  Haring's printer used a rather gloss black ink and colored inks with a dual finish.  In the photograph, the glossiness of the black inks are visible because of the camera's flash.  One can also make out highlights along the edges of the raised, black-ink contours of Andy Mouse's proper right shoe and where his right wrist and waist meet.  The raised or layered effect is typical of screen printing.  These features strongly indicate that the item in the photograph is an original silkscreen produced using methods and materials used to make authentic prints in the Andy Mouse series.  Later reproduction do not exhibit these physical characteristic since they were made using photographic processes.

6. Although the inscriptions at the bottom of the print are blurry and thus illegible, their color, location, and massing provide important information about the item shown.  Authentic or autograph,

CHUBB-Altschuler/ART 0000568

040520024846

Chvostal
Art
Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

handwritten inscriptions only appeared on the various editions printed in 1986. They are written in graphite. Andy Warhol signed his first and last names, in full, on the left of the lower margin. Haring signed his name as "K Haring" after the edition number and before the date "86" and then drew the symbol of a cross in a circle. All of the prints in the 30 sets of numbered editions have these distinct components. Those prints made as artist's proofs, publisher's proofs, and Hors de Commerce have an additional inscription to the left of the edition number: "AP", "PP", and "HC", respectively.

Although the specific edition number of the print in the photo is in no way readable (we have, here, a photo of a photo), I strongly believe that the print shown is from the numbered edition of 30 and not from any other edition. Below, is a detail of one of the prints numbered 3/30 reproduced in the 2014 Viennese auction catalogue and a detail of The Insured's photo. Note that no text is visible to the left of the edition number, a feature unique to numbered editions.

CHUBB-Altschuler/ART 0000569

040520024846



Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

## Appendix 3 - Excerpt from Fred. E-Mail ("Contact w/ Lisa MacCollum") to Charles Rubin and John Chvostal.  1 December 2020.

I placed a f/u call this afternoon to Ms MacCollum and she related the following. After I described the photo, she said she is sure it is her. She believes it was sometime in the late 1980's and she recalled that the Andy Mouse print was hanging in her office at the Heard Museum. I asked if she recalled the edition#, and she said no. I asked if she recalled if there were any other prints that came w/ the one print in the photo, and she said she only recalled the single print. She told me she shared an office w/ a co-worker Richard Neary and he really liked the print and he knew Douglas. She thinks that's the reason it was displayed in the office. I asked for Mr Neary's contact info, and she said he is deceased .

Lisa said the print "must have" been shipped directly to her office but doesn't recall any specifics re the shipping. She said Douglas wanted to ship it to her apartment, but she didn't want to be responsible for anything that valuable. I asked if she remembered what became of the Andy Mouse print, and she said they would have eventually taken it to his Mother's house in Tucon [*sic.*], Az. I asked if she had a clear recollection of taking the print to Tucon [*sic.*], Az, and she said no. She explained that they often went to Douglas's Mother's house for weekends and holidays and that's why she thinks they must have taken the print w/ them on one of their trips.

I asked Lisa if the print would have been on record w/ the Registrar of the museum and she said no. She explained that back in the 1980's anyone could hang anything, art work etc., in there [*sic.*] office w/o making the museum aware that it was a valuable work of art. She said unless the work was part of a collection, it would not be brought to the attention of the registrar.

CHUBB-Altschuler/ART 0000570
040520024846



Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author:* John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier:* Chubb
*Insured(s):* Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number:* 092020001456

Appendix 4: Excerpt from Email ("Re: Berman letter") from John Chvostal to Charles Rubin, dated 23 Nov. 2020, with comments on Robert Berman's letter dated 3 Aug. 2020 delivered to The Carrier.

Mr. Berman's letter contains quite useful information most of which is not new to the file but supports, further, certain key details regarding the subject property. Below, I have reproduced those passages in the letter that specifically reference the claimed artworks with my commentary.

Passage 1

The item Mr. Altschuler purchased was a complete suite or works containing 4 very high quality silkscreens of a limited edition of 30. The silkscreens were printed by Rupert Smith and signed by both Andy Warhol & Keith Haring.

*Comments: When I spoke with Mr. Berman, he also stated that he had sold only sets from the "limited edition of 30", not artist's proofs, printer's proofs, or Hors d'Commerce (see "Chvostal – Opinion of Value – Altschuler 092020001456", p. 2, fn. 2 for more about these, other, editions.) Thus, the statement of one of the edition numbers from the series of 30 (namely "3/30") and the references to the "B2" or more correctly "B1 Gallery" is consistent with Mr. Berman's account. Also, the printer "Rupert Smith" did, in fact, produce the numbered prints and the other editions..*

Passage 2

"Once the run of the exhibition was complete, the poster for the show and prints of the suite remained on display for the following year or so. Which, if my memory serves, it was during that time, post exhibition [see comment 1, below], that Mr. Altschuler purchased the complete set in the box at the cost of $5,000 [see comment 2, below]. At that time, again to the best of my memory, I had between 8 and 10 sets to sell [see comment 3, below].

Main Street was very lively at that time and my gallery was often open later as there was a very trendy restaurant across the street owned by Wolfgang Puck named Chinois (it's still there). To my memory, one evening, Mr. Altschuler came in after dining at Chinois and purchased the "Andy Mouse" complete suite in the box at the cost of $5,000 and then shipped the work to his address in Arizona [see comment 4, below]."

*Comments*
1. *Mr. Berman's statements regarding the exhibition date (1986) and his reference to sales for a "year or so" after the show closed are consistent with what he told me. The information also makes a sale in 1987 (the date when The Insured recalls buying his set) a possibility.*
2. *Mr. Berman indicates four more times in the document that the purchase price of the set was $5,000.00. This is the same amount that The Insured gave in the Police Report ("He stated that he purchased the art in 1987 and paid $5,000 for it," see "Altschuler Police Report", p. 2) and is very distinct from the $10,000.00 price Mr. Altschuler stated he had paid to Haring for a second set.*
3. *Mr. Berman also told me he had between 8 and 10 sets to sell during and after the exhibition.*
4. *When I recently asked Mr. Berman if he would have shipped works to buyers, he indicated that he often did so. As I have noted previously (see "Chvostal - EUO Questions Sept 2020 - Altschuler 092020001456", pp. 4-5), Mr. Altschuler is documented as working for the Phoenix law firm Snell & Wilmer as an Associate in 1986 so it is unremarkable that the gallery shipped purchases to Arizona. Moreover, Mr. Berman confirmed during our conversation that the sets came in a portfolio or box. This was and is very common artistic practice.*

CHUBB-Altschuler/ART 0000571

040520024846



Chvostal
Art
Advisory

Document Title: Provenance Opinions - Four Screenprints (*Andy Mouse Series*, 1986) by Keith Haring (VAF Fine Arts no. 2)
Document Date: 8 November 2021
*Report Author*: John J. Chvostal, PhD, Principal, Chvostal Art Advisory, Inc.

*Carrier*: Chubb
*Insured(s)*: Douglas Altschuler & Zoe Werner (henceforth "The Insureds")
*Claim Number*: 092020001456

Passage 3

"<u>Unfortunately, our records from the 80's have been lost or misplaced</u> [see comment 1, below] but I have attached various articles from the LA Weekly, Urban Explorer, and the Los Angeles Times for confirmation of the work and dates the show was exhibited. I have also attached an image of the poster that was created specifically for this exhibition, as Keith Haring was present for the opening night party and subsequently signed a few of the posters. <u>There is also a photo of myself with Keith Haring, as well as Richard Duardo from opening night. In the background of this photo the silkscreens from the Andy Mouse suite are visible</u> [see comment 2, below].

<u>Mr. Altschuler continued to be a client of our gallery for the next several years purchasing works by Victor Hayden and other established and emerging artists</u>"

*Comments:*

1. *In this passage Mr. Berman reiterates what he had told, namely that he has no detailed documentation regarding sales from the period in question.*
2. *When I spoke with Mr. Berman, I referenced this photo, saying he had sent it with his email response to my request. He did not. These attachments, which were not included with the copy of the letter I received, do not relate specifically to the subject property.*
3. *Mr. Berman did not mention or infer to me that The Insured was a regular, faithful, or longstanding client of his gallery. Mr. Berman represented the artist Victor Hayden in 1990 and in 1992, based on my research.*

CHUBB-Altschuler/ART 0000572

040520024846

# EXHIBIT 3



Search by title, artist, gallery

 

Home > Art Blog > What is an Artist's Proof?

