**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas Altschuler, et al., | No. CV-21-00119-TUC-DCB |
| Plaintiffs, | **ORDER** |
| v. | |
| Defendant National Insurance Company, | |
| Defendant. | |

The Court denies the Plaintiff's Motion for Partial Summary Judgment, denies in part and grants in part the Defendant's Motion for Summary Judgment, and dismisses the bad faith and punitive damage claims.

<u>Summary Judgment: Standard of Review</u>

Summary Judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.56(c). It is not for the judge to determine the truth of a matter asserted, weigh the evidence, or determine credibility, but only to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The movant carries the burden of showing that there is no genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party, *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

Plaintiff seeks summary judgment in part for Defendant's refusal to cover the theft of artwork, an Andy Warhol and Keith Haring "Andy Mouse" silkscreen print. Defendant asks the Court to find that Plaintiff's insurance claims fail because he cannot establish an entitlement to coverage under the Masterpiece (Chubb) Policy, effective date August 2, 2019, (the Policy) for the allegedly stolen artwork or alleged loss of a Rolex watch, and even if he establishes coverage for the artwork and watch, he made fraudulent misrepresentations and concealments warranting denial of the claims. The dispositive motions hinge on whether Plaintiff owned the Andy Mouse artwork covered by the Policy and whether the loss of the Rolex watch occurred within the coverage period of the Policy.

Plaintiff alleges he is an avid art collector, with an extensive art collection, and he also acquired a watch collection. Plaintiff alleges that both covered items, the Andy Mouse artwork, which is a set of four silkscreens, and the Rolex watch, were stored at his mother's home in Tucson, Arizona. The Andy Mouse artwork was allegedly discovered stolen in December of 2019. The Rolex watch was discovered missing in February 2020. Defendant denied coverage for both claims.

1. <u>The Andy Mouse artwork</u>

According to the Plaintiff in 1987, he purchased for $5,000 a set of four silkscreen prints entitled "Andy Mouse" from the B1 Gallery in Santa Monica, with his then girlfriend, Lisa McCollum. He has no receipt, but McCollum attests to this purchase, and the B1 Gallery owner remembers it. A couple years later, Plaintiff asserts that for $10,000 he bought the same Andy Mouse artwork as an "artists proofs" (AP) screen print from the artist, Keith Haring. There is no independent proof of this purchase. In 2002, he traded one set to the James Corcoran Gallery for another piece of art. He kept both at his mother's home and insured them there.

In 2008, he insured the Andy Mouse artwork for the first time with AIG for $250,000, with a property schedule declaration of "Andy Warhol 'Andy Mouse' 4 PCS." (P MPSJ, SOF, Ex. 20: Declarations (Doc. 171-2) at 414, 415.) To support this coverage, the Plaintiff obtained a sight unseen 2008 valuation based on an Artnet review of recent

sales of various prior sales of numbered editions, including different pieces of the numbered edition (NE) 3 of 30 (3/30) Andy Mouse print. *Id.,* Ex. 21: Appraisal (Doc. 171-2) at 425, 427, 430.) In 2014, Defendant issued coverage based on an appraisal performed sight unseen for the artwork declared in the policy property schedule as "ARTS $250,000 ANDY WARHOL AND KEITH HARING ANDY MOUSE, 1986 COLOR SILKSCREENS EDITION OF 30 38x38 INCHES." (D MSJ, SOF, Ex. 5 (Doc. 169-1) at 64.) This property schedule description reflected the appraisal description of the property. *Id.* at 70. In 2018, Plaintiff submitted an updated appraisal for the Andy Mouse artwork, which identified the work being appraised as NE "3 of 30 (3/30)," and Defendant issued coverage for $ 1.5 million, declared in the property schedule as "Andy Mouse, 1986 Color Silkscreens Edition of 30 38x38 inches." (D MSJ, SOF, Ex. 12: the Policy (Doc. 169-2) at 15.) Like all the previous appraisals, the 2018 appraisal was given without seeing the artwork. Plaintiff attests that in 2018 he told the appraiser that he thought it could be the 3/30 NE Andy Mouse but was not certain about this. On January 17, 2020, the Plaintiff filed a Property Loss Notice for theft of "Andy Mouse 1986." (D MSJ, SOF, Ex. 17: Notice (Doc. 169-2) at 52, 55.) He submitted a sworn Proof of Loss on May 28, 2020, indicating the loss of "Andy Warhol and Keith Haring Andy Mouse, 1986 Color Silkscreens Edition of 30 38 x 38 inches." *Id.* at Ex. 16 (Doc. 169-2) at 32.)

Defendant denied the claim because Plaintiff could not show he owned the Andy Mouse artwork NE 3 of 30. During the claim investigation it became apparent that this print could not have been owned by the Plaintiff because "three of the four pieces" from the NE 3/30 Andy Mouse artwork were actually auctioned piecemeal by various galleries between 1996 and 2014.  (D MSJ (Doc. 173) at 9.) In short, the 3/30 Andy Mouse artwork (set of four silkscreens) had been broken up long before Plaintiff ever secured insurance for this artwork or any time thereafter when he changed insurers from AIG to Defendant in 2014 and increased coverage in 2018. As noted above, this fact was reported in the 2008 appraisal.

