**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas Altschuler, et al., | No. CV-21-00119-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Chubb National Insurance Company, | |
| Defendant. | |

Pending before the Court is Defendant Chubb National Insurance Company's Application for Attorneys' Fees. (Doc. 226.) The Application has been fully briefed. (Docs. 230, 232.) The Court has reviewed all relevant materials in the docket,[1] and for the following reasons, grants the Defendant's Application in part, awarding the Defendant **$252,637.23**.

I.      Background

Defendant Chubb National Insurance Company denied Plaintiff's claims for loss of a Rolex watch and a set of "Andy Mouse" silkscreen prints by Keith Haring. A set of Andy Mouse silkscreens consists of four separate individual prints. (Doc. 169-1 at 93; *see* Doc. 171 at ¶¶ 6, 9.)

Plaintiff alleged that he purchased an Andy Mouse set numbered 3 out of 30 (the "Numbered Edition") in 1987 from the B1 Gallery in Santa Monica, California. (Doc. 171-

---

[1] On September 9, 2024, this case was assigned to the undersigned. (Doc. 233.) The Court will approve the parties' Stipulation to Extend Deadline for Defendants' Reply To Plaintiff's Opposition to Motion for Attorneys' Fees. (Doc. 231.) The Reply was filed on July 21, 2024. (Doc. 232.)

1 at 168–70.) Plaintiff's purchase of the Numbered Edition was attested to by Robert Berman, the owner of the B1 Gallery in 1987, and by Lisa McCollum, Plaintiff's girlfriend in 1987. (Doc. 171-1 at 353:18-32, 364.)

In 2008, Plaintiff purchased insurance coverage from AIG Insurance, in the amount of $250,000.00, for an "Andy Warhol 'Andy Mouse' 4 PCS." (Doc. 171-2 at 414–15.) In 2014, Plaintiff purchased insurance for Andy Mouse artwork through Defendant, and Defendant issued coverage based on an appraisal of the artwork performed sight unseen. (Doc. 169-1 at 72.) The "covered property" schedule described the insured artwork as "ARTS $250,000 ANDY WARHOL AND KEITH HARING ANDY MOUSE, 1986 COLOR SILKSCREENS EDITION OF 30 38x38 INCHES." (Doc. 169-1 at 64.)

In 2018, Plaintiff increased the replacement coverage for the artwork based on an updated appraisal valuing the artwork at $1,500,000. (Doc. 169-1 at 88, 93.) The updated policy identified the covered artwork as "ANDY WARHOL AND KEITH HARING ANDY MOUSE, 1986 COLOR SILKSCREENS EDITION OF 30 38 x 38 INCHES." (*Id.* at 88) The appraisal described the artwork as "Edition Number: 3/30," purchased at B-2 Studio in Santa Monica, California. (Doc. 169-1 at 93; Doc. 169-2 at 15.) The appraisal was also conducted without inspection of the artwork. (Doc. 171-3 at 269–71.)

In January 2020, Plaintiff filed an insurance claim with the Defendant for the theft of "Andy Mouse 1986," stating the artwork had been stolen from his parents' house in late 2019. (Doc. 169-2 at 27–30.) On May 28, 2020, Plaintiff submitted a sworn Proof of Loss, indicating the loss of "Andy Warhol and Keith Haring Andy Mouse, 1986 Color Silkscreens Edition of 30 38 x 38 inches." (*Id.* at 32–33.)

Defendant denied coverage because Plaintiff could not establish ownership of the Numbered Edition at the time of loss. (Doc. 169-4 at 2–7.) Evidence showed that, in 2002, Plaintiff traded the Numbered Edition to the James Corcoran Gallery for another piece of art. (Doc. 169-1 at 74.)[2]

---

[2] At Defendant's request, John J. Chvostal of Chvostal Art Advisory prepared an investigative report dated June 20, 2020, which he supplemented on November 8, 2021. (Doc. 169-1.) In his report, Dr. Chvostal concluded, "I am 100% certain that The Insureds did not own and could not have owned the complete set of 'Andy Mouse' prints by Keith

During the claim process, Plaintiff also stated that in 1989 he purchased an "Artist Proof Edition" of Andy Mouse from Keith Haring directly. (Doc. 171-1 at 108.) Plaintiff did not provide independent proof of ownership of the Artist Proof Edition, and Defendant disputed Plaintiff's ownership. (Doc. 192 at 20.)