What is an Artist's Proof?

**10TH FEBRUARY 2021**

An artist's proof is a term used in printmaking to describe a limited number of prints that are made outside of the regular numbered edition of a print. ==Artist's proofs are typically printed before the numbered edition and are used as a way for the artist to make final adjustments to the image or to experiment with different colour combinations.==

In traditional printmaking methods such as etching, engraving, or lithography, the artist will create an image on a matrix such as a metal plate or a stone. The matrix is then inked and printed onto paper or another substrate, resulting in a single impression of the image. In order to create an edition of prints, the matrix is used repeatedly to make multiple impressions of the image.

An artist's proof is a print that is made using the same matrix as the regular edition but is set aside and marked as an artist's proof rather than being numbered and included in the main edition. Typically, there are only a small number of artist's proofs produced, often ranging from 10-20% of the size of the main edition.

Artist's proofs are considered to be of higher quality than the regular numbered edition because they are made under the direct supervision of the artist and are often signed and annotated by the artist to indicate their significance. Artist's proofs are also highly sought after by collectors and can command higher prices than the regular numbered edition.

In recent years, the term "artist's proof" has been used more broadly to refer to any print that is not part of the numbered edition, including prints that are made after the edition has been completed or prints that are made outside of the traditional printmaking process. However, in the traditional sense, artist's proofs are an important aspect of



Prints might also be annotated with the initials E.A. which stands for Épreuve d'Artiste, Artist's Proof in French.



Marc Chagall Artist's Proof

In addition to artist's proof, there are other prints that may be made outside of the regular numbered editions:

Hors Commerce
H.C. stands for hors commerce, or 'not to sell'. Similar to an artist's proof, this proof was set aside from the editioned prints. Often the H.C. impressions were used as replacement or insurance copies for prints that were lost or damaged. Hors Commerce prints are identical to the editioned prints.

Printer's Proof
Printer's Proof prints are prints over and above the editioned prints that are given to the printer as thanks or in lieu of payment from the artist. Depending on the number of printers who worked on a piece as well as the arrangement between the artist and the



## Bon à Tirer Prints

Bon à Tirer (B.A.T) or 'ready to pull' are prints annotated on the proof that was approved for final printing by the artist. The edition is then made in the image of the B.A.T. Only one of these such prints exists for each edition.

## Trial Proof

A trial proof is any impression taken to test the development of the image, after which point the artist may decide to change things. There can be many trial proofs before the B.A.T. is created.



## The value of an Artist's Proof?

Artist's Proofs are generally valued higher than other prints in the edition, due to the rarity and small quantity of them even though many artist's proofs are typically identical to the editioned prints.

Search for fine prints by leading artist from leading galleries.



## ABOUT

About Us

Partners

Collectors – Q&A

Art Blog

Contact Us

## CONNOISSEURS

Quotes By Artists

Art Movements

Behind The Print

Art Notes

Art Curation

Guest Curations

Advice For Buying Prints

  

## MEMBERS

Log In

Membership Choices

Galleries – Q&A

## ART COLLECTORS

For print lovers only ...

## EMAIL

Go

# EXHIBIT 4



Revolver Gallery

8641 W Sunset Blvd. West Hollywood CA 90068

310.895.5868

ron@revolvergallery.com

www.revolvergallery.com

Friday, April 1, 2022

## Poli, Moon & Zane

2999 n 44th Street #325  Phoenix, AZ 85018

Michael,

You have requested my opinion of Keith Haring Andy Mouse, a collaboration artwork portfolio of 4 prints between Keith Haring and Andy Warhol.

My name is Ron Rivlin; art collector and gallerist.  As a collector my concentration of artworks consist of Andy Warhol and Keith Haring.  As a gallery, I am the founder and owner of Revolver Gallery.  Revolver exclusively deals in Andy Warhol artworks and collaborations.  Revolver Gallery has the largest gallery-owned collection of Andy Warhol artworks worldwide with over 250 works currently in inventory. We also own some of Andy Warhol's personal belongings including his prized Rolls Royce. My book about the Andy Warhol prints market is currently a #1 best seller on Amazon in 14 art categories.

Andy Mouse was a conceptual collaboration between Keith Haring and Andy Warhol created in 1986. The artwork itself was composed by Keith Haring. Both Haring and Warhol had a fascination with Disney and Mickey Mouse, which is seen in other artworks they had created during their career. The mouse and subject in each artwork is a depiction of Andy Warhol through the lens of Keith Haring, identifiable by use of Warhol's iconic wig, his social life, and obsession with money. All artworks are identical in size, colors, paper, printers embossment, and both artists signatures. A total of 45 were produced - 30 Regular Edition, 10 Artist Proofs, 5 Printer Proofs. While all editions are desirable, the optics of a smaller edition tend to be more desirable as it appears more scarce than the larger editions.  Artist proofs were the artists allotment and can be even more desirable adding the artist himself to provenance. The Andy Mouse artworks are the only artworks Revolver Gallery offers that were not released by Warhol.

My perspective and understanding of the market is unique in the sense that I am both a gallery owner and collector. While Warhol is my day to day business, I am an avid collector of Keith Haring works too.  When I purchase artworks, I do so primarily as a collector and take financial risk, whereas many competing galleries who deal in blue-chip secondary market artists, take on consignments which involves no financial investment of the artwork. When we purchase art, like anyone who buys with the intent to sell, we depend on an intensive analysis of factual data points sourced from auction record and an understanding of market trajectory.

ALTSCHULER 001155



An important variable in valuation, which is commonly embraced by investors of art, is the concept of supply and demand. Supply and demand is the foundation of economic theory and a central point in determining value of collectables. There is always a correlation between value when considering the popularity of an artwork and its scarcity.

The Andy Mouse portfolio considered the highest value edition prints released by Haring, It is also one of the lowest edition sizes of his career. When the Andy Mouse artworks were created, they were sold as a complete portfolio or broken up and sold individually. Of the 45 portfolios created, an unknown number were purchased intact as a matching set of 4. It is typically the intention of the artist for the collector to display a portfolio together when issued and released together. When this is the intention of the artist, a collector gives more value to the artwork being complete with edition numbers matching in the secondary market. Finding a complete matching number portfolio, both publicly and privately, is more difficult and less frequent than individual prints from the series.

In the last 4 years, there have been 2 complete matching number portfolios offered publicly in auction. Auction value is typically considered wholesale to a retail gallery. It is also opportune when an artist's value has historical ascension. The idea is that if you buy it and hold it, it will typically go up in value over time, so you can demand a high retail price and wait for either the aggressive buyer or for the market to trend to the value buyer. It is my observation that collectors in pursuit of prints over $100,000 tend to have the liquidity and wealth to buy at gallery ask prices or close to that number. The appeal of prints like Andy Mouse attracts an audience of collectors who are willing to pay more. We call these buyers the "quality conscious" (willing to pay for rarity and condition quality), versus the "value and cost conscious", who straddle finding value in price with willingness of compromise in condition. The last 2 Andy Mouse Portfolios on record sold for a final price of $964,410 (£681,000) 3/27/2018, and more recently, in 2021, a portfolio sold at a smaller auction house in Germany for $1,151,625 (€1,037,500) 6/18/2021. The long term trends demonstrate its scarcity and demand, coupled with the continued popularity of both Haring and Warhol. If we currently owned an Andy Mouse Portfolio at Revolver Gallery, we would "ask" $2MM. There is no fact to support retail value, but considering the last sale price and the growth of the art market in 2021, it is my opinion that we would have offers substantially above the last sale price. To my knowledge, Revolver Gallery is offering the only Andy Mouse in the marketplace with a single one for $495,000.

It is also my opinion that the future of both Andy Warhol and Keith Haring's markets will continue to rise over the mid to long term.

Sincerely,

Ron Rivlin

ALTSCHULER 001156





ALTSCHULER 001157






ALTSCHULER 001158

**Я Є V ● L V E R**
GALLERY

Sale: **520 / Evening Sale**, June 18. 2021 in Munich → Lot 388


Frame image


Frame image


Frame image


Frame image



 
 

+ enlarge


image

## 388

### KEITH HARING

*Andy Mouse (4 Blatt)*, 1986.