On October 6, 2020, Defendant conducted an Examination Under Oath (EUO) of the Plaintiff, who attested that the stolen Andy Mouse screen print was the artwork acquired from the B1 Gallery, which only sold NE prints, and he believed that the artwork traded to the James Corcoran Gallery was the AP Andy Mouse screen print.

On December 15, 2020, Defendant denied the claim based on fraud by misrepresentation because Plaintiff could not have owned Andy Mouse NE 3/30. Defendant relied then, as it does now, on the fact that the 2018 appraisal identified the property as "NE set 3 of 30" instead of the property schedule which in 2018 more broadly described Andy Mouse "Edition of 30."

Plaintiff argues the claim should have been paid based on proof of ownership of the Andy Mouse "Screen Print" regardless of the edition number because he obtained the appraisal in 2018 to increase coverage from $250,000 to $1.5 million after describing the artwork as an Andy Mouse "Screen Print" and telling the appraiser "that he was uncertain about whether it was an AP or a numbered edition, . . . [and] "guessed at "3/30." (P Resp. (Doc. 193) at 7.) Plaintiff ignores that evidence he told the Defendant he did not know what screen print he owned creates a material issue of fact precluding summary judgment because an insurer may challenge claims which are fairly debatable. *Trus Joist Corp. v. Safeco Ins. Co. of Am.,* 735 P.2d 125, 134 (Ariz. App. 1986), and its belief in fair debatability 'is a question of fact to be determined by the jury,'" *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (2000) (quoting *Sparks v. Republic Nat'l Life Ins. Co.,* 647 P.2d 1127, 1137 (Ariz. 1982)).

During discovery in this case, it became evident that an email was sent from the James Corcoran Gallery to the Plaintiff on October 4, 2021, telling him that its records reflected that in 2002, he traded $7,500 plus Haring/Warhol/Andy Mouse, Edition #5/30 to JCG for Ruscha/A large Dog from JCG." (D MSJ, DOF, Ex. 6: Email (Doc. 169-1) at 73-74.) In his responses to non-uniform Interrogatories on April 25, 2022, Plaintiff corrected the record to reflect its status today: he purchased NE 5 of 30 Andy Mouse from the B1 Gallery and traded it to the James Corcoran Gallery in 2002. Accordingly, he would

have been left owning only the AP Andy Mouse artwork that he allegedly bought from Keith Haring in 1989. Plaintiff argues it does not matter whether the artwork was the AP print or a NE of 30 print, or a specific NE like 3/30 or 5/30. Plaintiff submits expert testimony that valuation is not affected by an item's numerical placement within an edition group or if it is a NE or AP screen print. (P Resp. (Doc. 193) at 6 (relying on Defendant's investigator, John Chvostal opinion of value).

Defendant asserts that it is now clearer than ever that Plaintiff cannot prove he owned the property covered by the Policy, either the NE 3/30 or NE of 30 Andy Mouse screen print. Defendant argues that the Plaintiff cannot even establish ownership of the AP screen print. Plaintiff has no evidence, except for his say so, that he ever purchased the AP Andy Mouse artwork. His story that he bought it directly from Keith Haring in Phoenix, Arizona, sometime around 1989 was not been confirmed by the Haring Foundation; it has no record of any such sale. Keith Haring died in 1990.

Defendant explains that printmaking is an artistic method in which an image is transferred from a template (commonly wood, metal, or glass) onto another surface such as paper, fabric, or in this case to a silkscreen though application of controlled pressure to create a mirror image of the template design. In 1986, the artist Keith Haring produced a set of four silkscreen prints depicting his close friend, Andy Warhol, as a cartoon mouse, collectively known as "Andy Mouse." Haring printed thirty (30) Numbered Edition (NE) sets for public sale, each set being identified by a unique number found on the bottom right corner indicating the edition number to which the print belongs, such as 3/30 or 5/30. (D MSJ (Doc. 173) at 4.)

In addition to the NE of 30 Andy Mouse silkscreen prints, there were 10 AP Andy Mouse sets issued, which are not necessarily intended for commercial sale. AP prints refer to impressions of a print taken throughout the printmaking process which enable the artist to observe the current state of template and print image while they are working on it. There were also five Printers Proof (PP) sets, and five Hors d'Commerce (HC) sets. Like the NE prints, these other prints are also identified by unique custom numbering found on the

bottom of each piece indicating its precise edition number followed by "AP," "PP," or "HC," such as 3/30 AP or 5/30 AP.