During discovery, Plaintiff stated that the specific serial number of the Numbered Edition was likely "5 out of 30." (Doc. 211 at 4-5; Doc. 169-4 at 16-17; *see* Doc. 169-1 at 74.) An investigation determined that Plaintiff could not have owned the complete set of "5 of 30" Numbered Edition prints. (Doc. 169-1 at 29.)

Plaintiff also made an insurance claim for a Rolex watch, which he learned was missing from his parent's home upon the death of his mother. (Doc. 169-3 at 175–77.) Defendant denied this claim because Plaintiff could not establish that he owned the watch at the time of loss; Plaintiff testified that he had not seen the watch since 2010. (Doc. 169-4 at 2–7.)

In February 2021, after Defendant refused to pay Plaintiff's claims for the Andy Mouse and the watch, Plaintiff filed suit asserting: (1) breach of contract and the implied duty of good faith and fair dealing for the denial of coverage for the artwork and watch, and (2) tortious bad faith in the handling of both of the claims. (*See* Doc. 1-3, amended by Doc. 48.) After discovery, the parties filed motions for summary judgment. (Docs. 170, 173.)

The Court denied Plaintiff's motion for partial summary judgment and granted most of Defendant's motion for summary judgment. (*See* Doc. 211.) The Court granted summary

---

Haring bearing the edition number 3/30, which is uniquely described in the 2018 Dina Brown appraisal document, at the time of the claimed loss event." (Doc. 169-1 at 25.) Dr. Chvostal opined, "Five independent auction listings prove that at least three of the four prints comprising the set that Dina Brown appraised as belonging to The Insured in 2018 had a significantly different ownership history":

a single print from the suite number '3/30' was sold at Sotheby's Amsterdam on May 14,1996 (Lot 151). This same impression was later sold at Sotheby's London on April 1, 2008 (Lot 435). Sotheby's New York sold two other sheets from the set on April 29[, ]2006, [(]Lots 422 and 423). The latter of the two lots (Lot 423) surfaced at Im Kinsky Auktionshaus, Vienna, on March 25, 2014 (Lot 260), having passed through the hands of Martin Lawrence Galleries, New York and a Viennese Private Collector.

(*Id.*)

judgment to Defendant on the contract claim for the artwork, concluding Plaintiff failed to make a *prima facia* case that coverage existed for the artwork as the Numbered Edition was the only Andy Mouse listed on the insurance contract's schedule of covered property and Plaintiff could not have owned the Numbered Edition at the time of loss. (Doc. 211 at 13–14.) For similar reasons, the Court rejected the bad faith claim related to the artwork. (*Id*. at 18.)

The Court denied summary judgment to Defendant as to the Rolex because it could not be determined as a matter of law whether Plaintiff owned the watch during the coverage period. (*Id*.) The Court concluded this was a factual issue to be determined by a jury. (*Id*.) The Court, however, granted summary judgment to Defendant on the bad faith claim related to the watch, finding at trial a directed verdict would be warranted. The Court reasoned:

> Here, the evidence provided by the Plaintiff to Defendant shows he had not seen the Rolex watch for over ten years, he could offer no definitive evidence showing the time of the loss but explained why he believed that the Rolex watch remained at his mother's home at the time of her death, and Plaintiff's post-claim conduct arguably reflected fraud. While the Court cannot say that no reasonable mind might conclude the Plaintiff can establish the loss occurred within the coverage period, it finds reasonable minds could only conclude that the question of coverage based on the loss occurring within the coverage period was fairly debatable. In combination with evidence that arguably supports a conclusion of fraud, the Court finds that no reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably . . . .

(*Id*. (internal citation omitted).) After the Court's ruling, the parties stipulated to the dismissal of the breach of contract claim for the Rolex—the only claim to survive summary judgment, and, on May 3, 2024, the Court entered Judgment for the Defendant. (Doc. 215; Doc. 221.)

On May 7, 2024, the Plaintiff appealed the Court's order granting summary judgment on the Andy Mouse contract and bad faith claims. (Doc. 224.)