Silkscreen in colors

**Estimate** € 300,000 / $ 333,000

**Sold:**   € 1,037,500 / $ 1.151.625
*(incl. 25% surcharge)*

### More Information

+ **Sell**
Get a free appraisal for a similar object!

+ **Register for**
**Keith Haring**

+ Buying from A-Z

+ Contact a specialist

+ Keith Haring Biography

Share  🔲  + Share link

| Lot description | Essay |
|---|---|

**Andy Mouse (4 Blatt)**. 1986.
Silkscreen in colors.
Littmann pp. 64 and 65. Each signed, dated, numbered and inscribed, as well as with the copyright sign. One of 10 artist proofs aside from the edition of 30. On Lennox Museum Board. 96.5 x 96.5 cm (37.9 x 37.9 in), size of sheet.
The complete series. Printed by Rupert Jasen Smith, New York (with blindstamp). Published by George Mulder, New York.
• **The complete series as matching set.**
• **From a small edition, signed by Andy Warhol and Keith Haring.**
• **Iconic pop-art prints.**

PROVENANCE: Galerie Littmann, Basel.
Private collection Lower Saxony (since 1994, acquired from the above).

ALTSCHULER 001159

# EXHIBIT 5

# *Masterpiece*®

### Coverage Update



**Name and address of Insured**

DOUGLAS ALTSCHULER & ZOE WERNER
200 EAST 66TH ST. APT B-2006
NEW YORK, NY 10065

**Page** 1
**Effective Date** 9/23/14
**Policy no.** 13808452-02
**Issued by** Great Northern Insurance Company
a stock insurance company
incorporated in Indiana
**Policy period** 1/7/14 to 1/7/15

**If you have any questions, please contact**
FRANK CRYSTAL & CO INC.
32 OLD SLIP - 17TH FL.
NEW YORK, NY  10005-3504
212.344.2444

Based on information provided by you, your agent or broker, or due to information obtained about your insured property, we have revised your Chubb Masterpiece Policy. The changes are shown below. To keep your records up to date, please attach this update to your existing policy.

Your premium will be increased by **$148.00** for this revision. You will receive a separate statement showing the premium adjustment.

## Valuable Articles

This section shows the changes in your Valuable Articles coverage. All other provisions of this coverage remain in effect.

|  |  | Old Coverage | New Coverage | Blanket limit Per item |
|---|---|---|---|---|
| **Changed** | FINE ARTS - Itemized Coverage | NO COVERAGE | $    400,000 | NO COVERAGE |

## Itemized Articles

### Fine Arts

|  | No. | Description | Value |
|---|---|---|---|
| **Added** | 2 | JOHN MCCRACKEN ALPAH 6, 1988 STAINLESS STEEL 18.9 X 14.96 X 9.84 INCHES | $    150,000 |
| **Added** | 3 | ANDY WARHOL AND KEITH HARING ANDY MOUSE, 1986 COLOR SILKSCREENS EDITION OF 30 38 X 38 INCHES | $    250,000 |

© Copyright  1984 by Chubb & Son Inc.  Form no. Q0806000 05/85

**Reference Copy**

Crystal & Co. 000183

| | |
|---|---|
| **From:** | Butler, Janine |
| **Sent:** | Monday, October 6, 2014 9:02 AM |
| **To:** | '18773377010@efaxds.com' |
| **Subject:** | Attn: Shaquanna Walker Douglas Altschuler - Policy Number: 1380845202 |
| **Attachments:** | Altschuler - Confirmation Binder - Add Fine Arts.pdf; Altschuler Insurance Appraisal 2014 4 30.pdf |
| **Importance:** | High |

Good Afternoon Ms. Walker,

I'm in receipt of a request from you for an appraisal on the following item:

     Andy Warhol and Keith Haring "Andy Mouse", 1986

Please note the initial request below to add the item does include the attached appraisal dated April 30, 2014 from James Corcoran Gallery and the FA item is located on page 3 of 3.

If you require additional information please do not hesitate to contact me.

Best Regards,
Janine

---

**From:** King, Deborah
**Sent:** Tuesday, September 23, 2014 4:44 PM
**To:** 'csc-cornerstone@chubb.com'
**Cc:** Butler, Janine; Marando, Jennifer; Knight, Ayisha
**Subject:** Douglas Altschuler - Policy Number: 1380845202

Hello,

Please process the attached endorsement request to add scheduled fine arts to the above clients policy effective today, September 23, 2014. I have attached a copy of the appraisal as well for your review. Please note, only the two noted items on the endorsement will be added at this time. Per the client, the remaining items are in storage and will not be insured at this time.

Thank you for your assistance and have a good evening!

Deborah King

1

Crystal & Co. 000238

# CRYSTAL & COMPANY

Financial Square
32 Old Slip, 17th floor
New York, New York 10005-3504
PHONE 212 344-2444   800 221-5830
FAX 212 509-1292

## CONFIRMATION OF INSURANCE

Original

| NAMED INSURED |
|---|
| Douglas Altschuler<br>200 East 66th Street-Apt B-2006<br>New York, NY  10065 |

| BINDER DATE | BINDER NO. |
|---|---|
| 09/23/14 | 292844 |

| CLIENT CODE | POLICY TYPE |
|---|---|
| ALTSDO | Endorsement |

Page 1 of 2

| ACCOUNT EXECUTIVE |
|---|
| Janine Butler 212-504-5908 |

| EFFECTIVE DATE | EXPIRATION DATE | POLICY NUMBER | INSURER |
|---|---|---|---|
| 01/07/14 | 01/07/15 | 1380845202 | Great Northern Insurance Co |

### COVERAGE DESCRIPTION AND AMOUNTS/LIMITS

Coverage: Personal Package

Effective Date of Change: 09/23/2014

Description of Change:
Pursuant to your request, this serves as confirmation that we have amended
your policy as follows effective September 23, 2014.

SCHEDULED FINE ARTS ITEMS:
--------------------------
ADD -  John McCracken
       Alpha 6, 1988
       Stainless Steel
       18.9 x 14.96 x 9.84 Inches
       Value: $150,000

ADD -  Andy Warhol & Keith Haring
       Andy Mouse, 1986
       Color Silkscreens
       Edition of 30
       38 x 38 Inches
       Value: $250,000 each

cc: Copy to Client
cc: Copy to Company
cc: Copy to File

Crystal & Co. 000239

# CRYSTAL & COMPANY

Financial Square
32 Old Slip, 17th floor
New York, New York 10005-3504
PHONE 212 344-2444    800 221-5830
FAX 212 509-1292

## CONFIRMATION OF INSURANCE

Page 2 of 2

| NAMED INSURED | BINDER DATE | BINDER NO. |
|---|---|---|
| Douglas Altschuler | 09/23/14 | 292844 |

**COVERAGE DESCRIPTION AND AMOUNTS/LIMITS**

This confirmation of insurance sets forth the general terms, conditions and subjectivites, if any, of placement effected by Crystal & Company on your behalf and at your direction. This confirmation of insurance will be cancelled, superseded and replaced upon delivery of the insurer's binder of coverage. The insurer's binder will be in effect and control this placement until the receipt of the insurer's formal policy/bond documentation.

In addition to the fees and/or commissions received by Crystal & Company for the placement of insurance, in certain circumstances other parties, including other intermediaries, may earn and retain usual and customary commissions for their role in providing insurance products or services under their separate contracts with insurers and/or reinsurers. Further, in certain segments of our business, some of our compensation may be derived from supplemental or bonus commissions paid by insurers or intermediaries based on criteria designed by the insurer or intermediary, to value all the policies that we place with it in a particular period.

| Premium: | Great Northern Insurance Company |
|---|---|
| Confirmed By: | Authorized Representative: |
| At Crystal & Company Refer To:<br>Janine Butler | Admitted:  X          Non-Admitted: |

Crystal & Co. 000240

# JAMES CORCORAN GALLERY

telephone 310.966.1010 | facsimile 310.966.1020 | email jcgallery@earthlink.net
11418 Missouri Avenue | Los Angeles, California 90025

Mr. Douglas Altschuler                                    30 April 2014
200 East 62nd Street, Apt. 18b                             Page 1 of 3
New York, NY  10065

Values for insurance purposes

**Peter Alexander**
Untitled (wedge), 1968-69
Polyester resin
64 x 7 x 7 inches                                         $300,000.

**Charles Arnoldi**
Untitled (diptych), 1980
acrylic & flashe on canvas
84 x 150 inches                                           $200,000.