Defendant notes without objection, the Plaintiff's art appraisal expert, R. Rivlin's opinion that AP screen prints, generally, have a higher value than the larger NE sets due to their rarity, limited quantity, and unique provenance. But according to the Defendant, "[t]he most important thing to remember for purposes of navigating Plaintiff's labyrinth insurance claim is that *Artist Proofs are separate and distinct from Numbered Editioned Sets."* (MSJ (Doc. 173) at 4, SOF ¶9 (citing Ex. 4: Rivlin Report; Ex. 22: Vazquez Depo. 28-29, and Ex. 36 Berman Trans. 68-69).

The parties' crossmotions for summary judgment are not so much disputed facts and more differing arguments as to what the facts show. For example, the record arguably reflects, and Plaintiff argues, that from the inception of the claimed loss, the Plaintiff told the Defendant that he was not sure whether the Andy Mouse artwork was the print he purchased from the B1 Gallery in 1986 and didn't know for certain its specific edition number, or it may have been the AP Andy Mouse screen print he bought from Keith Haring in 1989. It is not true as Defendant asserts that Plaintiff is now representing in his Motion for Partial Summary Judgment that that he insured and seeks coverage for the Andy Mouse artwork purchased from the B1 Gallery—a set he admittedly traded away seventeen years prior to the alleged loss.) DSOF 41." (D Resp. (Doc. 192) at 8 and n. 8 (citing P MPSJ (Doc. 170) at 3-4)); D Reply (Doc. 203) at 6 and n.1 (citing P Resp. (Doc. 193) at 5-6)) (emphasis in original). The Plaintiff's position asserted in his dispositive motion is that he "does not recall if either of the Screen Prints he purchased were an 'edition of 30' (one of 30 sets) or an AP (the AP sets were kept by the artist for his personal use or sale)." (P MSPJ (Doc. 170) (citations to the record reflecting this position from the inception of the claim); (P Resp. (Doc. 193) at 5-6 (same).

The Plaintiff argues this record shows that he was forthcoming in informing Defendant regarding the confusion to rebut Defendant's assertions of misrepresentation and concealment. Defendant makes a credible argument that the Plaintiff's flip-flopping

- 6 -

misrepresentations reflect fraudulent attempts to fit his claim to the evidence as it unfolded during the claim investigation and discovery in this case.

Both parties are making arguments that should be presented to a jury, not to a court on summary judgment. This Court cannot assess credibility or weigh the evidence, and must construe all facts and inferences in favor of the nonmoving party. When both parties file dispositive motions, the Court considers each motion on its own merits to determine for each party whether judgment may be entered in accordance with Rule 56. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir.2001).

To resolve the parties' dispositive motions, the Court must also consider whether coverage exists for any Andy Mouse "Screen Print," and it doesn't matter whether it was a NE of 30 print, doesn't matter what number it was in the NE, 3/30 or 5/30, or if it was an AP screen print.

First, the Court must consider the Plaintiff's assertion that the Defendant should be precluded from challenging coverage based on any argument other than fraudulent misrepresentation or concealment. The Denial Letter issued December 15, 2021, stated Defendant denied the silkscreen claim on the following grounds: Plaintiff had "intentionally concealed or misrepresented material facts with respect to the claim in that, without limitation, [he] represented that [he] owned and had possession of the insured silkscreens at the time of the alleged loss; . . . [he] misrepresented that [he] owned and had possession of the insured silkscreens at the time the policy was issued/renewed." (D MSJ, SOF, Ex. 26: Denial Letter (Doc. 169-4) at 5.) The Denial Letter referenced the Policy, General Conditions, Exclusions: Concealment or Fraud: "We do not provide coverage if you or any covered person has intentionally concealed or misrepresented any material fact relating to this policy before or after a loss." *Id.* at 4; (P MPSJ, SOF, Ex. 14: 2019 Policy, General Conditions, Exclusions: Concealment or Fraud (Doc. 171-2) at 111). Plaintiff argues that Defendant is limited now to proving fraud, an affirmative defense, *American Pepper Supply*, 93 P.3d at 511, under the referenced condition of exclusion.

To the extent the Plaintiff is asking the Court to find the Defendant waived and should be estopped from challenging Plaintiff's proof of coverage as compared to asserting an affirmative defense of fraud, the Court denies him relief. First, while the Denial Letter referenced the fraud exclusion for intentional concealment or misrepresentation of material facts, it also included a blanket reservation of rights, as follows: "This disclaimer is without prejudice to, or waiver of, any other defenses to coverage which may exist, including, without limitation, any defenses based upon facts and grounds known or not known, stated or not stated herein. . . . [and] including all rights under applicable law." (D. Resp. (Doc. 192) at 24); P MPSJ, SOF, Ex. 1: Denial Letter (Doc. 171-1) at 7.) Defendant did not voluntarily relinquishe its right to adopt alternative grounds for denying Plaintiff's claim.