On May 24, 2024, Defendant filed the pending Application for Attorney Fees. (Doc. 226.)

//

## II.     Application for Attorney Fees and Costs

Defendant seeks attorneys' fees in the total amount of $257,832.73.[3] (Doc. 226; Doc. 232 at 1.) As an initial matter, in its application, Defendant fails to distinguish its attorney's fees from its costs. (*See* Doc. 226; Doc. 227-1.) The ledgers provided in support show $202,240.38 in fees and $55,583.35 in costs. (Doc. 227 at 4 n. 3; Doc. 227-1 at 2–3.) Different standards govern the award of fees and costs. *See* Fed. R. Civ. P. 54(d)(1)–(2), LRCiv 54.2(b)–(e). Thus, the Court will separately consider each.

Plaintiff does not challenge Defendant's eligibility to obtain attorney fees or costs, nor the reasonableness of its counsel's hourly rate, but argues that Defendant's overlitigation of the case resulted in an unreasonable number of hours spent litigating. (Doc. 230 at 10–11.) Plaintiff argues that the Court should not award any attorney fees to Defendant or, alternatively, requests Defendant's fee be reduced by $41,591.50 (based on Defendant's improper billing) and $25,912.32 (to reflect a 10% reduction for time spent on the Rolex claims not clearly described in Defendant's billing records). (*Id*. at 14.)

### A.   The Defendant is Eligible and Entitled to Award of Attorney Fees

Under Arizona law, the Court "may award" reasonable attorney fees to a successful party in "any contested action arising out of a contract." A.R.S. § 12-341.01(A). Plaintiff's claims, including the tortious bad faith claims, are based on Defendant's alleged breach of an insurance contract and are therefore claims arising out of contract for purposes of A.R.S. § 12-341.01(A). *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 544 (1982) (concluding a bad faith claim was "intrinsically related" to plaintiff's contract claim for purposes of awarding attorneys' fees). An award of attorney fees under A.R.S. § 12-341.01(A) "is permissive, not mandatory." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 956 (9th Cir. 2006).

Trial courts are vested with broad discretion to determine the circumstances appropriate for an award of fees pursuant to A.R.S. § 12-341.01. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985) (*en banc*). Courts look to several factors to

---

[3] Defendant reduced its initial request of $259,123.23 by $1,299.50 after Plaintiff identified additional time entries related to the Rolex claims. (Doc. 232 at 1 n.1.)

guide this discretion: (1) the merits of the claim or defense presented by the unsuccessful party; (2) whether the litigation could have been avoided or settled and whether the successful party's efforts were completely superfluous in achieving the result; (3) whether assessing fees against the unsuccessful party would cause an extreme hardship; (4) whether the legal question was novel; and (5) whether the successful party prevailed with respect to all of the relief sought. *Id.* at 1186. No one factor is determinative. *Potter v. U.S. Specialty Ins. Co*., 98 P.3d 557, 560 (Ariz. App. 2004). Here, the factors support an award of fees.

### 1. *Merits of Plaintiff's claims*

The first factor favors the award of fees to the Defendant. With respect to the artwork, the Court found that Plaintiff failed to make a *prima facia* case for breach of contract and tortious bad faith due to his inability to show ownership of the Numbered Edition artwork during the coverage period. (Doc. 211 at 14.) The Court examined the policy language and schedule of covered property to determine the parties' intent regarding coverage under Arizona law. (*Id*. at 12–14.) The Court found that the schedule showed the Defendant assumed the risk of loss only for the Numbered Edition artwork, not the Artist Proof Edition. (*Id*. at 14.) The plain terms of the policy limited coverage to the specific property listed in the schedule. (*Id.* at 13–14.)

Plaintiff testified that he did and does not know which screenprint he owned. (*Id*. at 13.) Plaintiff argued that because the Artist Proof and the Numbered Edition artworks are of approximate equal value, the specific edition of artwork listed on the schedule was irrelevant. (Doc. 193 at 7.) The Court rejected Plaintiff's argument and concluded that the Numbered Edition and the Artist Proof Edition are distinct pieces of property and, therefore, coverage under the Policy was limited to the Numbered Edition as identified in the Coverage Schedule. (Doc. 211 at 13–14.) The Court found Plaintiff's evidence that the Artist Proof Edition generally has a higher value than the Numbered Edition countered Defendant's allegations of fraud, but did not "show two uniquely different items of property are the same item intended by the parties to be covered by the Policy." (*Id*. at 14.)