**Charles Arnoldi**
Untitled, 1986
acrylic on plywood
23 x 40 inches                                            $45,000.

**Larry Bell**
Glass Cube, 1965-66
glass coated with silicone monoxide & chrome
12-1/2 x 12-1/2 x 12-1/2 inches                           $150,000.

**Billy Al Bengston**
Honolulu Watercolor, 1979
watercolor on paper
29 x 29 inches                                            $25,000.

**Billy Al Bengston**
Sonoyta Dracula, 1972
acrylic on canvas
8 x 8 feet                                                $200,000.

Crystal & Co. 000241

Mr. Douglas Altschuler
200 East 62nd Street, Apt. 18b
New York, NY 10065

30 April 2014
Page 2 of 3

<u>Values for insurance purposes</u>

**Vija Celmins**
Untitled (ocean), 1970
two-color lithograph, edition #3/20
20-1/4 x 29-1/4 inches

$200,000.

**Joseph Cornell**
Untitled (Window Façade), circa 1953-56
Painted wood, mirror, newsprint box construction
18-1/8 x 11-7/8 x 4-7/8 inches

$325,000.

**Joseph Cornell**
Untitled (blue sand tray), 1954
wood, sand, clock spring & ball bearing under glass
10.5 x 7.5 x 1.5 inches

$150,000.

**Francois-Xavier Lalanne**
<u>Une Bate (grand donkey)</u>, 1985
bronze, edition #4/8
65 x 71-5/8 x 41 inches

$1,000,000.

**Alfred Leslie**
Untitled, 1960
mixed media collage
28 x 22 inches

$100,000.

**John McCracken**
<u>Alpha 6</u>, 1988
stainless steel
18.9 x 14.96 x 9.84 inches

$150,000.

**John McCracken**
<u>Ixit</u>, 2005
polyester resin, Fiberglas & plywood
28-1/4 x 15 x 9-1/4 inches

$150,000.

**Ken Price**
<u>Design for Billboard</u>, 1981
graphite, colored pencil, gouache
& wash on board
20 x 36 inches

$50,000.

Mr. Douglas Altschuler                                    30 April 2014
200 East 62nd Street, Apt. 18b                            Page 3 of 3
New York, NY  10065

<u>Values for insurance purposes</u>

**Ken Price**
<u>Jelled</u>, 2001
acrylic on ceramic
6-1/2 x 10-1/4 x 7-1/2 inches                             $100,000.

**Ken Price**
Untitled, 1977
Lithograph
Edition #15/20
30 x 22 inches                                           $4,000.

**Ken Price**
<u>Hermit Crab Cup</u>, 1972
Lithograph
Edition AP
28 x 22 inches                                           $4,000.

**Ken Price**
<u>Jivaroland Frog Cup</u>, 1968
Lithograph
Edition BAT
22 x 16-7/8 inches                                       $4,000.

**Ken Price**
<u>Japanese Tree Frog Cup</u>, 1968
Lithograph
Edition #12/20
25-1/4 x 17-1/2 inches                                   $4,000.

**Robert Rauschenberg**
<u>Page 14, Paragraph 4 (Short Stories)</u>, 2000
vegetable dye transfer, pigment transfer &
acrylic on polylaminate
85.5 x 60.5 inches                                       $900,000.

**Andy Warhol & Keith Haring**
<u>Andy Mouse</u>, 1986
color silkscreens
edition of 30
38 x 38 inches each                                      $250,000.

# EXHIBIT 6




**Keith Haring - Andy Mouse**
1 message



**Tracy Lew**
To: Douglas Alts
Cc: James Corc
Bcc: James Core

Wed, Sep 29, 2021 at 5:49 PM

Hello Douglas,

My old dusty notes say that in December 2002 you acquired a set of 4 Keith Haring, "Andy Mouse" prints, 1986, silkscreen on paper, edition of 30, 38 x 38 inches each from Brooke Alexander, New York. Since the transaction occurred directly with Brooke Alexander, I do not have a copy of your invoice or have a record of how much you paid for it.

For some reason, we had this listed on your insurance schedule previously as being by Andy Warhol, when clearly the artist is Keith Haring. ==Jim and I review the values on your schedule together prior to sending them to you, but I don't remember actually seeing the prints in person.== If it would be helpful, I can inquire with Brooke Alexander to ask if they may have the original invoice ... just let me know.

I have attached here two key auction results that may help substantiate a current value of $1,000,000 - $1,500,000.

All very best,

Tracy Lew



**2 attachments**

Haring Andy Mouse 1.2M 2021 June 18.pdf
555K

Haring Andy Mouse 964K 2018 March 27.pdf
297K

JAMES CORCORAN GALLERY 00003

**Subject:** Douglas Altschuler Haring Andy Mouse Ruscha A Large Dog Ruscha Final Triumph
**Date:** Monday, October 4, 2021 at 11:51:39 AM Pacific Daylight Time
**From:** Tracy Lew
**To:** Douglas Altschuler
**CC:** Jim Corcoran,                          James Corcoran
Corcoran Gallery <jcgallery@earthlink.net>

Hello Douglas,

Think I may have found what you are looking for ... from 20 years ago!

Below is what I believe the attached documents support.
Hope this helps you.

Xo Tracy

12/17/2002
Douglas Altschuler (DA) bought RUSCHA/A LARGE DOG from James Corcoran Gallery (JCG) in exchange for $7,500 plus HARING/WARHOL/ANDY MOUSE, Edition #5/30 to JCG.

12/19/2002
JCG sold HARING/WARHOL ANDY MOUSE Edition #5/30 to Brooke Alexander.

09/24/2004
DA sold RUSCHA/FINAL TRIUMPH FINAL PICNIC to Ikon, Ltd.

09/24/2004
DA sold RUSCHA/A LARGE DOG to JCG.

**Page 1 of 1**

JAMES CORCORAN GALLERY 000024

# JAMES CORCORAN GALLERY

telephone 310.966.1010 | facsimile 310.966.1020 | email jcgallery@earthlink.net
11418 Missouri Avenue | Los Angeles, California 90025

Mr. Douglas Altschuler                                                      17 December 2002

**Edward Ruscha**
A Large Dog, 1974
Pastel on paper
23 x 29 inches

A Large Dog by Edward Ruscha from James Corcoran Gallery
in exchange for Andy Mouse by Keith Haring & Andy Warhol
plus $7,500. from Douglas Altschuler

**Keith Haring & Andy Warhol**
Andy Mouse, 1986
Set of 4 silkscreen prints
Edition #5/30
38 x 38 inches each        (artwork received by James Corcoran Gallery 12/09/02)

and

$7,500.

Balance due                              $7,500.

Wire transfer instructions:

Bank:               US Bank
Swift code:         USBK US44 IMT
Routing/transit:    122 235 821
Beneficiary:        James Corcoran Gallery, Inc.
Account:            1643-0087-5360

**Thank you.**

JAMES CORCORAN GALLERY 000025

# EXHIBIT 7

# *Masterpiece*® 　　　*Itemized Articles*



**Name and address of insured**

DOUGLAS ALTSCHULER & ZOE WERNER
167 WEST 82ND STREET
NEW YORK, NY 10028

**Page** 1
**Effective date** 6/1/16
**Policy no.** 13808452-03
**Issued by** Chubb National Insurance Company
a stock insurance company
incorporated in Indiana
**Policy period** 10/12/15 to 10/12/16

**If you have any questions, please contact**
CRYSTAL IBC LLC
32 OLD SLIP - 17TH FL.
NEW YORK, NY  10005-3504
212.344.2444

| Class | No. | Description | | Value |
|-------|-----|-------------|---|-------|
| **Jewelry** | 1 | ROLEX 6265-VINTAGE DAYTONA CHRONOGRAPH, STAINLESS STEEL CASE AND BRACELET, WHITE DIAL, COMPLETE WITH ORIGINAL PUNCH PAPERS | $ | 93,713 |
| | 2 | 18KT YELLOW GOLD OYSTER BRACELET, 18KT YELLOW GOLD CASE, 18KT YELLOW GOLD SMOOTH BEZEL , FACTORY WHITE ROMAN DIAL. | $ | 29,933 |
| **Fine Arts** | 1 | JOHN MCCRACKEN ALPAH 6, 1988 STAINLESS STEEL 18.9 X 14.96 X 9.84 INCHES | $ | 150,000 |
| | 2 | ANDY WARHOL AND KEITH HARING ANDY MOUSE, 1986 COLOR SILKSCREENS EDITION OF 30 38 X 38 INCHES | $ | 250,000 |