There is no basis for estoppel, which arises "where one with knowledge of the facts has acted in a particular manner so that he ought not to be allowed to assert a position inconsistent with his former acts to the prejudice of others who have relied thereon." *See* (P MPSJ (Doc. 170) at 16-17 (quoting *City of Tucson v. Koerber*, 82 Ariz. 347, 356, 313 P.2d 411, 418 (1957)). Defendant's assertion of fraud has always been that the Plaintiff did not own the Andy Mouse artwork covered by the Policy, specifically the NE 3/30 Andy Mouse silkscreen. This remains Defendant's theory of the case. In light of the new evidence, however, the distinction between 3/30, 5/30 or NE of 30 is no longer dispositive because evidence discovered after the claim denial shows that he could only have owned the AP Andy Mouse artwork.

It is not an alternative ground for denial to add new evidence discovered since the Denial Letter to support the assertion of fraud, such as the email sent from the James Corcoran Gallery on October 4, 2021, informing the Plaintiff that he had traded the Andy Mouse NE 5/30 away in 2002, leading to the only logical conclusion that he could only have owned the AP Andy Mouse artwork. In combination with the record evidence the Plaintiff argues shows he disclosed to Defendant he did not know which screen print he owned, there is a material question of fact precluding partial summary judgement for

1  Plaintiff unless he can show that the covered property under the Policy was the Andy
2  Mouse AP Screen Print, and he owned it.

3 The Defendant argues that under Arizona law the Plaintiff cannot show he owned
4 the Andy Mouse artwork covered by the Policy, and if he can—it can show the Plaintiff
5 concealed and misrepresented his ownership or lack thereof for the covered property. First,
6 Defendant challenges the Plaintiff's ability to make a *prima facie* breach of contract case
7 because he cannot establish that he owns the covered property. *Associated Aviation*
8 *Underwriters v. Wood*, 98 P.3d 572, 595 (Ariz. App. 2004). Only then does the burden
9 shift to the insurer to establish any condition or exception to coverage, *American Pepper*
10 *Supply Co. v. Federal Ins. Co.*, 93 P.3d 507, 509, 511 (Ariz. 2004) (*en banc*). An insurer
11 may deny a claim based on an insured's misrepresentation or concealment of facts
12 surrounding a claimed loss, *Ariz. Prop. & Cas Ins Guar. Fund v. Helme*, 735 P.2d 451,
13 458-459 (1987), and meets this burden by showing the insured has materially
14 misrepresented or concealed information of evidence that would permit a fair resolution of
15 the claim. *American Pepper Supply,* 93 P.3d at 511. *See also CenTrust Mortg. Corp. v.*
16 *PMI Mortg Ins*, 800 P.3d 37 (42 (App. 1990). The standard of review for both Plaintiff and
17 Defendant is by a preponderance of the evidence. *Id.*, A.R.S. § 13-413.

18 While the law differs for the Plaintiff's *prima facie* case of insurance coverage
19 compared to Defendant's showing of materiality for the affirmative defense of concealment
20 or misrepresentation to void coverage, both require the parties to address whether the
21 Plaintiff owned the covered property. Plaintiff submits he owned the property covered
22 under the Policy: the Andy Mouse "Screen Print." Defendant asserts he did not own the
23 covered property: the Andy Mouse NE 3/30, and he cannot even establish he owned a NE
24 of 30 or AP Andy Mouse screen print. To be clear, the affirmative defense, only comes
25 into play if Plaintiff can make a *prima facie* case of coverage.

26     2.  <u>The Rolex watch</u>

27 In 2008, Plaintiff purchased a collection of high-end watches, including the Rolex
28 watch which cost $50,000. Subsequently, he and his parents agreed he would leave the

1  watch with them in Tucson for safekeeping. He did not see the watch again until his mother
2  brought it to him to wear at his wedding in Los Angeles on May 22, 2010. (D MSJ, SOF,
3  Ex. 11: Altschuler EUO (Doc. 169-2) at 158), *but see id.,* Ex. 32: Altschuler Recorded
4  Statement (RS) (Doc. 169-4) at 43 (reflecting wedding in 2012)). Afterwards, she took the
5  watch back to Tucson, where he "assumed" she continued to keep it either in a lockbox or
6  safety deposit box. *Id.* After his mother's death, attorneys informed him that the watch
7  could not be located during the settlement of her estate. (D MSJ, SOF, Ex. 11: Altschuler
8  EUO (Doc. 169-2) at 161.) He reported the watch missing in February 2020. *Id.*

9        The coverage period for the watch ran from August 1, 2019, through August 1, 2020.
10 Defendant argues that the Plaintiff cannot establish when the loss occurred, let alone that
11 it occurred during the coverage period. Defendant challenges the Plaintiff's ability to make
12 a *prima facie* case of a covered loss under the Policy. (D MSJ (Doc. 173) at 24.) And, if
13 the Court denies summary judgment, then Defendant makes the affirmative defense of
14 fraud based on the claim investigation discovery that after filing the claim in February
15 2020, the Plaintiff acted like he still owned the Rolex watch by trying to return it for a
16 refund and then selling it.