## 2. *Whether litigation could have been avoided*

The second factor—whether litigation could have been avoided or settled and whether the successful party's efforts were completely superfluous in achieving the result—favors granting attorney fees to the Defendant. It is axiomatic that an insurance company is not required to pay claims for the loss of items that are not covered under the policy. Plaintiff did not own the Numbered Edition and had little evidence that he owned the Rolex watch during the coverage period. It was reasonable for the Defendant to defend against Plaintiff's claimed loss of over a million dollars under these circumstances. Plaintiff persisted in asserting his claims, particularly his claim regarding the Andy Mouse artwork, even when evidence obtained during the lawsuit undermined the claim. When confronted with this evidence, Plaintiff responded that it did not matter because the Artist Proof Edition was of equal value. Plaintiff repeatedly asserts that he understood from the beginning of the litigation that he did not own the Numbered Edition at the time of loss, but he continued litigating, even though the Artist Proof Edition was not on the covered property schedule. (Doc. 230 at 2, 4–6.) Under these circumstances, the Defendant's efforts cannot be said to be superfluous to achieving the dismissal of Plaintiff's claims.

## 3. *Whether assessing fees would cause extreme hardship*

The third factor—whether assessing reasonable attorney fees would cause the unsuccessful party extreme hardship—tips in favor of the Defendant. Plaintiff asserts he lacks liquid capital because his wealth is tied up in art and real estate, and he has been diagnosed with prostate cancer and is unable to work due to treatment. (Doc. 230 at 7.) Defendant argues Plaintiff is an "avid art collector with a net worth in excess of $30 million," who can simply sell something from his extensive art collection to pay any fee award. (Doc. 226 at 7.)

It does not appear that assessing fees against Plaintiff would cause extreme hardship. The lack of liquidity of Plaintiff's assets is irrelevant in light of Plaintiff's net worth. The Court is confident that both parties factored the cost of litigating the coverage claims—including the potential for an award of attorney fees to the prevailing party—in their

decisions to pursue and defend this lawsuit.

### 4. *Whether the legal question was novel*

The parties agree that the legal issues in this case were not novel or complex. (*See* Doc. 226 at 7) (describing case as hinging on two foundational coverage issues: ownership and loss during the coverage period); (Doc. 230 at 7–8, 10) (describing case as routine and simple). The lack of novel or difficult legal questions weighs in favor of awarding attorney fees to Defendant. *See Huffman v. JP Morgan Chase Bank, NA*, 2024 WL 4817654, *6 (D. Ariz. 2014) (holding that the lack of novel legal issues weighs in favor of the defense).

### 5. *Whether the successful party prevailed as to all relief sought*

Defendant asserts it secured judgment on the merits of three of four of Plaintiff's claims. The Court concludes that Defendant prevailed on all of its claims. The Court granted summary judgment on three of the claims; Plaintiff agreed to dismiss the remaining claim after the summary judgment order which noted the lack of "definitive evidence" in support of the remaining claim and "evidence that arguably supports a conclusion of fraud." (Doc. 211 at 14; Doc. 215.) The fifth factor tips in favor of the Defendant.

### 6. *Whether the award of attorney fees will discourage other parties with valid claims*

Plaintiff argues that Policy holders are typically unsophisticated litigants with limited personal financial resources. (Doc. 230 at 8.)  Plaintiff asserts that awarding the Defendant a large amount of attorney fees would significantly deter other insureds who might otherwise pursue meritorious bad faith claims. (*Id.*)  Defendant argues Plaintiff is not an average litigant or an unsophisticated litigant with limited personal financial means. (Doc. 232 at 5.)

The Court agrees that awarding fees against a policyholder who made unsupported high-value claims will not discourage those with valid insurance claims from submitting such claims to their insurance company. In fact, an award of fees may encourage individuals to take more care in identifying property to be insured and in deciding whether to pursue their claims.