© Copyright  1984 by Chubb & Son Inc.   Form no.  Q1200000  05/85

*Reference Copy*

Crystal & Co. 000381

 **Itemized Articles** 

**Name and address of insured**

DOUGLAS ALTSCHULER & ZOE WERNER
167 EAST 82ND ST UNIT 4B
NEW YORK, NY 10028

**Page** 1
**Effective date** 10/12/16
**Policy no.** 13808452-03
**Issued by** Chubb National Insurance Company
a stock insurance company
incorporated in Indiana
**Policy period** 10/12/16 to 10/12/17

**If you have any questions, please contact**
CRYSTAL IBC LLC
32 OLD SLIP - 17TH FL.
NEW YORK, NY  10005-3504
212.344.2444

| Class | No. | Description | Value |
|---|---|---|---|
| Jewelry | 1 | ROLEX 6265-VINTAGE DAYTONA CHRONOGRAPH, STAINLESS STEEL CASE AND BRACELET, WHITE DIAL, COMPLETE WITH ORIGINAL PUNCH PAPERS | $    93,713 |
|  | 2 | 18KT YELLOW GOLD OYSTER BRACELET, 18KT YELLOW GOLD CASE, 18KT YELLOW GOLD SMOOTH BEZEL , FACTORY WHITE ROMAN DIAL. | $    29,933 |
| Fine Arts | 1 | JOHN MCCRACKEN ALPAH 6, 1988 STAINLESS STEEL 18.9 X 14.96 X 9.84 INCHES | $   150,000 |
|  | 2 | ANDY WARHOL AND KEITH HARING ANDY MOUSE, 1986 COLOR SILKSCREENS EDITION OF 30 38 X 38 INCHES | $   250,000 |

© Copyright  1984 by Chubb & Son Inc.  Form no.  Q1200000  05/85

*Reference Copy*

Crystal & Co. 000522

# JAMES CORCORAN GALLERY

telephone 310.966.1010 | facsimile 310.966.1020 | email jcgallery@earthlink.net
11418 Missouri Avenue | Los Angeles, California 90025

Mr. Douglas Altschuler
200 East 66th Street, #B-2006
New York, NY 10065

6 January 2017
Page 1 of 3

Values for insurance purposes

**Peter Alexander**
Untitled (wedge), 1968-69
Polyester resin
64 x 7 x 7 inches                                          $250,000.

**Charles Arnoldi**
Untitled (diptych), 1980
acrylic & flashe on canvas
84 x 150 inches                                           $200,000.

**Charles Arnoldi**
Untitled, 1986
acrylic on plywood
23 x 40 inches                                            $45,000.

**Larry Bell**
Glass Cube, 1965-66
glass coated with silicone monoxide & chrome
12-1/2 x 12-1/2 x 12-1/2 inches                           $150,000.

**Billy Al Bengston**
Honolulu Watercolor, 1979
watercolor on paper
29 x 29 inches                                            $25,000.

**Billy Al Bengston**
Sonoyta Dracula, 1972
acrylic on canvas
8 x 8 feet                                                $150,000.

Crystal & Co. 000638

Mr. Douglas Altschuler                                6 January 2017
200 East 66th Street, #B-2006                         Page 2 of 3
New York, NY  10065

<u>Values for insurance purposes</u>

**Vija Celmins**
Untitled (ocean), 1970
two-color lithograph, edition #3/20
20-1/4 x 29-1/4 inches                                $200,000.

**Joseph Cornell**
Untitled (Window Façade), circa 1953-56
Painted wood, mirror, newsprint box construction
18-1/8 x 11-7/8 x 4-7/8 inches                        $400,000.

**Joseph Cornell**
Untitled (blue sand tray), 1954
wood, sand, clock spring & ball bearing under glass
10.5 x 7.5 x 1.5 inches                               $200,000.

**Francois-Xavier Lalanne**
<u>Une Bate (grand donkey)</u>, 1985
bronze, edition #4/8
65 x 71-5/8 x 41 inches                               $1,000,000.

**Alfred Leslie**
Untitled, 1960
mixed media collage
28 x 22 inches                                        $100,000.

**John McCracken**
<u>Alpha 6</u>, 1988
stainless steel
18.9 x 14.96 x 9.84 inches                            $150,000.

**John McCracken**
<u>Ixit</u>, 2005
polyester resin, Fiberglas & plywood
28-1/4 x 15 x 9-1/4 inches                            $150,000.

**Ken Price**
<u>Design for Billboard</u>, 1981
graphite, colored pencil, gouache
& wash on board
20 x 36 inches                                        $50,000.

Mr. Douglas Altschuler                                    6 January 2017
200 East 66th Street, #B-2006                              Page 3 of 3
New York, NY  10065

<u>Values for insurance purposes</u>

**Ken Price**
<u>Jelled</u>, 2001
acrylic on ceramic
6-1/2 x 10-1/4 x 7-1/2 inches                             $100,000.

**Ken Price**
Untitled, 1977
Lithograph
Edition #15/20
30 x 22 inches                                           $4,000.

**Ken Price**
<u>Hermit Crab Cup</u>, 1972
Lithograph
Edition AP
28 x 22 inches                                           $4,000.

**Ken Price**
<u>Jivaroland Frog Cup</u>, 1968
Lithograph
Edition BAT
22 x 16-7/8 inches                                       $4,000.

**Ken Price**
<u>Japanese Tree Frog Cup</u>, 1968
Lithograph
Edition #12/20
25-1/4 x 17-1/2 inches                                   $4,000.

**Robert Rauschenberg**
<u>Page 14, Paragraph 4 (Short Stories)</u>, 2000
vegetable dye transfer, pigment transfer &
acrylic on polylaminate
85.5 x 60.5 inches                                       $900,000.

**Andy Warhol & Keith Haring**
<u>Andy Mouse</u>, 1986
color silkscreens
edition of 30
38 x 38 inches each                                      $250,000.

# EXHIBIT 8

 Gmail

copy land <copyland83@gmail.com>

## Fwd: Douglas Altschuler Andy Mouse appraisal
2 messages

**Douglas Altschuler** <douglas.altschuler@gmail.com>                    Fri, Apr 8, 2022 at 4:30 PM
To: "copyland83@gmail.com" <copyland83@gmail.com>

---------- Forwarded message ---------
From: **Douglas Altschuler** <douglas.altschuler@gmail.com>
Date: Thu, Aug 2, 2018 at 4:35 PM
Subject: Re: Douglas Altschuler Andy Mouse appraisal
To: Janine Butler <janine.butler@crystalco.com>

Thank you very much.

On Aug 2, 2018 at 4:17 PM, <Janine Butler> wrote:

Hello Mr. Altschuler,

Please find attached a binder evidencing the update of agreed value.

You will receive an endorsement reflecting the update directly from Chubb in the upcoming weeks.

Warm Regards,
Janine

**Janine Butler, CPRIA**
Senior Account Executive

# CRYSTAL
# &COMPANY
The integrity of independence.

**Best High-Net-Worth Insurance Broker 2016, Private Asset Management Magazine**
**Best Insurance Brokerage 2016, 2017 & 2018 Family Wealth Report**

32 Old Slip
New York, NY 10005
DIRECT 212-504-5908
FAX    212-952-0896
Visit our new website, here!

ALTSCHULER 001240

The information in this communication and any attachment(s) may be privileged, confidential or otherwise protected by law. If you are not the intended recipient, please contact me immediately. Thank you.

**From:** Douglas Altschuler [mailto:douglas.altschuler@gmail.com]
**Sent:** Thursday, August 02, 2018 1:13 PM
**To:** Butler, Janine <Janine.Butler@crystalco.com>
**Subject:** Re: Douglas Altschuler Andy Mouse appraisal

Candidly, I knew the value was higher but I was surprised myself.  Please bind- if that is the correct term. Thank you

On Aug 2, 2018 at 12:46 PM, <Janine Butler> wrote:

Hello Mr. Altschuler,

This item is substantially underinsured per the appraisal.

Please confirm at this time you'd like to increase the value to the attached appraised.