## DISCUSSION

18       Interpretation of an insurance contract is a question of law to be determined by this
19 Court. *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. App. 2000);
20 *Sparks*, 647 P.2d at 1132. The Court construes the provisions of an insurance contract
21 according to the plain and ordinary meaning of its terms and conditions and construes any
22 ambiguity against the insurer. *Id.* This rule of construction, however, only applies to
23 provisions that are "'actually ambiguous.'" *Id.* (quoting *Thomas v. Liberty Mut. Ins. Co.*,
24 842 P.2d 1335, 1338 (Ariz. App. 1992). If a clause may be susceptible to different
25 constructions, it is ambiguous. *Id.* Then, to discern the intent of the parties, the Court looks
26 for meaning by examining the purpose of the contract provision in question, the public
27 policy considerations involved, and the transaction as a whole. *Id.* (citing *Ohio Cas. Ins.*
28 *Co. v. Henderson*, 939 P.2d 1337, 1339 (Ariz. 1997)).

"When recovery is sought under an insurance contract, the insured has the burden of proving that his loss was due to an insured risk." *Pac. Indem. Co. v. Kohlhase*, 455 P.2d 277, 279–80 (Ariz. 1969) (citations omitted). To establish a *prima facie* case, Plaintiff must prove the insurance policy, the happening of the insured event, and the giving of notice as provided in the policy. *Id.* This is why Plaintiff's objection that Defendant may not now add an alternative defense to coverage fails to the extent the Defendant is urging nothing more than what the law requires of the Plaintiff. He must show a loss covered by the Policy, then the burden will shift to Defendant, the insurer, to show the loss was within a policy exclusion, here, fraudulent misrepresentation or concealment of ownership. *Id.*

"Where the evidence is conflicting, the question of whether the loss is within the risks of the policy or excepted therefrom is ordinarily for the trier of fact." *Id.* If, however, it is undisputed that no coverage exists because it was a risk not covered by the policy, "then the court has a duty to direct a verdict for the insurer." *Id.* Defendant argues that the Policy only covered the risk from theft of the Andy Mouse NE 3/30 and loss of the Rolex watch during the coverage period. In other words, Plaintiff's *prima facie* case fails for both claims. Additionally, Defendant supports its denial of coverage of both claims based on the Policy fraud exclusion: "We do not provide coverage if you or any covered person has *intentionally* concealed or misrepresented any material fact relating to this policy before or after a loss."

1. <u>Whether Plaintiff owned the covered Andy Mouse artwork?</u>

To consider the risk assumed by the Defendant under the express terms of the Policy, the Court examines the policy language in a way to give meaning to the parties' intent, *State Farm Mut. Auto. Ins. Co. v. O'Brien*, 535 P.2d 46, 48 (1975), and where there is no ambiguity, the Court construes the provisions in the policy "according to their plain and ordinary meaning," *Keggi v. Northbrook Prop. & Cas. Ins*. Co., 13 P.3d 785, 788 (Ct. App. 2000). "It is not the prerogative of the court to rewrite an insurance policy in an attempt to avoid possible harsh results." *O'Brien*, 24 Ariz. App. at 20, 535 P.2d at 48. Under the law, the "[a]ttached schedules are as much a part of the policy as the insuring

clauses and the definitions. *Harbor Ins. Co. v. United Services Auto. Ass'n*, 559 P.2d 178, 181 (Ariz. App. 1976).

In Arizona, coverage risk is limited to the property scheduled for coverage in the policy. *Harbor Ins. Co. v. United Services Auto. Ass'n*, 559 P.2d 178, 181 (Ariz. App. 1976); *Home Indem. Co. v. Wilson*, 489 P.2d 244, 247 (1971). In *Harbor Insurance*, a tractor was not covered under an insurance policy because "it [wa]s not one of the vehicles listed on the schedule." *Harbor Ins. Co.*, 559 P.2d at 181. Finding the intention of the parties controls, the court looked to the expression of intended coverage in the scheduled property in the policy. The court held the "insurer should be required to pay damages only on property intended to be insured and to answer only for risks intended to be assumed….The scheduling of automobiles is not merely for the convenience of assessing premiums but is itself a declaration of the limitations of the hazards assumed. *Id.* (internal citations omitted). *See also Home Indem. Co. v. Wilson,* 489 P.2d 244, 247 (Ariz. 1971) (holding an unscheduled 1956 Pontiac was not covered; "To hold otherwise would be a perversion of the plain and ordinary meaning of the language used in the insurance contract.")

Defendant applies these cases dealing with automobiles, which hold that the description of the property to be insured identifies the subject matter of the insurance contract. Defendant argues that "the Policy's Itemized Articles section identifies the Silkscreens as coming from a Numbered Editioned Set of 30." (D Resp. P MSJ (Doc. 192) at 18), *see* (D Resp. SOF, Ex. 12: the Policy (Doc. 184-2) at 29). To support the denial based on Plaintiff's failure to show he owned Andy Mouse NE 3/30, the Defendant relies on the attendant 2018 appraisal description and submits that the "Confirmation of Insurance" issued to the Plaintiff in 2018 likewise reflected the increase in coverage was for Andy Mouse "Silkscreen Edition of 3/30." *Id.,* Ex. 12: the Policy (Doc. 184-2) at 22.