B.  <u>Calculation of Reasonable Fees – Lodestar Method</u>

Defendant has complied with Local Rule 54.2(c) in submitting its request for attorney fees, and included a statement showing a good faith attempt to resolve the fee request, a task-based itemized statement of time expended and expenses incurred, and attestation to the reasonableness of counsels' requested rates.  (*See* Docs. 226, 227.)

1.  <u>*Legal Rule – Lodestar Calculation*</u>

District courts must calculate awards for attorneys' fees using the "lodestar" method. *Ferland v. Conrad Credit Corp.* 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citation omitted).

2.  <u>*Adjustment of Reasonable Fees*</u>

Defendant requests $202,240.38 in attorney fees exclusive of expenses and costs. The parties have stipulated that the Defendant will not seek fees associated with the breach of contract claim for the Rolex watch. (Doc. 226 at 5 n.4.) Plaintiff does not dispute the reasonableness of defense counsel's rate, but challenges the reasonableness of the number of hours Defendant spent litigating this matter. Plaintiff asserts that Defendant's overly aggressive litigation tactics and discovery gamesmanship unnecessarily increased its fees. Plaintiff also requests a blanket ten-percent reduction of any award to the Defendant because of the intertwined nature of investigating Plaintiff's Andy Mouse and Rolex claims.

The Court first addresses Plaintiff's objection to specific time entries, (Doc. 230-2), and concludes that the time entries are generally reasonable. Many of the entries relate to the issuance of subpoenas and research of legal authorities for the subpoenas. Defendant's attorneys reasonably subpoenaed numerous art galleries, private foundations, museums,

and public institutions to discover that Plaintiff did not own the Numbered Edition. Time entries related to the issuance of subpoenas to the LiveChat platform were reasonable. LiveChat provided information that Plaintiff was seeking a second set of Andy Mouse in 2018 and supported the conclusion that Plaintiff only owned one edition of the Andy Mouse artwork in 2018.

Plaintiff objects to time entries he describes as "mundane tasks," such as preparing and reviewing various disclosure statements, researching how to seek a stay, and determining whether the Federal Rules of Civil Procedure require a specific format for the disclosure of electronically stored information. (Doc. 230 at 10–11.) Defendant argues that these tasks were necessary to ensure compliance with subpoena requirements for at least 18 out-of-state entities, avoid discovery disputes, and comply with other complex procedures. (Doc. 232 at 7.) Given the fact-intensive and contentious nature of this litigation, the Court finds that these time entries are reasonable.

Plaintiff objects to two time entries totaling just over two hours related to research conducted by Defendant via a New York Times article regarding an art inheritance case and podcast regarding art storage. (Doc. 230 at 10.) Defendant argues that such research was necessary for the defense team to understand and contextualize Plaintiff's use of freeports to store portions of his art collection and to assist in evaluating the records subpoenaed from SRI and Delaware Freeport. (Doc. 232 at 8.) The Court finds the time entries reasonable.

Plaintiff identifies $2,541.50 in specific charges reflecting time spent related to the Rolex watch. (Doc. 230 at 11–12.) In its reply, Defendant reduced its requested fees by $1,299.50, removing some of these charges. (Doc. 232 at 1 n.1.) Upon review of Exhibit C to Plaintiff's Response, the Court will not reduce this amount further as Plaintiff does not explain how the remaining entries are related solely to the Rolex watch. (*See* Doc. 230-3.)

Plaintiff argues that because many of Defendant's expenses for depositions and expert fees were related to both the Rolex and Andy Mouse disputes, a blanket ten-percent

reduction should be applied to all fees awarded to Defendant. (Doc. 230 at 11–12, 14.) Plaintiff does not provide any further factual or legal support as to the reasonability of his proposal. (*Id*.) Based on the reductions contained in this order, and after review of the Defendant's itemized billing record, (Doc. 227-1), the Court finds that the stated purpose of the ten-percent blanket reduction has already been achieved and further reduction is unnecessary.

Plaintiff asserts that Defendant's aggressive litigation strategy was unnecessary and argues that $14,271.50 related to Defendant's Motion for Transfer of Venue, (Doc. 13), should not be awarded. (Doc. 230 at 12.) The Court found that the Defendant's motion was not without merit, and that the determinative factors were "evenly split." (Doc. 29 at 19.) Accordingly, the Court cannot conclude that Defendant's litigation strategy was unreasonable, and the Court will not deduct such fees from Defendant's award.