Warm Regards,
Janine

---

**Janine Butler, CPRIA**

Senior Account Executive

---

**Best High-Net-Worth Insurance Broker 2016, Private Asset Management Magazine**

ALTSCHULER 001241

**Best Insurance Brokerage 2016, 2017 & 2018 Family Wealth Report**

32 Old Slip

New York, NY 10005

DIRECT 212-504-5908

FAX    212-952-0896

Visit our new website, here!

The information in this communication and any attachment(s) may be privileged, confidential or otherwise protected by law.  If you are not the intended recipient, please contact me immediately. Thank you.

**From:** Douglas Altschuler [mailto:douglas.altschuler@gmail.com]
**Sent:** Thursday, August 02, 2018 12:35 PM
**To:** Butler, Janine <Janine.Butler@crystalco.com>
**Subject:** Re: Douglas Altschuler Andy Mouse appraisal

It is item number 2. Thanks

On Aug 2, 2018 at 12:07 PM, <Janine Butler> wrote:

Hello Mr. Altschuler,

Thank you for the attached appraisal. I'm having trouble matching the piece with the ones currently listed on your policy. Please see attached schedule of your items and advise which item number the appraisal is referencing.

Warm Regards,
Janine

Janine Butler, CPRIA

ALTSCHULER 001242

Senior Account Executive

**Best High-Net-Worth Insurance Broker 2016, Private Asset Management Magazine**

**Best Insurance Brokerage 2016, 2017 & 2018 Family Wealth Report**

32 Old Slip

New York, NY 10005

DIRECT 212-504-5908

FAX    212-952-0896

Visit our new website, here!

The information in this communication and any attachment(s) may be privileged, confidential or otherwise protected by law.  If you are not the intended recipient, please contact me immediately. Thank you.

**From:** Douglas Altschuler [mailto:douglas.altschuler@gmail.com]
**Sent:** Thursday, August 02, 2018 11:48 AM
**To:** Butler, Janine <Janine.Butler@crystalco.com>
**Subject:** Fwd: Douglas Altschuler Andy Mouse appraisal

See below for new appraisal for this piece. I found experts on this piece of art. Thank you and let me know if you need anything else.

Begin forwarded message:

ALTSCHULER 001243

**From:** Elaine Efstathiou <elaineart@earthlink.net>
**Date:** Jul 26, 2018 at 9:37 AM
**To:** Douglas Altschuler <douglas.altschuler@gmail.com>
**Subject: Douglas Altschuler Andy Mouse appraisal**

Dear Douglas Dina completed the appraisal for your Andy Mouse suite if you do decide to ever sell I hope you remember me! Do send us an email before you get into Los Angeles so we an arrange to meet you. Let me know what you found out from Chubb. best regards Elaine

---

**Douglas Altschuler** <douglas.altschuler@gmail.com>
To: "copyland83@gmail.com" <copyland83@gmail.com>                        Fri, Apr 8, 2022 at 4:32 PM

---------- Forwarded message ---------
From: **Douglas Altschuler** <douglas.altschuler@gmail.com>
Date: Fri, Jan 11, 2019 at 3:00 PM
Subject: Re: Douglas Altschuler Andy Mouse appraisal
To: Janine Butler <janine.butler@crystalco.com>

Hi there- happy new year.  I have not received an invoice in awhile and know that in the past the company had an incorrect address for me.  Are there any outstanding balances? Thanks
[Quoted text hidden]

ALTSCHULER 001244

# EXHIBIT 9



**Coverage Update**

CHUBB®

**Name and address of Insured**

DOUGLAS ALTSCHULER & ZOE WERNER
167 EAST 82ND ST UNIT 4B
NEW YORK, NY 10028

**Page** 1
**Effective Date** 8/2/18
**Policy no.** 13808452-03
**Issued by** Chubb National Insurance Company
a stock insurance company
incorporated in Indiana
**Policy period** 10/12/17 to 10/12/18

**If you have any questions, please contact**
CRYSTAL IBC LLC
32 OLD SLIP - 17TH FL.
NEW YORK, NY  10005-3504
212.344.2444

Based on information provided by you, your agent or broker, or due to information obtained about your insured property, we have revised your Chubb Masterpiece Policy. The changes are shown below. To keep your records up to date, please attach this update to your existing policy.

Your premium will be increased by **$293.00** for this revision. You will receive a separate statement showing the premium adjustment.

## Valuable Articles

This section shows the changes in your Valuable Articles coverage. All other provisions of this coverage remain in effect.

|  |  | Old Coverage | New Coverage | Blanket limit Per item |
|---|---|---|---|---|
| Changed | FINE ARTS - Itemized Coverage | $ 4,336,000 | $ 5,586,000 | NO COVERAGE |

## Itemized Articles

**Fine Arts**

|  | No. | Description | Value |
|---|---|---|---|
| Changed | 2 | ANDY WARHOL AND KEITH HARING ANDY MOUSE, 1986 COLOR SILKSCREENS EDITION OF 30 38 X 38 INCHES | $ 1,500,000 |

Rating Information on this coverage has been amended.

© Chubb.2016.  All rights reserved.    Form no.  Q0806000

*Reference Copy*

Crystal & Co. 000870

# Appraisal for

# Douglas Altschuler

# July 25, 2018

Crystal & Co. 000872

# DINA BROWN ART APPRAISALS
## WWW.DINABROWNARTAPPRAISALS.COM

July 25, 2018

Douglas Altschuler
167 east 82nd Street, Apt 4b
New York, NY 10028

Dear Mr. Altschuler:

Thank you for employing my appraisal services.

The objective of this appraisal is to estimate the replacement cost for the artwork referenced in this report. This appraisal is to be used only for the intended use of obtaining insurance coverage. I understand you, Douglas Altschuler, are the owner of the artwork assessed in this report. The intended users are Douglas Altschuler and agents of your insurer. Any other use renders this appraisal null and void. The effective date of this appraisal is July 25, 2018.

This appraisal made use of the cost approach to estimate replacement cost. The Uniform Standards of Professional Appraisal Practice defines cost as the amount required to create, produce, or obtain a property. In the cost approach, the marketplace is researched to estimate replacement cost, i.e. the amount of money it would cost to replace the subject property or to acquire a suitable replacement property. The sales comparison and income approach were not utilized in this instance as the sales comparison approach establishes fair market value, and the income approach was not utilized as it is solely used for investment property.

The global art market at this time is relatively stable. Reports from auction houses showed some decline in the previous years, while dealer sales and art fairs showed increases. The markets for this item include high-end retail art galleries, private dealers, and auction houses.

The scope of work entailed reviewing photographs of the artwork and the associated paperwork, researching the appropriate markets, analyzing the data to reach a value conclusion, and reporting the results in an appraisal report form. Markets explored were retail outlets and private dealers. The replacement costs indicated herein do not reflect any additional expenses that may be incurred in purchasing a replacement item such as sales tax or shipping cost.

Douglas Altschuler
Prepared to Assist with Insurance Coverage
Effective Valuation Date: July 25, 2018
Report Issue Date: July 25, 2018

Page 1 of 5

Crystal & Co. 000873

# DINA BROWN ART APPRAISALS
## WWW.DINABROWNARTAPPRAISALS.COM

The work appears to be in excellent condition. However, the work was not inspected in person. This created a limiting condition, and this appraiser has made an extraordinary assumption that there were no problems with the work. An extraordinary assumption is an assumption which could be contrary to fact, and which, if contrary to actual fact, could result in a different value conclusion.

Unless otherwise stated herein, the appraisal is based only on the readily apparent identity of the item appraised. In my opinion, no further guarantee of authenticity, genuineness, attribution or authorship is necessary. This appraiser has made the extraordinary assumption that all information and documentation (e.g. artwork description, photographs, provenance) provided by the client is accurate, correct and genuine.

An appraiser's objective is to provide an opinion of value for a specific purpose as of a specific date. Appraisers do not authenticate works of art; however, every effort has been made to properly identify the appraised property. Although this appraiser has no reason to doubt the authenticity of the subject property, this report is not intended to serve as a certificate of authenticity or warrantee. Dina Brown Art Appraisals cannot be held accountable if the subject property is deemed not authentic at a future date.

It is my understanding that the work examined in this report is free from all liens, encumbrances, or fractional interests. This appraisal is not an indication of ownership.

With the exception of my client and his insurer, possession of this report or its copy does not carry with it the right of publication, nor may this report be utilized for any other function other than the intended use. This report must not be altered in any way, and, in the event it is copied or reproduced, it must be in its entirety.