The Court finds the plain meaning of the property schedule reflects a difference between "NE of 30" in the 2019 Policy when compared to the prior property schedule in the AIG 2008 policy, which was "Andy Warhol 'Andy Mouse' 4 PCS. (P MPSJ, SOF, Ex.

20: 2008 AIG policy (Doc. 171-2) at 414.) The purpose of a property schedule is to limit the insurer's risk to only the property intended to be insured, i.e., the property owned by the insured for which the coverage was intended, not any other property. The claim investigation in this case is a good example of this limitation to risk. The Chvostal Provenance Opinion reflects that for the Andy Mouse NE of 30 prints, 19 were owned by persons other than the Plaintiff, leaving only 11 NE of 30 prints as potentially covered artwork under the Policy. (D MSJ, SOF, Ex. 2: Chvostal Art Advisory, Provenance Opinions- Four Screen Prints Andy Mouse Series, 1986 (Doc. 169-1) at 29-30.) If the property schedule specified Andy Mouse NE 3/30, the plain terms of the Policy limited Defendant's risk further to one potentially covered item.

Plaintiff maintains he did not, and does not, know what screen print he owned, and argues it doesn't matter.[1] The Court must look to the intent of the parties as expressed under the plain terms of the policy, Itemized Articles, specifically the expressly designated scheduled property: ". . . Andy Mouse, 1986 Color Silkscreens Edition of 30 38x38 inches." (D MSJ, SOF, Ex. 12: the Policy (Doc. 169-2) at 15.) Here, the Plaintiff argues that NE of 30 has no meaningful distinction because whether the Andy Mouse was a NE of 30 or AP screen print did not affect the value of the artwork. If anything, AP screen prints, generally, have a higher value because they are more limited in number than a NE print. The Plaintiff has posited evidence to show that the distinction did not increase the risk for the coverage amount of the loss as between the two. Establishing there is no fraud based on valuation does not, however, show two uniquely different items of property are the same item intended by the parties to be covered by the Policy. While the valuation evidence is enough to rebut Defendant's assertions of materiality needed to establish the affirmative defense of fraud, it is not enough to create a material question of fact as to the parties' intent regarding risk when they expressly and in plain terms agreed that the covered property would be Andy Mouse "NE of 30."

---

[1] If Plaintiff had presented evidence, even his own attestation, that he in fact owned Andy Mouse NE of 30, this would create a disputed material question of fact, and Defendant's Motion for Summary Judgment would fail.

- 13 -

It is undisputed that the NE of 30 and AP of 10 designations would have been clearly visible on the face of each silkscreen print, representing the precise uniqueness of each Andy Mouse screen print. Plaintiff, an experienced art collector, would have known the significance of limited-edition designations, including the property scheduled description "NE of 30." Even in combination, the evidence showing the same valuations for Andy Mouse NE or AP screen prints and the Plaintiff's confusion as to his ownership between the two, the Plaintiff fails to create a disputed question of fact regarding the plain meaning of the coverage limitation "NE of 30" in the property schedule. The Court finds this was the property the parties intended to cover under the Policy, and Plaintiff fails to show he owned Andy Mouse NE of 30. Instead, the Defendant presents evidence that is not disputed by the Plaintiff that he did not own an Andy Mouse NE of 30, including NE 3/30, SCREEN print because he could only have owned the AP Andy Mouse artwork. This artwork was not covered under the plain meaning of the property schedule, Andy Mouse "NE of 30." Plaintiff cannot show that he owned the property covered by the Policy and, therefore, fails to make a *prima facie* case for breach of contract. The Court grants summary judgment for Defendant in part as to the Andy Mouse artwork breach of insurance contract claim.

3. <u>Whether loss of the Rolex watch occurred within the coverage period?</u>

In 2008, Plaintiff purchased a collection of six watches from Bruno Derval, the International Collection, LLC., including the Rolex 6265 Vintage Stainless Steel Daytona Chronograph Watch (Rolex watch), for $50,000. Unlike the Andy Mouse Screen Prints, Plaintiff has evidence of this purchase. Here, Defendant argues the Plaintiff's *prima facie* case fails because he cannot establish coverage because he cannot show the loss occurred within the coverage period.

The coverage period for the Rolex watch ran from August 1, 2019, through August 1, 2020, and Plaintiff reported the loss in February 2020.[2] In Arizona, the controlling inquiry of whether a loss falls within the coverage period is the time of the actual damage

---

[2] Plaintiff obtained coverage from Defendant for the watch March 3, 2014, and an updated appraisal made sight unseen in 2018 for $120,000 increased coverage for the relevant 2019-2020 time period.

- 14 -

to the complaining party, not the time of the wrongful act. *State v. Glens Falls Ins. Co.,* 609 P.2d 598, 600 (Ariz. App. 1980), *Outdoor World v. Continental Cas. Co.,* 594 P.2d 546, 549 (Ariz. App. 1979). Speculation of an injury based on facts that did not occur only refers to a potential, not actual, injury. *Glens Falls Ins. Co.,* 609 P.2d at 601.