Plaintiff argues that Defendant's award should be reduced by $4,173.50 for fees related to Defendant's "baseless" motions to quash subpoenas, (Docs. 97, 104). (Doc. 230 at 12.) The Court granted in part the motions to quash. (Doc. 114.) Accordingly, the Court cannot conclude that the motions were baseless or that an award of the fees related to litigating the motions would be unreasonable. The Court will not deduct such fees from Defendant's award.

Plaintiff argues that Defendant caused itself to incur additional fees by failing to comply with federal discovery rules in redacting the claims file and then billing to fix its own mistakes. (Doc. 230 at 12–14.) The claim file consisted of 4,532 pages and covered a two-year period. Defendant did not seek an extension of the initial disclosure deadline of October 29, 2021 to produce the file, later agreed to produce the file by January 22, 2022, and ultimately produced the file on March 14, 2022. (Doc. 50.) Immediately after production, Plaintiff asserted the file was overly redacted. (Doc. 51.) Defendant's billing statement reflects ongoing review and supplementation of the disclosure to address Plaintiff's concerns. (Doc. 230-6 at 1–3.) Defendant explains it took time and resulted in additional costs for it to reexamine and reconsider some of its original redactions. (Doc.

232 at 6.) The Court agrees with Plaintiff that these additional costs could have been avoided had Defendant appropriately redacted the claim file in the first instance. The Court will therefore deduct $5,186.50 for fees billed after the initial production on March 13, 2022.

### 3. *Fees for preparation of Application*

Defendant submits that an award should include recovery of reasonable fees for time expended preparing the Application for Attorney Fees and related documents. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986). The Court will allow Defendant to request such fees. Based on the Plaintiff's position that Defendant is not entitled to *any* attorneys' fees, Defendant's request for fees could not have been resolved by the parties absent Defendant filing its application, which required Defendant to incur additional fees.

### C. Award of Costs

Pursuant to Rule 54, Federal Rule of Civil Procedure, costs other than attorney's fees should be allowed to the prevailing party. Fed. R. Civ. P. 54(d)(1).   In the April 10, 2024 stipulation, the Parties agreed Defendant retained the right to seek fees for the Andy Mouse claims and to seek costs. (Doc. 215.) The Court approved the Stipulation and ordered Defendant to file its application for attorneys' fees and costs within 24 days of the entry of Judgment, in compliance with Local Rule 54.2(b)(2). (Doc. 220 at 1–2.) The Defendant timely filed the pending Application in compliance the Court's Order and with Local Rule 54.2(b)(2). (Doc. 226.) Defendant included $55,583.35 in costs and expenses in its Application. (*See* Doc. 227-1 at 2, 57-59.) Plaintiff does not object to any specific cost claimed by Defendant. (*See* Doc. 230.) The costs do not appear to be unreasonable. Consequently, the Court will grant the Defendant's request for costs.

### D. Bond for Award

Finally, Defendant requests that the Court order Plaintiff to file bond or other surety in an amount at least equal to its award pursuant to Rule 7, Federal Rules of Appellate Procedure, to ensure payment of costs on appeal. (Doc. 226.) Plaintiff does not object, and //

- 12 -

the Court will so order. For the foregoing reasons,

**IT IS ORDERED:**

1.      The parties' Stipulation to Extend Deadline for Defendants' Reply To Plaintiff's Opposition to Motion for Attorneys' Fees (Doc. 231) is **granted**.

2.      Defendant's Application for Attorneys' Fees (Doc. 226) is **granted in part**.

2.      Defendant is awarded attorneys' fees and costs in the amount of $**252,637.23**.

3.      Within **30 days** of the date of this order, Defendant may move for an award of attorneys' fees for fees incurred in the preparation of its Application.

4.      Plaintiff must obtain and file a bond in the amount of $**252,637.23** in accordance with F.R.App. 7.

6.      The Clerk of Court shall amend the Final Judgement (Doc. 221) to reflect the award of attorneys' fees.

Dated this 22nd day of March, 2025.


_____
Jennifer G. Zipps
Chief United States District Judge