This report is confidential. I will retain a copy of this document and my work file, and others will not have access to this information unless I am compelled by a court of law.

Dina Brown Art Appraisals will retain the work file for this assignment for a minimum of five (5) years after the issue date or two (2) years after final disposition or any judicial proceedings involving the appraisal firm, which ever expires last. Dina Brown Art Appraisals will make every effort to store client files in a safe and secured environment. However, the firm is not responsible for acts of war, terrorism or other such unexpected catastrophes that may affect the safekeeping of this report.

Douglas Altschuler
Prepared to Assist with Insurance Coverage
Effective Valuation Date: July 25, 2018
Report Issue Date: July 25, 2018

Crystal & Co. 000874

## DINA BROWN ART APPRAISALS
### WWW.DINABROWNARTAPPRAISALS.COM

I certify to the best of my knowledge and belief:

    a. All statements of fact contained in this report are true and correct.

    b. The reported analyses, opinions, and conclusions are limited only by the reported critical assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.

    c. I have no undisclosed past or present interested in the property that is the subject of this report. I am also an art dealer; there may future interest in the property. I have no personal interest with respect to the parties involved nor I have I had any involvement in a transaction or appraisal of these items in the past three years.

    d. I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

    e. My engagement in this assignment was not contingent upon developing a predetermined result.

    f. My compensation for this appraisal is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

    g. I have not personally inspected the listed property that is the subject of this report.

    h. Unless noted elsewhere, no one provided significant professional assistance to the person signing this report.

    i. This appraisal has been prepared in conformity with, and is subject to, the current version of the International Society of Appraiser's Appraisal Report Writing Standard and Code of Ethics. In addition, my analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with, the current version of the Appraisal Foundation's (USPAP) Uniform Standards of Professional Appraisal Practice (2016-2017).

Sincerely,

*Dina Brown*

Dina Brown
ISA Accredited Member

Douglas Altschuler
Prepared to Assist with Insurance Coverage
Effective Valuation Date: July 25, 2018
Report Issue Date: July 25, 2018

Page 3 of 5

Crystal & Co. 000875

# DINA BROWN ART APPRAISALS
## WWW.DINABROWNARTAPPRAISALS.COM

1.

Object: Limited edition
Artist: *Keith Haring (American, b. 1958)*
Title: *Andy Mouse (Suite of 4)*
Year: 1986
Medium: Screenprint
Sheet size: 38 x 38 inches
Edition size: 30
Edition number: 3/30
Framed: No
Signed: Yes, '3/30, 'K. Haring, '86' in pencil [LR], also signed by Andy Warhol, 'Andy Warhol'
in pencil [LL]

Description: Four images of Andy Warhol drawn with mouse ears in bright, clear colors
and black line work. In the first image, 'Andy Mouse' is standing in a pile of money; in the
second image, he is being carried by a group of figures in rainbow colors; in the third image
two blue figures hold a bill with Andy Mouse in the center; the last image is a full frontal
of Andy Mouse standing with his hands on his hips.

Condition: Excellent, never framed in portfolio box

Provenance: Purchased from B-2 Gallery, Santa Monica, CA



Replacement cost: $1,500,000.00

Total replacement cost: $1,500,000.00

Douglas Altschuler
Prepared to Assist with Insurance Coverage
Effective Valuation Date: July 25, 2018
Report Issue Date: July 25, 2018

Page 4 of 5

Crystal & Co. 000876

# DINA BROWN ART APPRAISALS
## WWW.DINABROWNARTAPPRAISALS.COM

### PROFESSIONAL QUALIFICATIONS

DINA BROWN ART APPRAISALS
Owner, 2013- present

- Conduct appraisals for Modern, Post-War and Contemporary Fine Art for a variety of client needs including insurance coverage, charitable contributions, estate tax and resale knowledge
- Liaise with contacts at galleries, artist studios, museums and other art institutions

GALLERY BROWN
Owner, 2004 – present

- Operate a brick and mortar contemporary art gallery
- Curate and promote shows for Post-War, Contemporary and emerging artists
- Advise, sell to, and buy from high-net-worth clientele

ELAINE FINE ART
Director, 1991-2003

- Oversaw daily operations of a full scale art brokerage
- Acted as a primary contact for dealers, galleries and artists
- Organized and maintained an artist inventory system
- Performed shipping and coordinated transportation of artwork

PROFESSIONAL AFFILIATIONS
International Society of Appraisers, Accredited Member

EDUCATION
International Society of Appraisers Core Course
International Society of Appraisers Fine Arts Course
Uniform Standards of Professional Appraisal Practice (USPAP) course

MEMBERSHIPS
Museum of Contemporary Art, Los Angeles
Los Angeles County Museum of Art

EXTRACURRICULAR ACTIVITIES
Los Angeles Locals Offering Valuable Essentials, a 501(c)(3), founder
Mid City West Community Council, board member/elected official of the city of LA

Douglas Altschuler
Prepared to Assist with Insurance Coverage
Effective Valuation Date: July 25, 2018
Report Issue Date: July 25, 2018

Page 5 of 5

Crystal & Co. 000877

# CRYSTAL & COMPANY

Crystal IBC LLC
32 Old Slip
New York, NY 10005-3504
Phone 800 221-5830
FAX 800 383-1852

## CONFIRMATION OF INSURANCE

Original

| NAMED INSURED |
|---|
| Douglas Altschuler<br>200 East 66th Street-Apt B-2006<br>New York, NY 10065 |

| BINDER DATE | BINDER NO. |
|---|---|
| 08/02/18 | 359885 |

| CLIENT CODE | POLICY TYPE |
|---|---|
| ALTSDO | Endorsement |

| ACCOUNT EXECUTIVE |
|---|
| Janine Butler 212-504-5908 |

Page 1 of 2

| EFFECTIVE DATE | EXPIRATION DATE | POLICY NUMBER | INSURER |
|---|---|---|---|
| 10/12/17 | 10/12/18 | 1380845203 | Chubb National Insurance Co |

**COVERAGE DESCRIPTION AND AMOUNTS/LIMITS**

Coverage: Personal Homeowners

Effective Date of Change: 08/02/2018

Description of Change:
Pursuant to your request, this serves as confirmation that we have amended
your policy as following effective August 2, 2018.

SCHEDULED FINE ART ITEMS:
---------------------------
AMEND VALUE - Item #2: Andy Warhol and Keith Haring Andy Mouse, 1986
              Color Silkscreens Edition of 3/30, 38 x 38 inches.
              Amend Value FROM: $250,000  TO: $1,500,000
              (Per attached appraisal)

All other policy provisions remain unchanged.

Crystal & Co. 000878

# EXHIBIT 10

1  **POLI, MOON & ZANE, PLLC**
   Michael N. Poli (State Bar No. 006431)
2  MPoli@pmzlaw.com
   Jeff G. Zane (State Bar No. 024172)
3  jzane@pmzlaw.com
   2999 North 44th Street, Suite 325
4  Phoenix, Arizona 85018
   Telephone:  (602) 857-8180
5  Facsimile:  (602) 857-7333

6  *Attorneys for Plaintiff*

7              **UNITED STATES DISTRICT COURT**

8                    **DISTRICT OF ARIZONA**

9  Douglas Altschuler,

10             Plaintiff,                    No. CV-21-00119-TUC-DCB

11      v.                                   **PLAINTIFF'S AMENDED**
                                             **ANSWERS TO DEFENDANT'S**
12 Chubb National Insurance Company,         **FIRST SET OF NON-UNIFORM**
   an Indiana corporation,                   **INTERROGATORIES**

13             Defendant.

14

15

16      Plaintiff Douglas Altschuler ("Plaintiff") hereby amends his answers to Defendant's

17 First Set of Non-Uniform Interrogatories, dated March 24, 2022, as follows:

18              <u>**NON-UNIFORM INTERROGATORIES**</u>

19 <u>**INTERROGATORY NO. 1:**</u>

20      Please identify the number edition of the Keith Haring Andy Mouse silk screen set,

21 edition of 30, scheduled as item no. 2 under the itemized fine arts section of Chubb Policy

22 13808452-05, attached hereto as Exhibit A, which is the subject of your claim.