The Court understands the Plaintiff last saw the Rolex watch at his wedding in 2010. Thereafter, he believed his mother kept the watch in Tucson in her safety deposit or lock box. After she passed away during settlement of her estate, he was informed in February 2020 that the watch could not be located. Defendant is correct that the Plaintiff will be precluded from introducing hearsay evidence of what his mother said about keeping the watch for him to prove the truth of that matter. Fed. R. Evid. R.801(c). He may, however, without offering hearsay evidence, testify that "he asked her to put it in the safety deposit box." (D MSJ, SOF, Ex.:11: Altshuler EUO (Doc. 169-2) at 8.) He may testify to his belief, and why he believed, that his mother had the Rolex watch secured at the time of her death and why he believed the watch disappeared during the coverage period. It is for a jury to assess the persuasiveness, including Plaintiff's credibility, of the evidence he presents to establish as a matter of fact that the loss occurred during the policy coverage period. There is, therefore, a material question of fact that precludes summary judgment for the Defendant on the issue of coverage necessary to make a *prima facie* case of breach of contract.

Defendant argues that even if Plaintiff makes this *prima facie* showing, the Court should grant summary judgment based on its denial of the claim due to misrepresentations and concealments regarding his ownership of the Rolex watch at the time of loss. According to Defendant, its claim investigation discovered that after Plaintiff filed the claim in February 2020, his conduct suggested he did not suffer any loss because he continued to possess the watch. Defendant relies on the record which reflects that at the end of March 2020, Plaintiff sent a letter to Bruno Derval, International Dream Collection, demanding he accept "the return of the watches" and "refund the monies Mr. Altschuler spent on each of the watches," (D MSJ, SOF, Ex. 33: Letter 3/31/2020 (Doc. 169-4) at 47).

After failing to secure a refund for the watches from Mr. Derval, the Plaintiff sent his watch collection to a third party, Mr. Wind, for resale, and the punch papers inventorying the watches to be sold, which were sold, included the Rolex watch as a sale item. Plaintiff asserted that the "post-loss references to the Rolex watch were the product of 'inadvertence' and 'oversight' and that no attempts were made to refund or resell the Watch after he reported it missing." (D MSJ (Doc. 173) at 18.) The Court finds material questions of fact exist which preclude summary judgment for Defendant relevant to the affirmative defense of fraud based on alleged misrepresentations and concealments by Plaintiff that he continued to own the Rolex watch after the reported date of loss.

The Defendant's Motion for Summary Judgment is denied in part for the breach of contract claim based on its denial of coverage for the loss of the Rolex watch.

4.  <u>Whether Plaintiff's bad faith and punitive damage claims must be dismissed?</u>

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002). The implied covenant of good faith and fair dealing prohibits each party from doing anything to prevent the other from receiving the benefits and entitlements of the agreement. *Id.* The implied covenant of good faith and fair dealing can also be breached by a party if it "exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain." *Beaudry v. Ins. Co. of the W.*, 50 P.3d 836, 841 (Ariz. App. 2002) (citation omitted). Again, the burden is on the Plaintiff to come forward with some evidence from which a reasonable juror could conclude that Defendant did not act in good faith. *Schwartz v. Farmers Ins. Co. of Ariz.*, 800 P.2d 20, 23 (Ariz. App. 1990) (noting that a plaintiff must prove breach of duty of good faith and fair dealing by a preponderance of the evidence). The Plaintiff does not necessarily have to show a breach of the contract to demonstrate bad faith. *See Wells Fargo Bank*, 38 P.3d at 29 (explaining because a party may be injured when the other party to a contract manipulates bargaining power to its own advantage, a party may breach its duty of good faith without actually breaching an express covenant in the contract).

1  "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy **and** the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. *Noble v. Nat'l Am. Life Ins. Co.,* 624 P.2d 866, 868 (Ariz. 1981) (citation omitted) (emphasis added).

"The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances." *Id.* This threshold test requires a showing of negligence, i.e., did the insurance company act reasonably. Where an insurer acts reasonably, there is no negligence and no bad faith. *Trus Joist Corp.,* 735 P.2d at 134. However, an insurer is not guilty of bad faith merely because it acts unreasonably. Negligent conduct which results solely from an honest mistake, oversight, or carelessness does not necessarily create bad faith liability even though it may be objectively unreasonable. *Id.* (citing *Apodaca,* 151 Ariz. at 161, 726 P.2d at 577). To find bad faith there must be evidence of "[s]ome form of consciously unreasonable conduct." *Id.* This requirement of consciously unreasonable conduct is fulfilled either by the insurer's knowledge that it is acting improperly *or* by reckless conduct which permits such knowledge to be imputed to it. It is this subjective element of knowledge that elevates bad faith to a quasi-intentional tort. *Id.*