23      <u>**ANSWER:**</u>   **As Plaintiff has stated on multiple occasions during his recorded**

24 **statements and examinations under oath, he is unaware of the number edition of the**

25 **Keith Haring Andy Mouse silk screen set. Plaintiff once suspected that this edition was**

26 **3/30 or an Artist's Proof, but has no basis to be certain about that.**

27

28

**INTERROGATORY NO. 2:**

Please identify the number edition of the Keith Haring Andy Mouse silk screen set you allegedly purchased from B1 Gallery in Santa Monica in or around 1987.

**ANSWER:   To the best of Plaintiff's knowledge – 5/30.**

**INTERROGATORY NO. 3:**

Please identify the individual to whom you traded the Keith Haring Andy Mouse silk screen set that you allegedly purchased from B1 Gallery in Santa Monica in or around 1987 to.

**ANSWER:   James Corcoran.**

**INTERROGATORY NO. 4:**

Please identity each and every watch that was the subject of the March 31, 2020, letter from Browne George Ross to Bruno Derval, attached hereto as Exhibit B.

| **ANSWER:** | **Silver Big Red Daytona** | **-** | **Model 6265** |
|---|---|---|---|
| | **Gold Daytona** | **-** | **Model 6265** |
| | **Black GMT Master** | **-** | **Model 1675** |
| | **Explorer 11** | **-** | **Model 1655** |
| | **White Submariner** | **-** | **Model 1680** |
| | **Black Big Red Daytona** | **-** | **Model 6263** |
| | **Pepsi GMT Master PCG** | **-** | **Model 1675** |

**INTERROGATORY NO. 5:**

Please detail all the factual support for your claims that the subject losses occurred at the residence, with specific references to documentation, statements, and witnesses who will corroborate the same.

**ANSWER:   Plaintiff objects to this request on the grounds that to the extent it seeks a detailed description of all the information pertaining to his contract claim, the**

2

interrogatory is overly broad, unduly burdensome, and improper. *See, e.g., Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007) ("Contention interrogatories that systematically track all of the allegations in an opposing party's pleadings, and that ask for 'each and every fact' and application of law to fact that supports the party's allegations, are an abuse of the discovery process because they are overly broad and unduly burdensome.") (citations omitted); *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998) ("Interrogatories should not require the answering party to provide a narrative account of its case. . . .  They should not duplicate initial disclosures. . . . The court will generally find them overly broad and unduly burdensome on their face to the extent they ask for 'every fact' which supports identified allegations or defenses.") (multiple internal citations omitted); *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989) (describing inappropriate interrogatories: "Courts are loathe to require a party to 'write basically a portrait of their trial' for the other parties") (citation omitted). *See also* Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2163 ("depositions are preferable [to written interrogatories] if a searching interrogation of the other party is desired"); *Id.*, § 2169 ("interrogatories are of limited utility for inquiring into certain types of subjects").

Plaintiff has provided two recorded statements, and then an examination under oath for six and a half hours, followed by a second examination under oath for almost four hours, in which he provided testimony in response to Defendant's questions about the evidence supporting this insurance claim. This Interrogatory requests that Plaintiff combine over ten hours of testimony into a single response.

Because this Interrogatory broadly seeks "<u>all factual support</u>" for that Plaintiff's theft loss occurred as described in his insurance claim (underline added), a complete response to the Interrogatory would require documentation of literally every document and witness description disclosed by either party in this Lawsuit.

Notwithstanding the foregoing objection, Plaintiff is currently unable to condense its entire document production, as well as that of Defendant, into a single

1  **Interrogatory response, and therefore must incorporate these productions into its**
2  **response.**

3

4  **INTERROGATORY NO. 6:**

5      Please provide a chronology of the locations where the Keith Haring Andy Mouse

6  silk screen set that is the subject of your claim was kept from the time you purchased it

7  through the date of the losses.

8      **ANSWER: It was purchased by Mr. Altschuler from Keith Haring and**

9  **shipped to his parent's home in Tucson, Arizona.  Initially, it was stored in the guest**

10  **house where Mr. Altschuler lived when he was in Arizona. It was also displayed in the**

11  **guest house on his parent's property at some point in time.**

12      **It was then moved to the main house and stored behind a large cabinet, which**

13  **contained China and glass.  Sometime around November 2019 it was moved to the**

14  **living room of Mr. Altschuler's parents' house and stored under a couch.**

15

16  **INTERROGATORY NO. 7:**

17      Please provide the names and locations of each and every place where you

18  keep/store/display the fine art that you acquire, including the remainder of the items

19  scheduled in the fine arts section of Chubb Policy 13808452-05, attached hereto as

20  **Exhibit A**.

21      **ANSWER:    SRI**
22      **120 Brighton Road**
        **Clifton, NJ 07012**

23      **Delaware Freeport**
24      **Newark, De 19711**

25      **Cadogan Tate Fine Art**
        **5233 Alcoa Avenue**
26      **Vernon, CA 90058**

27  **INTERROGATORY NO. 8:**

28      Please describe each and every encounter you had with Keith Haring, including the

4

encounter that resulted in your purchase of the Andy Mouse silk screen set from him, to include the locations, approximate dates, year(s) or time of year/season, subject matter, and participants/witnesses to each encounter.

**ANSWER:   Plaintiff objects to the scope of this Interrogatory, which requests a specific recollection of every meeting between Plaintiff and another person, the majority of which occurred between three and four decades ago. Notwithstanding the foregoing objection, Plaintiff met and/or saw Keith Haring a number of times at Morgans Hotel in NYC where he resided for a number of years.  He also saw him a number of times at "clubs" in NYC. Plaintiff did not necessarily walk up to him and speak with him, but he and Mr. Haring may have acknowledged each other.**

**Plaintiff recalls seeing Mr. Haring on a flight to Los Angeles, California once and spoke with him briefly on this flight. Plaintiff also saw him at least once in Phoenix, Arizona, as well. These are Plaintiff's recollections of his encounters which occurred largely in the 1980s.**

**INTERROGATORY NO. 9:**

What materials and/or information did you provide Dina Brown or Elaine Efstathiou for purposes of obtaining an appraisal of the Keith Haring Andy Mouse silk screen set that is the subject of Dina Brown's July 25, 2018, appraisal report attached hereto as Exhibit C.

**ANSWER:   A narrative of my purchases of the 2 sets of Andy Mouse Prints. Plaintiff described his other art, in general, to Ms. Efstathiou. He informed her that he believed he owned edition 3/30, but that he was not certain, as he had not checked the edition recently, and mutually agreed that the edition number was not important. Plaintiff and Ms. Efstathiou discussed the condition of Plaintiff's set, which he described to her as perfect; flawless. He told her specifically where the art was located, in Arizona.**

1    **Plaintiff also explained to Ms. Efstathiou that all of his other art had been**

2    **appraised by Jim Corcoran's office, but this piece of art was not purchased from them**

3    **and they were generally unfamiliar with this work.**

4

5    DATED this 18th day of October 2022.

6                                           **POLI, MOON & ZANE, PLLC**

7

8                                           By  */s/ Jeff G. Zane*
                                                Michael N. Poli
9                                               Jeff G. Zane
                                                2999 North 44th Street, Suite 325
10                                              Phoenix, Arizona 85018
                                                *Attorneys for Plaintiff*

11

12

13

14

15                                  **CERTIFICATE OF SERVICE**

16           I hereby certify that on October 18, 2022, I transmitted the foregoing document via

17    email to the following counsel of record:

18                                           Robert T. Sullivan
                                             Jonathan Y. Yu
19                                  BROENING OBERG WOODS & WILSON, P.C.
                                             2800 N. Central Avenue, Suite 1600
20                                           Phoenix, Ariona 85004
                                             rts@bowwlaw.com
21                                           jyy@bowwlaw.com
                                             *Attorneys for Defendant*

22

23                                           */s/ Linda Lieber*

24

25

26

27

28

1

**<u>VERIFICATION</u>**

2

    I, Douglas Altschuler, Plaintiff in the foregoing matter, hereby certify under penalty

3

of perjury that I have read the foregoing Amended Answers to Defendant's First Set of

4

Non-Uniform Interrogatories and know the contents thereof; that the statements contained

5

therein are true and correct to the best of my knowledge, except as to those matters stated

6

upon information and belief, and as to those matters, I believe them to be true.

7

    DATED this 18th day of October, 2022.

8

9

                                  _____

10

                                      Douglas Altschuler

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28