The Court treads cautiously to grant summary judgment on Plaintiff's bad faith claim because "[w]hile an insurer may challenge claims which are fairly debatable, *id.,* its belief in fair debatability 'is a question of fact to be determined by the jury.'" *Supra* at 4: Summary Judgment, 1. Andy Mouse artwork (quoting *Zilisch,* 995 P.2d at 279 (quoting *Sparks,* 647 P.2d at 1137)). The insurer has "duties of a fiduciary nature," including "[e]qual consideration, fairness and honesty," *id.* (quoting *Rawlings v. Apodaca,* 726 P.2d 565, 571(Ariz. 1986)), making it liable if "'it seeks to gain unfair financial advantage of its insured through conduct that invades the insured's right to honest and fair treatment," and

1 because of that, "the insurer's eventual performance of the express covenant—by paying
2 the claim—does not release it from liability for 'bad faith.'" *Id.* at 279-280 (quoting
3 *Rawlings,* 726 P.2d at 572.) In short, "[a]n insurer may challenge a claim it believes is
4 'fairly debatable,' but only if the insurer acts reasonably in investigating, evaluating, and
5 processing the claim." *Zilisch,* 995 P.2d at 280. This means that if an insurer acts
6 unreasonably in the manner in which it processes a claim, it will be held liable for bad faith
7 "without regard to its ultimate merits." *Deese v. State Farm Mut. Auto. Ins. Co.,* 172 Ariz.
8 504, 507, 838 P.2d 1265, 1270 (1992).

9 Here, the Court grants summary judgment for Defendant on the bad faith claims.
10 First, the Court has found the Plaintiff fails to make a *prima facie* breach of contract case
11 for the denial of coverage for the Andy Mouse artwork. As for the bad faith claim related
12 to Defendant's denial of coverage for the loss of the Rolex watch, the Court finds that at
13 trial a directed verdict would be warranted. Here, the evidence provided by the Plaintiff to
14 Defendant shows he had not seen the Rolex watch for over ten years, he could offer no
15 definitive evidence showing the time of the loss but explained why he believed that the
16 Rolex watch remained at his mother's home at the time of her death, and Plaintiff's post-
17 claim conduct arguably reflected fraud. While the Court cannot say that no reasonable mind
18 might conclude the Plaintiff can establish the loss occurred within the coverage period, it
19 finds reasonable minds could only conclude that the question of coverage based on the loss
20 occurring within the coverage period was fairly debatable. *Zilisch*, 977 P.2d at 138. In
21 combination with evidence that arguably supports a conclusion of fraud, the Court finds
22 that no reasonable jurors could conclude that in the investigation, evaluation, and
23 processing of the claim, the insurer acted unreasonably and either knew or was conscious
24 of the fact that its conduct in denying the claim for the loss of the Rolex watch was
25 unreasonable. *Noble*, 624 P.2d at 868.

26 Under Arizona law, "[t]here is no such thing as a cause of action simply for punitive
27 damages. Rather, the right to an award of punitive damages must be grounded upon a cause
28 of action for actual damages." *Quiroga v. Allstate Ins. Co*., 726 P.2d 224, 226 (Ariz. App.

1986), *see also Edmond v. Fairfield Sunrise Vill., Inc.*, 644 P.2d 296, 298 (Ariz. App. 1982) ("A lawsuit for punitive damages only may not proceed once the cause of action for actual damages has been extinguished, actual damages being necessary to support punitive damages.") Because the Court grants summary judgment for Defendant on the Andy Mouse screen art, the related punitive claim fails as well.

In Arizona, we restrict the availability of punitive damages to cases where a defendant's wrongful conduct was guided by evil motives. *Rawlings*, 726 P.2d at 578. In other words, Plaintiff must prove that Defendant's evil hand was guided by an evil mind. Having found no evil hand, i.e., no bad faith related to Defendant's denial of coverage for the loss of the Rolex watch, the Plaintiff's related punitive damage claim fails.

CONCLUSION

Here, a thorough examination of Defendants' Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment, the corresponding responsive memoranda, documents, and declarations, reveal material, factual, contentions which require a taking of evidence, a weighing of evidence and a resolution of dispute by trial only in part for the claim that Defendant breached the insurance contact by denying the loss claim for the Rolex watch.

**Accordingly,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 173) is DENIED IN PART AND GRANTED IN PART as follows: denied except for Plaintiff's claim that Defendant breached the insurance contract by denying coverage for the loss of the Rolex watch.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 170) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's claims of bad faith and for punitive damages fail.

/////

/////

1     **IT IS FURTHER ORDERED** that the parties are referred to a Magistrate Judge, the Honorable Jacqueline M. Rateau, to hold a settlement conference within the next 60 days, unless the Magistrate Judge extends this time due to her calendar availability.

    **IT IS FURTHER ORDERED** that within 20 days of a failure to settle this case, a Proposed Pretrial Order shall be filed with this Court.

    Dated this 28th day of February, 2024.

_____
Honorable David C. Bury
United States District Judge